IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHOREGOOD WATER COMPANY, INC., *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB 08-2470 |
| U.S. BOTTLING COMPANY, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiffs ShoreGood Water Company, Inc., Dennis Kellough, and Bonnie Kellough (together "Plaintiffs"), have filed the present lawsuit against Defendants U.S. Bottling Company, The Image Makers, Ltd., William Voelp, John D. Cecil, and John T. Cecil, Jr. (together "Defendants"). Plaintiffs assert seventeen causes of action that include claims for trademark infringement, civil conspiracy, tortious interference, slander of title, as well as claims for various remedies, including injunctive relief, replevin, detinue of property, dissolution and the appointment of a receiver. Defendants have moved to dismiss several of the causes of action set forth in Plaintiffs' First Amended Complaint. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the following reasons, Defendants' Motion to Dismiss Counts VII through X and Count XVI of the First Amended Complaint (Paper No. 20) is GRANTED in part and DENIED in part. Specifically, the motion is GRANTED as to Counts VII through X, as the shareholder derivative claims set forth in these

counts present a conflict of interest with the remaining claims asserted against the corporate defendant. The motion is DENIED as to the civil conspiracy claim set forth in Count XVI.

## BACKGROUND

In ruling on a motion to dismiss, "[t]he factual allegations in the Plaintiff[s'] complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff[s]." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

In 2002, Plaintiffs Dennis and Bonnie Kellough, husband and wife, established the ShoreGood Water Company, Inc. ("ShoreGood"), a bottled water manufacturing company incorporated in the State of Maryland. (Amend. Comp. ¶ 13.) The ShoreGood manufacturing facility is located on land owned by the company Dennis S. Kellough, LLC ("DSK"). (*Id.* ¶ 14.) From 2004 until early 2005, ShoreGood manufactured and transported bottled water for several private label customers. However, by the end of 2004 ShoreGood had yet to gain any profit. (Id. ¶ 16.)

Defendants William Voelp ("Voelp") and John D. Cecil ("Cecil") own the Image Makers, Ltd. ("Image Makers"), a corporation organized under Maryland law.[1] (*Id.* ¶¶ 5, 17.) In August of 2004, Defendants approached Plaintiffs and proposed the idea of entering into a joint venture. (*Id.* ¶ 17.) The business venture appeared mutually beneficial to the parties, as Defendants represented that they had a customer base for ShoreGood's product but no manufacturing facility, while ShoreGood had a manufacturing facility, but was seeking customers. (*Id.* ¶ 18.) On September 16, 2004, Image Makers, ShoreGood and DSK entered into an "Agreement in Principal" pursuant to which the parties combined operations; Dennis

---

[1] Plaintiffs allege that, upon information and belief, "Image Makers has forfeited its corporate charter for failure to file personal property tax returns." (Amend. Compl. ¶ 5.) It is not clear from the record what sort of business Image Makers is involved in.

Kellough, Cecil, and Voelp were named as "partners," with each entitled to an equal share of the profits and losses of the combined business. (*Id.* at ¶¶ 19-20; Pls.' Ex. 1, at 1.) The "Agreement in Principal" stated that the agreement was "subject to final legal documentation," but the parties never formally memorialized a final contract or proceeded in any merger transactions. (*Id.* ¶ 21.)

In January 2005, Cecil and Voelp organized the U.S. Bottling Company ("U.S. Bottling") by filing articles of incorporation. (*Id.* ¶ 22.) Plaintiffs claim that U.S. Bottling was never properly organized, but that the Defendants exercised powers on its behalf as a *de facto* corporation. (*Id.* ¶¶ 4, 23.) From this point forward, Image Makers and ShoreGood began to be managed by the Defendants through the U.S. Bottling enterprise. (*Id.* ¶ 22.)

Initially, Voelp and Cecil managed the affairs of U.S. Bottling and the Kelloughs had little involvement. (*Id.* ¶ 24.) In January of 2005, Cecil and Voelp informed Dennis and Bonnie Kellough that the company required additional operating funds, and the Kelloughs loaned approximately $350,000 in mortgage proceeds to U.S. Bottling. (*Id.* ¶¶ 25-26.) Around this same period of time, Defendant John T. Cecil, Jr. ("Cecil Jr.") allegedly loaned U.S. Bottling $80,000, which he allegedly subsequently converted to stock in the company in order to obtain an ownership role. (*Id.* ¶ 27.)

In return for turning over management of ShoreGood to U.S. Bottling, U.S. Bottling was allegedly entrusted with responsibility for ensuring that all of ShoreGood's expenses were promptly paid. (*Id.* ¶ 29.) However, in mid-2005, U.S. Bottling stopped making ShoreGood's mortgage and tax payments because of cash-flow problems. In order to avoid foreclosure, the Kelloughs paid these obligations out of their personal funds. (*Id.* ¶ 30.) In January of 2006, Cecil, Voelp, and Cecil Jr. petitioned the Kelloughs for additional operating funds for U.S. Bottling. (*Id.* ¶ 31.) At this point the Kelloughs procured a loan in the amount of $300,000 from

their acquaintances, William and Margaret Blanchet, and the proceeds were provided to U.S. Bottling.  (*Id*. ¶ 32.)  This loan agreement was memorialized in a "Confessed Judgment Promissory Note" that was signed by the parties and dated May 18, 2006.  (Pls.' Ex. 2.)

In January of 2007, Cecil, Voelp, and Cecil Jr., again informed the Kelloughs that U.S. Bottling needed additional operating funds, and the Kelloughs loaned to U.S. Bottling approximately $200,000.  (*Id*. ¶ 33-34.)  Plaintiffs allege that at this time the Kelloughs also paid approximately $700,000 in owed expenses on behalf of U.S. Bottling and ShoreGood, "bringing the Kelloughs' loans to U.S. Bottling to an amount in excess of $1,500,000.00."  (*Id*. ¶ 35.)

In 2007 the Kelloughs became more involved in the management of U.S. Bottling and ShoreGood.  During this time, they discovered certain irregularities, discrepancies, and other red flags in the companies' records.  (*Id*. ¶ 36.)  The Kelloughs repeatedly requested full access to the books and records of U.S. Bottling and Image Makers, but such requests were denied by the Defendants, who only disclosed a limited amount of the requested information.  (*Id.* ¶ 37.)  In May of 2008, Plaintiffs terminated ShoreGood's relationship with U.S. Bottling due to the Defendants' refusal to provide access to their books and records and to provide an accounting for monies received.  (*Id*. ¶ 38.)

Since 2004, ShoreGood has owned the federally registered trademark Great Blue, which was registered in connection with goods and services described as "Bottled Drinking Water." (*Id*. ¶ 47.)  While U.S. Bottling was managing ShoreGood, U.S. Bottling allegedly marketed and sold bottled drinking water manufactured by ShoreGood under the Great Blue trademark. (*Id*. ¶ 49).  Plaintiffs allege that since the termination of the business relationship between ShoreGood and U.S. Bottling in May of 2008, U.S. Bottling has continued to use the Great Blue

trademark—without ShoreGood's consent—to sell bottled drinking water that has not been produced by ShoreGood. (*Id*. ¶¶ 51-52.)

Plaintiffs allege that the Defendants committed various forms of misconduct when they were in control of U.S. Bottling and in their interactions with the Kelloughs. Among other things, they claim that Defendants: (1) refused to account to the Kelloughs for funds received; (2) failed to provide notice, or properly hold, meetings of stockholders and directors; (3) failed to properly authorize or issue shares of stock; (4) restricted access to books and records; (5) acted as interested directors of U.S. Bottling on certain transactions; and (6) withheld from the Plaintiffs notice and information concerning certain transactions. (*Id.* ¶¶ 39-46.)

Plaintiffs filed their original Complaint in this Court on September 18, 2008. (Paper No. 1.) On December 2, 2008, Plaintiffs filed their First Amended Complaint (Paper No. 18), which contains seventeen counts invoking various causes of action and requests for relief. On December 12, 2008, Defendants filed the pending Motion to Dismiss (Paper No. 20) challenging: (1) Counts VII through X, in which Plaintiff Dennis Kellough purports to sue derivatively on U.S. Bottling's behalf; and (2) Count XVI, in which Plaintiffs seek money damages from Image Makers, Voelp, Cecil, and Cecil Jr., for civil conspiracy.

## **STANDARD OF REVIEW**

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), and therefore a Rule 12(b)(6) motion tests the legal sufficiency of a complaint.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Id.* at 555. Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See id.* (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)).

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* On a spectrum, the Supreme Court has recently explained that the plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At bottom, the court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## DISCUSSION

**I.      Counts VII-X: Derivative Claims**

Defendants move this Court to dismiss Counts VII through X, which are styled as shareholder derivative claims brought by Dennis Kellough on behalf of U.S. Bottling. Specifically, these counts assert shareholder derivative actions for conversion against the remaining defendants, and rescission against the individual defendants. Defendants claim that

Kellough does not "fairly and adequately" represent the interests of his co-shareholders or of U.S. Bottling.

Rule 23.1 of the Federal Rules of Civil Procedure provides that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1. The issue of adequate representation is entrusted to the sound discretion of a district court. *Owen v. Modern Diversified Industries, Inc.*, 643 F.2d 441, 443 (6th Cir. 1981). Defendants bear the burden of showing that a plaintiff asserting a derivative claim cannot fairly and adequately represent the interests of the shareholders or of the corporation. *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 592 n.15 (5th Cir. 1974).

Defendants argue that Kellough's derivative claims present a conflict of interest because the Plaintiffs have also sued U.S. Bottling directly. Many courts have stopped short of implementing a *per se* rule barring a shareholder from bringing a derivative suit on behalf of a company while simultaneously asserting a direct claim against the same company. *See, e.g.*, *In re TransOcean. Tender Offer Securities Litig.*, 455 F. Supp. 999, 1014 (N.D.Ill. 1978); *Bertozzi v. King Louie Int'l., Inc.*, 420 F. Supp. 1166, 1178-80 (D.R.I. 1976). *But see Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 223 (E.D.N.Y. 2005) ("[a]ny individual claims raised by a shareholder in a derivative action present an impermissible conflict of interest"). Instead, courts engage in a fact intensive analysis to determine whether a conflict of interest exists under the circumstances of a particular case. A number of factors have been identified that may guide a court's discretion when conducting this analysis, including:

> economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that

>       the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.

*Davis v. Comed, Inc*., 619 F.2d 588, 593-94 (6th Cir. 1980).

This Court has recently questioned the propriety of simultaneous causes of action, noting that "a plaintiff's individual suit against the corporation, while maintaining a simultaneous derivative action, raises a serious question about whether the plaintiff can properly represent the interests of the shareholders." *Argiropoulos v. Kopp*, No. 06-0769, 2007 U.S. Dist. LEXIS 22351, at *22 (D. Md. Mar. 26, 2007). This Court added that "[w]here a derivative action and a plaintiff's individual monetary recovery are in competition for the same pool of money, it makes it further unlikely that plaintiff will be an appropriate derivative plaintiff." *Id.* at *22-23.

In this case Kellough's interests are clearly antagonistic to the interests of the other shareholders. Plaintiffs have named the remaining shareholders as defendants, and this lawsuit aims to recover funds that the Defendants allegedly misappropriated. Plaintiffs note that they are creditors of U.S. Bottling and that U.S. Bottling is indebted to them "in excess of $1,500,000.00 with no present ability to repay these amounts" and that the company "is now essentially defunct." (Amend. Compl. ¶¶ 85, 90, 93.) If the Plaintiffs were to succeed on their individual claims, the shareholders' equity interests would be devastated. This presents a serious conflict that is not merely "theoretical," but is instead real and conspicuous. *Cf. In re TransOcean Tender Offer Securities Litig.*, 455 F. Supp. 999, 1014 (N.D. Ill. 1978) (allowing simultaneous prosecution where a conflict is merely "theoretical" and the "asserted 'antagonism' between the

primary and derivative actions is merely a 'surface duality'") (citing *Bertozzi*, 420 F. Supp. at 1179-80).

In *Argiropoulos*, this Court found that a plaintiff was operating under an apparent conflict of interest because he was in a position in which he would be competing with his fellow shareholders to recover the remaining funds in a defunct company.  2007 U.S. Dist. LEXIS 22351, at *22-25.  Similarly, in *Owen v. Modern Diversified Industries, Inc.*, 643 F.2d 441 (6th Cir. 1981) a conflict was found to exist when a plaintiff sued to recover upon a substantial debt interest and simultaneously asserted a derivative claim on the basis of a *de minimus* equity interest.  The court determined that the plaintiff's derivative claims were being used, not to secure the interests of the remaining shareholders, but instead as a litigation strategy to advance his interests as a creditor.  *Id.* at 443-44.

Plaintiffs submit that even if Dennis Kellough's interests appear adverse to the interests of the remaining defendant shareholders, his derivative suit should be allowed to proceed because he constitutes a legitimate "class of one."  A sole shareholder may sometimes bring a derivative suit under certain factual situations.  *Larson v. Dumke*, 900 F.2d 1363, 1368-69 (9th Cir. 1990); *cf. Smith v. Ayres*, 977 F.2d 946, 948 (5th Cir. 1992) ("[o]nly in the rarest instances may there be a shareholder derivative action with a class of one").

However, in order for a sole shareholder's derivative claim to proceed, it must fairly represent the interests of the corporation.  As the Fifth Circuit Court of Appeals emphasized in a case involving a "class of one" derivative claim, "[a] plaintiff in a shareholder derivative action owes the corporation his undivided loyalty.  The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda." *Ayers*, 977 F.2d at 949.  In many cases that have permitted single shareholder derivative claims, courts have rested their holding, in part,

9

upon the observation that there was no hint of any conflict between the individual's interests and the interests of the corporation.  For instance, in *Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177 (N.D. Ill. 1987), the plaintiff was considered a "legitimate class of one" largely because there was no indication that he was operating under "ulterior motives" or that he would "not adequately enforce" the company's rights in the litigation.  *Id.* at 180.  *See also Hall v. Tenn. Dressed Beef Co.*, 957 S.W.2d 536, 540 (Tenn. 1997) ("[b]ecause there is no evidence in the record to support a finding that [Plaintiff] is incapable of fairly representing the interests of the corporation in the derivative action while maintaining his individual suit, the existence of both is no reason to deny him standing").

As noted above, the crux of Plaintiffs' lawsuit is to recover money allegedly owed—a personal goal focused on an external interest that is at odds with the underlying purpose of a derivative action, which is fiduciary in nature.  Plaintiffs seek to recover more than $1.5 million dollars from the individual Defendants and from the spoils of U.S. Bottling, which is now "essentially defunct."  (Amend. Compl. ¶¶ 90, 93.)  As a result, this Court finds that Plaintiffs' personal interests as creditors in their direct claims vastly outweighs Dennis Kellough's desire to protect the interests of U.S. Bottling through a derivative action.  Accordingly, this Court finds that "there is a substantial likelihood that the derivative action will be used as a weapon in the plaintiff shareholder's arsenal," and that it is not being employed as a means to protect the corporation.  *Banks v. Whyte*, No. 94-0711, 1994 U.S. Dist. LEXIS 11063, at *2 (E.D. Pa. Aug. 9, 1994) (internal quotation omitted).  Because of this apparent conflict of interest, the shareholder derivative claims in Counts VII through X are hereby dismissed upon a finding that Plaintiff Dennis Kellough is not a suitable representative.

**II.     Count XVI: Conspiracy Claim**

In Count XVI, Plaintiffs assert a claim of civil conspiracy against Image Makers, Cecil, Cecil Jr., and Voelp. In their motion to dismiss, Defendants argue that Maryland does not recognize a cause of action for civil conspiracy and that such a claim is nevertheless barred by the "intracorporate conspiracy doctrine."

Maryland clearly recognizes a cause of action for civil conspiracy, which is defined as "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 408 (D. Md. 2001). It is well-established that a claim of conspiracy "is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Lloyd v. General Motors Corp.*, 397 Md. 108, 154 (2007). In this case Plaintiffs have alleged various claims that sound in tort, including trademark infringement, slander of title, and tortious interference with business relations. *See AARP v. Am. Family Prepaid Legal Corp., Inc.*, 604 F. Supp. 2d 785, 799 (M.D.N.C. 2009) (finding trademark infringement to be tortious in nature); *Lomah Elec. Targetry v. ATA Training Aids Aust. Pty.*, 828 F.2d 1021 (noting that slander of title is a tort). Thus, underlying tort claims have been set forth in this case that may support Plaintiffs' conspiracy claim.

A more difficult question is introduced by the Defendants' assertion of the intracorporate conspiracy doctrine, which may, under certain circumstances, immunize corporate actors from claims of civil conspiracy. This Court has recently noted that:

> [T]he "intracorporate conspiracy doctrine" holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. In essence, this means that a corporation cannot

11

>conspire with its employees, and its employees, when acting in the
>scope of their employment, cannot conspire among themselves.

*Baltimore-Washington Telephone Co. v. The Hot Leads Co., L.L.C.*, 584 F. Supp. 736, 744 (D. Md. 2008) (citing *Marmott v. Maryland Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986)). According to this doctrine, "a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility." *Marmott*, 807 F.2d at 1184. Moreover, a plaintiff may not circumvent this immunizing doctrine merely by naming the defendant corporate agents in their individual capacities. *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985).

However, the United States Court of Appeals for the Fourth Circuit has long recognized an exception to the doctrine where a corporate "officer has an independent personal stake in achieving the corporation's illegal objectives."[2] *Greenville Pub. Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974); *see also Akande v. TransAmerica Airlines, Inc.*, No. 1039-N, 2006 Del. Ch. LEXIS 47, at *7 (Del. Ch. Feb. 28, 2006) (noting that the intracorporate conspiracy doctrine does not apply "when the officer or agent of the corporation steps out of her corporate role and acts pursuant to personal motives"). In order for this exception to apply, there must be a showing that the interests of the company and the conspirators are clearly distinct. *See United States v. Gwinn*, No. 5:06-cv-00267, 2008 U.S. Dist. LEXIS 26361, at *82-83 (S.D. W.Va. Mar. 31, 2008) ("[u]nder the independent personal stake exception, the agent must have a personal interest in the illegal activity wholly separate and independent of his relationship with the corporation") (quotations omitted). The exception will not apply if the commission of the illegal conduct is found to benefit both the corporation and the agent. *Id.* at *86 ("when an agent . . .

---

[2] The Fourth Circuit Court of Appeals has recognized another exception to the intracorporate conspiracy doctrine under which a corporate agent is denied immunity for any unauthorized actions. *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985).

acts in a manner that benefits both himself and his corporation for similar reasons, the narrow independent personal stake exception is not applicable").

Defendants construe the Amended Complaint as providing that the alleged conspirators—Image Makers, Cecil, Cecil Jr., and Voelp—"conspired with and acted on behalf of U.S. Bottling Company/ShoreGood, and thus intracorporately . . . ." Defs.' Mot. to Dismiss at 14. However, after viewing the factual allegations in a light most favorable to the Plaintiffs, this Court notes that the Plaintiffs have alleged that the conspirator Defendants organized a scheme whereby they used U.S. Bottling as a vehicle to advance their personal interests and that this scheme adversely impacted both U.S. Bottling and the Plaintiffs. The individual Defendants are alleged to have diverted to their personal accounts certain funds that the Kelloughs had previously loaned to U.S. Bottling. *See* Amend Compl. ¶ 26 (alleging that Defendants deposited "checks payable to U.S. Bottling into an account maintained by Image Makers"). In addition, one or more of the individual defendants are alleged to have "entered into transactions with Defendant U.S. Bottling which were not fair and reasonable to Defendant U.S. Bottling or Plaintiff ShoreGood." (*Id.* at 45.) Thus, the Plaintiffs allege a personal stake of the individual Defendants independent of the corporation.

In *Eplus Technology, Inc. v. Aboud*, the Fourth Circuit applied the personal-stake exception under analogous circumstances. 313 F.3d 166, 179-80 (4th Cir. 2002). In *Eplus* the main defendant was alleged to have organized an illegal "bust-out scheme" with her co-employees whereby they siphoned off money from their company for their personal gain. *Id.* The court found that the conspirators were pursuing their personal stake in achieving an illegal objective that was detrimental to, and therefore distinct from, the interests of the corporation. *Id.* Here the Plaintiffs have alleged a similar situation in which the Defendant conspirators are

alleged to have personally diverted money that had been entrusted to U.S. Bottling, and thereby injured the Plaintiffs and the company.  Consequently, this Court finds that the Plaintiffs' allegations in Count XVI, if borne out by the evidence, would support a cause of action for civil conspiracy.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss Counts VII through X and XVI of the First Amended Complaint (Paper No. 20) is GRANTED as to the shareholder derivative claims set forth in Counts VII, VIII, IX, and X, and is DENIED as to the civil conspiracy claim set forth in Count XVI.  A separate Order follows.

Date : August 10, 2009                         /s/_____
                                                              Richard D. Bennett
                                                              United States District Judge