- FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT       2009 OCT 14   A 9: 56
FOR THE DISTRICT OF MARYLAND
(Northern Division)                        CLERK'S OFFICE
                                           AT BALTIMORE

|  |  |
|---|---|
| SHOREGOOD WATER COMPANY, INC. | * |
| 101 Frank M. Adams Industrial Way | * |
| Federalsburg, MD 21632 | |
| | * |
| MR. DENNIS S. KELLLOUGH | * |
| 715 Shore Rd. | |
| Severna Park, MD 21146 | * |
| | * |
| MRS. BONNIE M. KELLOUGH | * |
| 715 Shore Rd. | |
| Severna Park, MD 21146 | * |
| | * |
| DENNIS S. KELLOUGH, LLC | * |
| 205A Magnolia Ave. | |
| Pasadena, MD 21122 | * |
| | * |
| Serve on its Resident Agent: | * |
| Mrs. Bonnie M. Kellough | |
| 715 Shore Rd. | * |
| Severn Park, MD 21146 | |
| | * |
| AND | * |
| | * |
| MR. JEREMY MARTIN | * |
| 715 Shore Rd. | |
| Severna Park, MD 21146 | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *  Civil Action No. RDB-08-2470 |
| | * |
| US BOTTLING COMPANY, et al., | * |
| | * |
| Defendants | * |

BY_____DEPUTY

*     *     *     *     *     *     *     *     *     *     *     *

**DEFENDANT WILLIAM G. VOELP'S ANSWER TO FIRST AMENDED COMPLAINT, REQUEST FOR INJUNCTIVE RELIEF, REPLEVIN AND DETINUE OR PROPERTY PETITION FOR DISSOLUTION AND APPOINTMENT OF A RECEIVER FOR US BOTTLING COMPANY BY SHOREGOOD WATER COMPANY, INC.,** *et al*

William G. Voelp (Defendant) for its Answer and affirmative defenses, to the Complaint hereby admits, denies and alleges as follows:

## PARTIES

*1.    Plaintiff ShoreGood is a corporation organized under the laws of the State of Maryland with its principal place of business in Caroline County, Maryland.*

Defendants and Plaintiffs operated under the assumption that ShoreGood Water Company (ShoreGood) was a corporation organized under the laws of the State of Maryland, but that it entered into a *de facto* merger with The Image Makers, Ltd under US Bottling Company.  The main office for ShoreGood Water Company was 1125-A Desoto Rd, Baltimore, MD 21223 where it was operated in a *de facto* merger by all Plaintiffs and Defendants, in their respective roles, along with The Image Makers, Ltd., under US Bottling Company.

*2.    Plaintiff Dennis S. Kellough is an individual residing in Anne Arundel County, Maryland.*

Admit that to the best of Defendant's knowledge Plaintiff Dennis S. Kellough resides in Anne Arundel County.

*3.    Plaintiff Bonnie M. Kellough is an individual residing in Anne Arundel County, Maryland.*

Admit that to the best of Defendant's knowledge Plaintiff Bonnie M. Kellough resides in Anne Arundel County.

4.     *Upon information and belief, Defendant US Bottling is a de facto corporation under the laws of the State of Maryland, with its principal place of business in Baltimore County, Maryland.*

Admit that US Bottling Company is a corporation under the laws of the State of Maryland with the full knowledge of all Plaintiffs and Defendants in this case. Deny that US Bottling Company has ever had its principal place of business in Baltimore County, Maryland, but instead Baltimore City, Maryland. The principal main office for the US Bottling Company was 1125-A Desoto Rd., Baltimore, MD 21223, with the principal manufacturing facility of US Bottling Company to be at 101 Frank M. Adams Industrial Way, Federalsburg, MD 21632.


5.     *Defendant Image Makers is a corporation organized under the laws of the State of Maryland, with its principal place of business in Baltimore County, Maryland. Upon information and belief, Defendant Image Makers has forfeited its corporate charter for failure to file personal property tax returns.*

Admit that The Image Makers, Ltd. (Image Makers) is a corporation organized under the laws of the State of Maryland with the full knowledge of all Plaintiffs and Defendants in this case. Deny that Image Makers has ever had its principal place of business in Baltimore County, Maryland, but instead Baltimore City. The principal main office for Image Makers was 1125-A Desoto Rd., Baltimore, MD 21223, along with the *de facto* merged companies of ShoreGood and US Bottling Company.


6.     *Defendant William G. Voelp is an individual residing in Anne Arundel County, Maryland.*
Admit that William G. Voelp is an individual residing in Anne Arundel County, Maryland.

7.     *Defendant John David Cecil is an individual residing in Anne Arundel County, Maryland.*
Admit that to the best of Defendant's knowledge Defendant John David Cecil resides in Anne Arundel County, Maryland

3

8.       *Defendant John T. Cecil, Jr. is an individual residing in Frederick County, Maryland.*

Admit that to the best of Defendant's knowledge Defendant John T. Cecil resides in Frederick

County, Maryland

## JURISDICTION AND VENUE

9.       *This Court has subject matter jurisdiction over the claims raised in this action pursuant to the Lanham Act and related claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338.*

Upon information and belief, Replevin exclusive jurisdiction lies strictly in Maryland District

Court.

10.      *This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all claims arising under state law because these claims are so related to Plaintiffs' federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.*

Upon information and belief, Replevin exclusive jurisdiction lies strictly in Maryland District

Court.

11.      *This Court may exercise personal jurisdiction over the defendants because, among other reasons, each of the Defendants resides in this District.*

Admit that Defendant William G. Voelp resides in the District and that to the best of Defendant's

knowledge, each of the other Defendants reside in the District.

12.      *Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as each Defendant resides in this District.*

Admit that Defendant William G. Voelp resides in the District.

## FACTS COMMON TO ALL COUNTS

*13.     Plaintiffs Dennis and Bonnie Kellough, a husband and wife, established Plaintiff ShoreGood in 2002, and opened its doors in 2003 as a bottled water manufacturing company.*

Admit that to the best of Defendant's knowledge ShoreGood was founded by Dennis and Bonnie Kellough in about 2002, and opened for business in about 2003.

*14.     The ShoreGood manufacturing facility is built on land owned by Dennis S. Kellough, LLC ("DSK").*

Admit that the bottling facility is built on land owned by Dennis S. Kellough, LLC ("DSK"). This limited liability company was agreed to be owned and controlled, through the *de facto* merger by Dennis S. Kellough, John David Cecil and William G. Voelp, with one third of the DSK owned by each individual and maintained as a separate entity.

*15.     Plaintiff ShoreGood developed a process for manufacturing bottled drinking water which tasted better than competing products in the marketplace.*

Deny the idea that ShoreGood developed its own process for manufacturing bottled water. ShoreGood, at the initial time of the *de facto* merger, produced water by reverse osmosis, in the traditional sense.  The process was developed by US Filter Company and installed by that company. These systems are designed and installed as a normal course of business by US Filter Company which is now owned by Siemens Corporation.   There are multiple other companies that produce similar systems that are engineered to the source water of the facility. After the *de facto* merger the joint partners installed additional equipment, including Deionization, which further improves water quality.  The process developed for manufacturing bottled drinking water by both ShoreGood prior to the merger and the joint partners after the merger is not unique and not deserving of a patent or special consideration.

There are bottled water facilities throughout the country with similar if not this exact manufacturing

processes.

16.    *From 2003 through early 2005, ShoreGood manufactured and shipped bottled water for several private label customers, however as of the end of 2004, the business had yet to turn a profit.*

Admit, to the best of Defendant's knowledge, that ShoreGood, prior to the merger, shipped water

for a few private label customers, and that they had not turned a profit by the end of 2004.

17.    *In August of 2004, Defendants William G. Voelp and John David Cecil, owners of Defendant Image Makers, approached ShoreGood and its owners, the Kelloughs, about entering into a joint venture.*

Deny that in August 2004, Defendants William G. Voelp and John David Cecil, owners of Image

Makers, approached ShoreGood and its owners about entering into a joint venture. In about August of

2004 Defendants William G. Voelp and John David Cecil, owners of Image Makers, a profitable

company, approached ShoreGood and its owners, the Kelloughs, about purchasing bottled water without

a label or, in the alternative, having ShoreGood fulfill orders of bottle water at an attractive price while

applying labels supplied by Image Makers. The initial meeting occurred with Bonnie M. Kellough,

Dennis S. Kellough and three employees of ShoreGood. These employees were, to the best of

Defendant's knowledge, Robert Harris the plant manager, Charles the sales manager, and Rhonda the

office manager. Dennis Kellough and Charles were to send us a quotation for both unlabeled blank

bottles and labeled bottles with Image Makers supplying the labels as a finished product. Subsequent to

that meeting Dennis S. Kellough called for a meeting which was held at TGI Fridays in Columbia

Maryland where Dennis S. Kellough approached Defendants William G. Voelp and John David Cecil

about entering into a merger, and not a joint venture. It was agreed at that meeting to merge the

companies with each individual owning 1/3 (one third) of the shares of the related companies including

DSK, LLC.

18.     *Image Makers represented itself to ShoreGood and the Kelloughs as having a customer base for ShoreGood product, but no manufacturing facility, seemingly a perfect fit for ShoreGood, which had a manufacturing facility but needed customers.*

Admit that Image Makers had a profitable and growing customer base available and that

ShoreGood had a production bottling facility and few, if any, viable customers.  Deny that Image

Makers did not have a manufacturing facility.  It is true that Image Makers did not have a bottling

facility but did design, print, laminate and cut its own labels in-house and apply them to bottles with its

in-house labeling equipment in a manufacturing facility located in approximately 10,000 square feet at

1002 Wilso Drive, Baltimore, MD 21223 in Baltimore City.  Image Makers was actively pursing capital

to build and run its own bottling facility in the Baltimore metropolitan area, and was enticed by

Kellough to merge with him and his facility instead of constructing its own, since Kellough purported to

hold "expertise" in bottling.

19.     *Image Makers, ShoreGood and DSK signed an "Agreement in Principal," on September 16, 2004, a copy of which is attached hereto as Exhibit 1.*

Admit that Image Makers, ShoreGood and DSK signed the "Agreement in Principal" on

September 16, 2004.

20.     *The Agreement in Principal essentially provided that Image Makers, ShoreGood and DSK would combine operations, with John David Cecil, William G. Voelp and Dennis Kellough as co-equal "partners," sharing the profits and losses of the combined business operations.*

Admit that the Agreement both in writing and in spirit provided that Image Makers, ShoreGood and DSK would combine operations, with John David Cecil, William G. Voelp and the Kelloughs as co-equal partners, sharing in the profits and loses of the combined business operations.

*21.     The Agreement in Principal explicitly stated that it was 'subject to final legal documentation,' however Image Makers, ShoreGood and DSK never formally memorialized their final agreement or accomplished any merger transaction.*

Deny this premise. While final legal documentation was not formally memorialized it was created and only was not formalized because of issues on the side of Plaintiff. There were several issues keeping the finalization of the documents which did reach the final stage from being signed:

A.     A serious truck accident involved ShoreGood's employee and company truck. This early morning accident involved the plant manager Rob Harris allowing a potentially intoxicated individual to operate the vehicle after being arrested due to erratic driving only hours before. Due to the seriousness of the accident, the driver was flown by Maryland Shock Trauma for life saving care. This accident posed serious liabilities that all partners agreed should be carefully thought out in the event a new strategy would be necessary to protect the assets of the US Bottling Company.

B.     Mercantile Bank had improperly filed the guarantee paperwork for the US Department of Agriculture on the loans given to ShoreGood. Mercantile made it clear that any official change in ownership would trigger the calling of the loans to be paid in full. John T. Cecil and Dennis S. Kellough began work to find a bank or financial institution to replace Mercantile.

It was agreed by all of the partners that we would operate under the merger and formalize documents as time allowed the repercussions of the truck accident to reveal the best course of action and a financial

8

institution could be found to replace Mercantile Bank.  In fact, the *de facto* merger went forward and operated every day from late 2004 until about April of 2008 as a fully merged entity.

22.     *Notwithstanding the lack of a definitive agreement, Defendants John David Cecil and William G. Voelp organized US Bottling in January of 2005 by filing articles of incorporation, and from that point forward proceeded to manage the ShoreGood and Image Makers businesses under Defendant US Bottling.*

        Deny that Defendants John David Cecil and William G. Voelp organized US Bottling Company alone.  In fact, US Bottling Company was formed by attorney's Vasilios Peros at Venable with all correspondences either copied or directed at Attorney for the Plaintiffs, Bruce Kaufmann.  Plaintiff Dennis S. Kellough was wholly involved with the creation of US Bottling Company, and in fact, the trade mark application for US Bottling Company was applied for through Kellough's attorney who had also applied for ShoreGood's "Great Blue" mark.

23.     *Upon information and belief, US Bottling was never properly organized, however Defendants John David Cecil and William G. Voelp have held it out as a corporation and exercised corporate powers on its behalf.*

        Deny that US Bottling Company was never properly organized.  Dennis S. Kellough was completely aware of its creation and wholly involved directly and through his attorney, Bruce Kaufmann.  Dennis S. Kellough was wholly involved in exercising the corporate powers on its behalf on numerous occasions.  These occasions include but are not limited to:

                A.     Blanchet loan that Plaintiff attached as Plaintiffs' own EXHIBIT 2 on their initial
                        complaint shows Dennis S. Kellough participating in the document along with US
                        Bottling Company.

B.      Loan documents, dated April 29, 2005, with The Patapsco Bank which show a

loan to US Bottling Company where Dennis S. Kellough is a guarantor along with the

Defendants.

C.      Loan documents, dated April 4, 2005, with The Patapsco Bank which show a loan

to US Bottling Company where Dennis S. Kellough is a guarantor along with

Defendants.

D.      The resignation by Dennis S. Kellough from any position of US Bottling

Company and Image Makers effective April 28, 2008.

E.      The resignation by Bonnie M. Kellough from any position in US Bottling

Company and Image Makers Effective April 28, 2008.

F.      Emails from Dennis S. Kellough to various individuals via a US Bottling

Company email address.

*24.     Due to personal issues wholly unrelated to the ShoreGood business, the Kelloughs left*
*management of the US Bottling business largely in the hands of Defendants John David Cecil and*
*William G. Voelp.*

Deny that the Kelloughs left management of the US Bottling Company business largely in the

hands of Defendants John David Cecil and William G. Voelp.  Defendants will prove that Dennis S.

Kellough was wholly involved in operation of merged entity.  As per the agreement of the parties,

William G. Voelp and John David Cecil were responsible for sales and marketing, John T. Cecil, CPA,

was responsible for the administration, bookkeeping and financial matters, and Dennis S. Kellough was

responsible for all plant and manufacturing operations.  From 2005 through early 2008 meetings of

owners were held most Fridays of each week, when all parties were available.  Attendance in these

meetings were John T. Cecil, William G. Voelp, John David Cecil, and Dennis S. Kellough for all

10

meetings. Some, but fewer, meetings were also attended by Bonnie S. Kellough. Many meetings were attended by employees. These meetings had on their agendas all aspects of corporate governance and usually were governed by a formal meeting agenda.

25.   *During a January, 2005, meeting, Defendants John David Cecil and William G. Voelp informed Plaintiffs Dennis and Bonnie Kellough that Defendant US Bottling required additional funds in order to continue operating.*

Deny that during a meeting in January 2005, Defendants John David Cecil and William G. Voelp informed Plaintiffs Dennis and Bonnie Kellough that Defendant US Bottling Company required additional funds in order to continue operating. It was speculated by Defendants William G. Voelp and John David Cecil in the initial in 2004 at the TGI Fridays in Columbia, Maryland that at least one million dollars was required to operate and make modifications and additions to the existing bottling facility at the formation of the merger before the new company would turn a profit. This information was agreed to and conveyed at the first meeting at TGI Fridays in 2004. Dennis S. Kellough assured Defendants that he would insure that the money was available for the joint company. John T. Cecil, CPA became involved at the time of merger and handled all financial matters. During normal meetings throughout, funding needs were discussed. Some funding was provided by the Kelloughs over time, some by other Defendants.

26.   *As a result of the parties January 2005 meeting, Plaintiffs Dennis and Bonnie Kellough mortgaged several of their properties and in early 2005 loaned mortgage proceeds totaling approximately $350,000.00 to Defendant US Bottling.*

Defendant William G. Voelp lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation of the investment of mortgage proceeds contained in this paragraph and,

therefore, denies the same.  Plaintiffs must provide detailed information as to the exact amount invested into the merged US Bottling Company.

27.     *Upon information and belief, in January of 2005, Defendant John T. Cecil, Jr., a licensed C.P.A., came on full time with US Bottling, and loaned the company an additional $80,000.00, which upon further information and belief, he may have subsequently converted to stock in US Bottling.*

Admit that in the general time frame of late 2004 and early 2005 John T. Cecil, CPA came on full time with US Bottling Company (the merged entity) and invested into the company some funds. Defendant further admits that John T. Cecil, for this investment and other inducement, was given a part of William G. Voelp and John David Cecil's interest in the merged company.  Dennis S. Kellough was fully aware of this arrangement and was given full right to veto this agreement.  Dennis S. Kellough met with John T. Cecil and agreed.  Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the amount that John T. Cecil, Jr. invested into either Image Makers or US Bottling Company and, therefore, denies the same.

28.     *From January, 2005 onward, Defendants John David Cecil, William G. Voelp and John T. Cecil, Jr. operated US Bottling, which in turn managed ShoreGood as a break even company.*

Deny that from January 2005 onward, Defendants John David Cecil, William G. Voelp and John T. Cecil operated US Bottling Company alone.  Defendant will clearly and beyond a shadow of doubt show that Dennis S. Kellough was wholly involved in all aspects of the operation of the merged entity. Defendant lacks knowledge or information sufficient to form a belief as to the truth or falsity of the reasons that John T. Cecil, CPA operated ShoreGood as a break even company and, therefore, denies the same.  This Defendant is not a CPA or tax professional.  Dennis S. Kellough was present during numerous meetings as it related to the discussions of financial layouts of the merged companies.

29.    *In return for turning over management of ShoreGood to US Bottling, US Bottling was to ensure that all ShoreGood expenses, including but not limited to payroll, rent/mortgage and taxes, were promptly paid.*

Deny that any agreement outside of the *de facto* merged company existed between the parties or

entities.  The accounting methods were explained during owner meetings that were attended by Dennis

S. Kellough, John T. Cecil, John David Cecil, and William G. Voelp and less often Bonnie M. Kellough.

ShoreGood expenses were US Bottling Company's expenses as were all of Image Maker's.  Defendant

denies that there was ever any "rent" amount as it pertains to ShoreGood.

30.    *By mid-2005, US Bottling, citing cash flow problems, ceased making the mortgage and tax payments owed by ShoreGood. In order to avoid foreclosure, the Kelloughs paid ShoreGood's obligations current out of personal funds, and thereafter continued paying certain ShoreGood expenses.*

Defendant William G. Voelp lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegation of the investment of making mortgagee and tax payments in this

paragraph and, therefore, denies the same.  Plaintiffs must provide detailed information as to the exact

amount invested into the merged US Bottling Company pertaining to this paragraph.

31.    *In January of 2006, Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr., once again met with Plaintiffs Dennis and Bonnie Kellough and once again informed the Kelloughs that US Bottling needed additional funds in order to continue in business.*

Deny that Defendants William G. Voelp, John David Cecil and John T. Cecil met with Plaintiffs

Dennis and Bonnie Kellough and informed them that US Bottling Company needed additional funds in

order to continue in business.  This again implies that Defendants in unison called a meeting asking for

Kellough's additional investment.  During the normal course of business that Dennis S. Kellough was

wholly involved in, John T. Cecil may have brought to the attention of all partners the need for capital to

purchase additional equipment or for other needs of the merged company.  All outside loans,

investments and decisions were made together with all principals.

32.     *The Kelloughs approached acquaintances of theirs, William K. and Margaret B. Blanchet, about extending a loan to US Bottling, and in May of 2006, the Blanchets loaned US Bottling $300,000.00 pursuant to a "Confessed Judgment Promissory Note" (the "Note") dated May 18, 2006, signed by the Defendants, DSK, ShoreGood and Dennis S. Kellough. A copy of the Note is attached hereto as Exhibit 2 and incorporated as though fully set forth herein.*

       Admit that William K. and Margaret B. Blanchet extended a loan to US Bottling Company

guaranteed by all Plaintiffs and Defendants in the amount of $300,000.00 pursuant to the Promissory

Note in Plaintiff EXHIBIT 2.

33.     *In January of 2007, Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr. met with Plaintiffs Dennis and Bonnie Kellough once again, and once again informed the Kelloughs that US Bottling required additional funds if it was to continue in operation.*

       Deny that Defendants William G. Voelp, John David Cecil and John T. Cecil met with Plaintiffs Dennis and Bonnie Kellough and informed them that US Bottling Company needed additional funds in order to continue in business.  This again implies that Defendants in unison called a meeting asking for Kellough's additional investment.  During the normal course of business that Dennis S. Kellough was wholly involved in, John T. Cecil may have brought to the attention of all partners the need for capital to purchase additional equipment or for other needs of the merged company.  All outside loans, investments and decisions were made together with all principals.

34.     *In response to the parties' January 2007 meeting, Plaintiffs Dennis and Bonnie Kellough came up with approximately $200,000.00 in cash, which they lent to US Bottling in January of 2007.*

       Defendant William G. Voelp lacks knowledge or information sufficient to form a belief

as to the truth or falsity of the allegation of the investment of $200,000 in cash listed in this paragraph

and, therefore, denies the same.  Plaintiffs must provide detailed information as to the exact amount

invested into the merged US Bottling Company pertaining to this paragraph.  Furthermore, Defendant

denies that Plaintiffs ever "loaned" money to US Bottling Company (the merged company) in the

traditional sense, but instead invested any funds into the merged company.

35.     *In addition to loaning US Bottling additional cash in 2007, the Kelloughs made payments
totaling approximately $700,000.00 on behalf of US Bottling and ShoreGood for expenses such as
mortgage payments and taxes, bringing the Kelloughs' loans to US Bottling to an amount in excess of
$1,500,000.00.*

Defendant William G. Voelp lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegation of the investment of $700,000 and tax payments in this paragraph and,

therefore, denies the same.  Plaintiffs must provide detailed information as to the exact amount invested

into the merged US Bottling Company pertaining to this paragraph.  Furthermore, Defendant denies that

Plaintiffs ever "loaned" money to US Bottling Company (the merged company) in the traditional sense,

but instead invested any funds into the merged companies.

36.     *The Kelloughs became more involved in the management of US Bottling and ShoreGood in 2007,
at which time they noticed irregularities in the companies' bookkeeping and management practices;
these irregularities included depositing of checks payable to US Bottling into an account maintained by
Defendant Image Makers, discrepancies between the books of the respective companies, the company's
lease of vehicles which it did nor and/or could not use, the companies' purchase of equipment that it
could not use, and other red flags leading the Kelloughs to question the management practices of
Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr.*

Deny that the Kelloughs became more involved in the management of US Bottling Company and

ShoreGood in 2007.  Dennis S. Kellough was wholly involved in the management of US Bottling

Company (the merged entity including all others) from inception.  Defendant William G. Voelp lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of

"irregularities in the companies' bookkeeping and management practices," except in so far as Dennis S.

Kellough had full knowledge and access to all bookkeeping and management and was weekly in

meetings with other principals where all items and purchases were discussed.  Deny that any

management practices of William G. Voelp were irregular in any way, but instead regular and customary.

37.     *The Kelloughs repeatedly requested full access to US Bottling and Image Makers' books and records, however the Defendants denied all requests, or produced only partial information.*

Deny that the Kelloughs repeatedly requested full access to US Bottling Company and Image Makers' books and records and that Defendant denied all requests, or produced only partial information. Plaintiff had absolute full access to all records, both financial and otherwise, to all physical and electronic data to the knowledge of Defendant. Plaintiff had a master key to the main office that gave them access to all rooms in the building, including Defendant's offices. Plaintiff also had electronic access with all passwords to the entire computer system and accounting system from the Baltimore headquarters itself, the ShoreGood plant of US Bottling Company, the offices of K & W Electric and from their home. This amount of access was greater access than any principal at any time. Additionally, in May of 2008, Plaintiff sent an auditor to premises at the Baltimore headquarters who met with John David Cecil. John David Cecil, in the hearing of this Defendant, told the auditor where all the records were kept and gave him free reign to copy at his discretion any records. Auditor told John David Cecil he would return and never returned.

38.     *In May of 2008, the Kelloughs terminated the relationship between ShoreGood and US Bottling following the Defendants refusal to provide Plaintiffs access to the complete books and records for US Bottling and its related entities, and further following Defendants' refusal to provide an accounting for monies had and received by US Bottling and Image Makers.*

Deny that in May of 2008 the Kelloughs terminated the relationship between ShoreGood and US Bottling Company. Kelloughs resigned on April 24, 2008. Deny that Plaintiff ever asked this Defendant to provide access to complete books and records for US Bottling Company and related

entities at that time.  Deny that Plaintiff ever requested this defendant provide an accounting for monies

had and received by US Bottling Company and Image Makers.  Defendant William G. Voelp is not a

CPA and did not care for or do the bookkeeping of US Bottling Company or the related entities.

Although generally familiar, as should Plaintiffs be as access was similar or greater, with the books of

the entities, Defendant does not have sufficient knowledge to provide a complete accounting.  Plaintiffs

did not move to terminate the relationship with Defendants in a businesslike and ethical manner, but

instead illegally and without provocation locked the Defendants out of the merged Federalsburg facility.


39.     *Despite demand, Defendants William G. Voelp, John David Cecil, US Bottling and Image*
*Makers, have failed and refused to account to the Kelloughs for funds received by or on behalf of*
*Defendant US Bottling, funds intended for Defendant US Bottling, but actually received by Defendant*
*Image Makers, or funds or other benefits received by the individual defendants in connection with US*
*Bottling.*

Deny that Plaintiffs made a demand to this Defendant William G. Voelp at the time of their filing

directly.  If such demand was made, it was not conveyed to Defendant William G. Voelp by the time of

Plaintiff's filing of this Complaint.  Defendant William G. Voelp is not a CPA and did not care for or do

the bookkeeping of US Bottling Company or the related entities.  Although generally familiar, as should

Plaintiffs be as access was similar or greater, with the books of the entities, Defendant does not have

sufficient knowledge to provide a complete accounting.


40.     *Upon information and belief, Defendants William G. Voelp, John David Cecil and John T. Cecil,*
*Jr., while in control of Defendant US Bottling, failed and refused to provide notice of, or properly hold,*
*meetings of the stockholders or directors of US Bottling.*

Deny that Defendants failed and refused to provide notice of, or properly hold, meetings of the

stockholders or directors of US Bottling Company.  Meetings were held, almost weekly, and in the

presence of William G. Voelp, John T. Cecil, John David Cecil and Dennis S. Kellough and less often

Bonnie M. Kellough. All parties were always apprised of the meeting dates and times. Many witnesses are available to verify the meetings of principals.

41.     *Upon information and belief, Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr., while in control of Defendant US Bottling, failed and refused to properly authorize or issue shares of stock in Defendant US Bottling to its equitable owners.*

Defendant William G. Voelp lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation of the issuance of shares of stock in Defendant US Bottling Company in this paragraph and, therefore, denies the same. All formation of companies was done through counsel of Defendants and Plaintiffs.

42.     *Plaintiffs Dennis and Bonnie Kellough repeatedly requested access to Defendant US Bottling's books and records between, however Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr. provided only limited documentation.*

Deny that Plaintiffs Dennis and Bonnie Kellough repeatedly requested from this Defendant William G. Voelp access to Defendant US Bottling Company's books and records. In fact, Plaintiffs, to the knowledge of Defendant, had greater access to the books and records of US Bottling Company than any other principal, with the ability to access the records electronically form multiple venues, full access to all areas of the merged corporate headquarters, and through Jeremy Martin. Jeremy Martin had full access to all areas of the merged corporate headquarters and was dating Erin Kellough, the daughter of the Plaintiffs. He was a computer expert and had all passwords and access. Mr. Martin came into the offices of the principals after normal business hours and without their permission, after the resignation of the Kelloughs and took files, paperwork and electronic data.

43.     *Upon information and belief, Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr. were and likely are the directors of Defendant US Bottling, and as such owe a fiduciary duty to its minority shareholder, Plaintiff Dennis S. Kellough, and to its affiliate Plaintiff ShoreGood.*

Deny that Defendants are the only directors of US Bottling Company. The directors of US Bottling Company are clearly listed on the documents of formation as John David Cecil, William G. Voelp and Dennis S. Kellough. This document was filed with the State of Maryland with copies sent to Bruce Kaufmann, attorney for the Plaintiffs. In addition, Defendant will prove that Dennis S. Kellough was wholly involved with the operation of US Bottling Company from its inception and acted in his corporate authority on numerous occasions.

44.    *Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr., by virtue of their respective relationships and interests in to each other, and to Defendants US Bottling and Image Makers, were interested directors of Defendant US Bottling with respect to any transactions between Defendant US Bottling and any of them or Defendant Image Makers.*

Deny that Defendants, by virtue of any relationship, in or in any other way, had or have any interest with respect to each other that would in any way prejudice one company or individual against another. Defendants only shared interest in these companies at this point is that we are all defendants in this Complaint.

45    *Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr. never disclosed to any of the Plaintiffs the terms of any transactions between any of them or Defendant Image Makers and Defendant US Bottling, and upon information and belief, one or more of Defendants William G. Voelp, John David Cecil, John T. Cecil, Jr. and/or Defendant Image Makers entered into transactions with Defendant US Bottling which were not fair and reasonable to Defendant US Bottling and or Plaintiff ShoreGood.*

Deny that Defendants never disclosed to Plaintiffs the terms of the transactions between them. Plaintiff Dennis S. Kellough was given the opportunity to interview and meet John T. Cecil prior to the agreement that he would invest money into the company and own some of Defendant's share of the company. Dennis S. Kellough approved. In addition, no less interest in any of the arrangement between

John T. Cecil and Defendants was realized by Plaintiff, and to the contrary, investment was made into the company without cost or consideration from Plaintiff, so his value was increased, at no cost to him.

46.     *Plaintiff Dennis S. Kellough, the minority stockholder in Defendant US Bottling, was precluded from learning of the transactions between US Bottling and Defendants William G. Voelp, John David Cecil, John T. Cecil, Jr. and/or Defendant Image Makers, by Defendants' obfuscation of US Bottling's books and records.*

Deny that Plaintiff Dennis S. Kellough was ever precluded of learning of any transaction by and between any Defendants at any time. Deny that Defendants ever obfuscated with the books and records of US Bottling Company. The books and records of US Bottling Company did not move from their placement by John T. Cecil or any bookkeeping employees of US Bottling Company until such time as US Bottling Company had to vacate the premises from lack of financial resources due to violation of fiduciary duty by Plaintiffs. In addition, Plaintiffs came into the premises with their master key, after their resignation, and obfuscated with records, both financial and otherwise.

47.     *Plaintiff ShoreGood is the owner of the federally registered trademark Great Blue (the "Mark"), registered in connection with goods and services described as "Bottled Drinking Water."*

Admit, to the best of Defendants knowledge, that ShoreGood is the entity that owns the federally registered trademark Great Blue. Deny that ShoreGood is not merged into US Bottling Company and is owned, in great part, by the Defendants.

48.     *Plaintiff ShoreGood filed its application for registration of the Mark on January 23, 2003, and obtained its registration on August 10, 2004.*

Defendant William G. Voelp lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that the registration was obtained on August 10, 2004 in this paragraph and, therefore, denies the same. Plaintiff may produce proper documentation to this alleged fact.

*49.    During Defendant US Bottling's management of Plaintiff ShoreGood, Defendant US Bottling marketed and sold bottled drinking water, manufactured by Plaintiff ShoreGood, under the Mark.*

Deny the relationship as presented in this paragraph. US Bottling Company, as a merged entity of Image Makers and ShoreGood did market and sell bottled water under the Mark. This part of the business of US Bottling Company was extremely small by comparison to the core business of private label, but was a small part of the business in purified bottled water only.

*50.    Plaintiff ShoreGood's bottled drinking water product, packaged with its Great Blue Mark, was awarded the Berkely Springs International Gold Medal Award for "Best Tasting Purified Bottled Water" (the "Award"), distinguishing itself from its competitors.*

Admit that the Great Blue Mark, was awarded the Berkley Springs 2008 International Gold Medal. Deny that the award was issued to ShoreGood. The award was presented to John Cecil and Dave Cecil. The Award was issued for Great Blue in the name of US Bottling Company in Federalsburg, Maryland.

*51.    Following the disassociation of Plaintiff ShoreGood from Defendant US Bottling in May of 2008, Defendant US Bottling has used, and continues to use, the Mark in connection with the sale of bottled drinking water product by Defendant US Bottling, which is not the bottled drinking water product manufactured by Plaintiff ShoreGood.*

Deny that US Bottling Company required any license to use the Mark, as there was a *de facto* merger by and between ShoreGood, the holder of the Mark with US Bottling Company. In the alternative, deny that following the lock out by Plaintiff ShoreGood from the facilities in Federalsburg, Maryland, Defendant US Bottling Company has used the Mark in connection with the sale of bottled water produced anywhere other than the proper facility. Other than remaining inventory, no sales were taken or orders shipped on any Great Blue product after approximately May of 2008. No Great Blue was produced at any other facility or sold to any customers in a fraudulent way. There were no proceeds

from any sales of any product sold with the Great Blue Mark after approximately May of 2008. Defendants' main business was in private label (personalized labels) and not brand name (Great Blue) product. A majority of sales were not in Great Blue even prior to May of 2008 and prior to the lockout by Plaintiffs.

52.     *Defendant US Bottling's use of the Mark is without license from Plaintiff ShoreGood.*

Although Defendant US Bottling Company did not need a license from Plaintiff ShoreGood as Plaintiff was owned in the merger by US Bottling Company, Defendant William G. Voelp denies that US Bottling Company used the Mark after May of 2008 for any product produced in any facility other than the Federalsburg proper facility. In addition, Defendant US Bottling Company did not profit from the sale of any product with the Great Blue Mark.

53.     *Upon information and belief, Defendants John David Cecil, John T. Cecil, Jr. and William G. Voelp personally participated in and/or had the right and ability to supervise, direct and control the infringement and other wrongful conduct alleged in this Complaint, and (b) derived direct financial benefit from that infringement and other wrongful conduct.*

Deny that Defendant supervised, directed or controlled any infringement or any other wrongful conduct alleged in this Complaint and deny that Defendant derived any direct financial benefit from any infringement or wrongful conduct.

## COUNT I
## TRADEMARK INFRINGEMENT (AGAINST DEFENDANTS US BOTTLING, JOHN DAVID CECIL, JOHN T. CECIL, JR. AND WILLIAM G. VOELP)

54.     *Plaintiffs incorporate the foregoing averments as though fully set forth herein.*

Defendant incorporate the foregoing averments as though fully set forth herein.

55.     *Plaintiff ShoreGood is the owner of United States Trademark Registration No. 76484116 (the "Mark"), registered August 10, 2004, for "Great Blue" (for bottled drinking water in Class IC 032, US 045, 046 & 048). This registration is now valid, subsisting, uncancelled and unrevoked.*

Defendant William G. Voelp lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that the registration was obtained on August 10, 2004 in this paragraph and, therefore, denies the same. Plaintiff may produce proper documentation to this alleged fact.

56.     *Continuously since on or about June 27, 2003, Plaintiff ShoreGood has used the Mark in connection with and to identify its bottled drinking water products, and to distinguish said products from similar products offered by other companies, by, and without limitation, prominently displaying the Mark on its bottled drinking water, and advertising and promotional materials distributed in several states. Plaintiff ShoreGood's products sold under the Great Blue mark and brand name are provided in several States, including in the State of Maryland.*

Deny that ShoreGood has not "continuously" used the Mark in connection with and to indentify its bottled drinking water products. From approximately early 2005 until the lockout and violation of fiduciary duty by Plaintiffs, US Bottling Company used the Mark with its name and not ShoreGood with the full knowledge and acceptance of Plaintiffs.

57.     *Defendant US Bottling has infringed the Mark in interstate commerce by various acts, including, without limitation, selling, offering for sale, promotion and advertising bottled drinking water under the name "Great Blue," including the operation of an internet web site prominently displaying, advertising and promoting bottled drinking water, not manufactured by ShoreGood, under the Great Blue name.*

Deny the premise that the Mark is not owned by US Bottling Company in the *de facto* merger and indeed property of the Defendant. In the alternative, also deny that US Bottling Company infringed on the Mark in any commerce, whether interstate or intrastate in the actual sale of any product having the Mark. No web sales are generated by use of the Mark or were generated by the use of the Mark. To the knowledge of this Defendant, at no time did the web generate sales of non-name brand bottled water

product with the Mark at any time in US Bottling Company's history. The web site of US Bottling Company was targeted to non-branded private label customers.

58.     *Defendant US Bottling's use of the Mark in connection with the advertising and sale of bottled drinking water products is without license, permission or authority of Plaintiff ShoreGood, and said use is likely to cause confusion, to cause mistake and/or to deceive.*

Deny that US Bottling Company's use of the Mark was without license, permission or authority as ShoreGood is merged *de facto* into US Bottling Company. In the alternative, deny that US Bottling Company knowingly used the mark and/or received any monetary benefit or that it was likely to cause confusion, mistake or deceive as US Bottling Company did not market or sell products with the Mark after the lockout by Plaintiffs.

59.     *Defendant US Bottling's use of the Mark in connection with bottled drinking water has been made notwithstanding Plaintiff ShoreGood's well-known and prior established rights in the Mark and with both actual and constructive notice of Plaintiff ShoreGood's federal registration rights under 15 U.S.C. § 1072.*

Deny that the Mark is not owned by US Bottling Company by *de facto* merger. In the alternative, deny any active and constructive notice to this Defendant about the use of the Mark and further deny that any monetary gain was made after the lockout by Plaintiffs.

60.     *Upon information and belief, Defendant US Bottling's infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Plaintiff ShoreGood's business, reputation and good will in its federally registered Great Blue trademark.*

Deny that ShoreGood's Mark is not owned through the *de facto* merger by US Bottling Company. In the alternative, deny that US Bottling Company is currently or has ever infringed on the Mark after the lockout by Plaintiffs. Further deny any good will in the Mark that was not created by US Bottling Company.

61.     *The US Bottling Defendants' wrongful conduct is likely to continue unless restrained and enjoined.*

Deny that US Bottling Company conducted any wrongful act.  US Bottling Company is currently

not in operation and is not solvent due to violation of fiduciary duty by Plaintiffs.

62.     *As a result of the US Bottling Defendants' wrongful conduct, Plaintiff ShoreGood has suffered and will continue to suffer damages. Plaintiff ShoreGood is entitled to injunctive relief and to an order compelling the impounding and/or destruction of all products and advertising materials bearing the Mark or colorable imitations thereof. Plaintiff ShoreGood has no adequate remedy at law for the US Bottling Defendants' wrongful conduct because among other things, Plaintiff ShoreGood's Mark is unique and valuable property which has no readily determinable market value, and the US Bottling Defendants wrongful conduct, and the resulting damage to Plaintiff ShoreGood, is continuing.*

Deny that US Bottling Company or Defendants made any wrongful conduct, and deny that

ShoreGood has standing to bring this suit against US Bottling Company due to the *de facto* merger into

that same company.  In the alternative, US Bottling Company and Defendants have not benefited

monetarily and have not knowingly marketed or used the mark since the lockout by Plaintiffs.

63. *The US Bottling Defendants' use of the Mark constitutes a counterfeit mark.*

Deny that US Bottling Company's use of the Mark could constitute a counterfeit mark as

ShoreGood is part of the *de facto* merger into the company.  In the alternative, US Bottling Company

did not knowingly use the Mark in commerce after the lockout.

**WHEREFORE**, *Plaintiff ShoreGood Water Company, Inc. respectfully requests that the Court issue an Order :*
        *a. Finding that US Bottling Company, Inc., by its agents, Defendants William G. Voelp and John David Cecil, have willfully infringed ShoreGood Water Company, Inc.'s rights in the Mark, in violation of 15 U.S.C. § 1125(a);*
        *b. Enjoining and restraining Defendants US Bottling Company, Inc., its agents, Defendants William G. Voelp and John David Cecil, and any other of their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with any of them, pursuant to 15 U.S.C. § 1125(a), from:*

*i. Imitating, copying, or making any other infringing use or distribution of the Mark or of any products protected by the Mark;*

*ii. Manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting or displaying any products and/or items bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of the Mark;*

*iii. Using any simulation, reproduction, counterfeit, copy or colorable imitation of the Mark in connection with the manufacture, assembly, production, distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion, or display of any product and/or item not authorized or licensed by Plaintiff ShoreGood Water Company, Inc.;*

*iv. Using any false designation of origin or false description which can or is likely to lead the trade, public, or individuals to erroneously believe that the product has been designed or constructed, sponsored, approved, or authorized by or for Plaintiff ShoreGood Water Company, Inc., when such is not true in fact; v. Engaging in any other activity constituting an illegal distribution of any ShoreGood Water Company, Inc. product or item and/or an infringement of any of Plaintiff ShoreGood Water Company, Inc.'s trademarks;*

*vi. Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs i. through v. above.*

*c. Requiring US Bottling and its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with any of them, to surrender for destruction all nameplates, labels, advertisements, and other materials incorporating or reproducing the infringing Mark, pursuant to Section 36 of the Lanham Act (15 U.S.C. § 1118);*

*d. Requiring US Bottling Company, Inc., by its agents, Defendants William G. Voelp and John David Cecil, to account to Plaintiff ShoreGood for US Bottling's profits and the actual damages suffered by Plaintiff ShoreGood Water Company, Inc. as a result of Defendant's acts or infringement;*

*e. Awarding judgment in favor of Plaintiff ShoreGood Water Company, Inc. and against Defendants US Bottling Company, John David Cecil, John T. Cecil, Jr. and William G. Voelp, in an amount equal to three times Defendant US Bottling Company's profits obtained in connection with its use of the Mark, together with damages sustained by the Plaintiff ShoreGood Water Company, Inc. arising from Defendant US Bottling Company's use of the Mark, together with attorneys' fees, pre and post-judgment interest;*

*f. Compelling US Bottling Company, and any other defendants who may be liable therefore, to pay Plaintiff ShoreGood Water Company, Inc.'s attorneys' fees, together with costs of this suit, pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117); and*

*g. Granting such other and further relief as is proper under the circumstances.*

Answering Paragraphs a, b, c, d, e, f and g in this section, Defendant denies the Plaintiffs are

entitled to any of the relief requested.

## COUNT II
## FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION AND FALSE DESIGNATION OF AFFILIATION (BY SHOREGOOD AGAINST DEFENDANTS US BOTTLING, JOHN DAVID CECIL, JOHN T. CECIL, JR. AND WILLIAM G. VOELP)

64.   *Plaintiffs incorporate the foregoing averments as though fully set forth herein.*

Defendants incorporate the foregoing averments as though fully set forth herein.

65.   *The Mark distinguishes Plaintiff ShoreGood's goods from the goods of its competitors.*

Admit that any granted Mark would distinguish one product from the product of its competitors.

66.   *The US Bottling Defendants wrongful conduct includes the use of the Mark in connection with its goods.*

Deny that ShoreGood has the right to sue Defendants since through a *de facto* merger US Bottling Company includes ShoreGood.  In the alternative, deny Defendants committed any wrongful conduct in connection with the Mark.

67.   *The US Bottling Defendants have engaged in this conduct willfully, with the purpose of misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the goods it offers, to falsely suggest that such goods are genuine products of Plaintiff ShoreGood, and/or that Plaintiff ShoreGood has authorized by, or is involved with, US Bottling, and to trade upon Plaintiff ShoreGood's goodwill and business reputation.*

Deny that US Bottling Company Defendants can commit any wrong act with respect to this Mark as ShoreGood is in a *de facto* merger with US Bottling Company.  In the alternative, deny that Defendants have willfully engaged in any conduct with the purpose of misleading, deceiving or confusing customers and the public as to any allegation.  Any good will from the Mark was established by and through US Bottling Company and the Defendants efforts.

68.   *The US Bottling Defendants' conduct constitutes (a) false designation of origin, (b) false description, and (c) false representation that the products originate from Plaintiff ShoreGood, all in violation of § 43(a) of the Lanham Trademark Act, as set forth at 15 U.S.C. § 1125(a).*

Deny that US Bottling Company Defendants can commit any wrong act with respect to this Mark as ShoreGood is in a *de facto* merger with US Bottling Company. In the alternative, deny that Defendants conduct constitutes and false designations of origin, false descriptions or false representations. No commerce was knowingly conducted by Defendants using the Mark after the lockout by Plaintiffs.

69.    *The US Bottling Defendants' wrongful conduct is likely to continue unless restrained and enjoined.*

Deny that US Bottling Company Defendants can commit any wrong act with respect to the Mark as ShoreGood is in a *de facto* merger with US Bottling Company. In the alternative, deny that US Bottling Company Defendants committed any wrongful conduct. In addition, US Bottling Company, due to violation of fiduciary duty of Plaintiff, is insolvent and no longer in operation.

70.    *As a result of the US Bottling Defendants' wrongful conduct, Plaintiff ShoreGood has suffered and will continue to suffer damages. Plaintiff ShoreGood is entitled to injunctive relief and to an order compelling the impounding and/or destruction of all goods and materials bearing the Mark.*

Deny that US Bottling Company Defendants can commit any wrong act with respect to the Mark as ShoreGood is in a *de facto* merger with US Bottling Company. In the alternative, deny that US Bottling Company Defendants committed any wrongful conduct. In addition, US Bottling Company, due to violation of fiduciary duty of Plaintiff, is insolvent and no longer in operation. No goods were produced at any time after the lockout with the use of the Mark.

71.    *Plaintiff ShoreGood has no adequate remedy at law for the US Bottling Defendants' wrongful conduct because, among other things, Plaintiff ShoreGood's Mark is unique and valuable property which has no readily determinable market value, and the US Bottling Defendants' wrongful conduct, and the resulting damage to Plaintiff ShoreGood, is continuing.*

Deny that US Bottling Company Defendants can commit any wrong act with respect to the Mark as ShoreGood is in a *de facto* merger with US Bottling Company. In the alternative, deny that US Bottling Company Defendants committed any wrongful conduct. In addition, US Bottling Company, due to violation of fiduciary duty of Plaintiff, is insolvent and no longer in operation. No goods were produced at any time after the lockout with the use of the Mark.

*WHEREFORE, Plaintiff ShoreGood Water Company, Inc. respectfully requests that the Court enter an Order:*

*a. Finding that the US Bottling Defendants have committed and are willfully continuing to commit acts of false designation of origin, false description and false designation of affiliation, all in violation of Plaintiff ShoreGood Water Company, Inc.'s rights under 15 U.S.C. § 1125(a);*

*b. Finding that the US Bottling Defendants have engaged in unfair competition in violation of 15 U.S.C. § 1125(a) and Maryland common law;*

*c. Granting judgment in favor of Plaintiff ShoreGood Water Company, Inc. and against the US Bottling Defendants, jointly and severally with one another, in the amount of $1,500,000.00, or such other amount as according to proof, together with pre and post-judgment interest and costs of this action; and*

*d. Granting such other and further relief as is proper under the circumstances.*

Answering Paragraphs a, b, c, and d in this section, Defendant denies the Plaintiffs are entitled to any of the relief requested.

## COUNT III
## IMPOSITION OF CONSTRUCTIVE TRUST (AGAINST DEFENDANTS US BOTTLING, JOHN DAVID CECIL, JOHN T. CECIL, JR. AND WILLIAM G. VOELP)

72.    *Plaintiffs incorporate the foregoing averments as though fully set forth herein.*

Defendants incorporate the foregoing averments as though fully set forth herein.

73.    *The US Bottling Defendants conduct described in this Complaint constitutes deceptive, fraudulent, and wrongful conduct in the nature of passing off infringing materials as genuine ShoreGood products that were approved or authorized by Plaintiff ShoreGood.*

Deny that US Bottling Company Defendants can commit any wrong act with respect to the Mark as ShoreGood is in a *de facto* merger with US Bottling Company. In the alternative, deny that US Bottling Company Defendants committed any wrongful conduct. In addition, US Bottling Company, due to violation of fiduciary duty of Plaintiff, is insolvent and no longer in operation. No goods were produced at any time after the lockout with the use of the Mark. No materials were knowingly used in commerce after the lockout.

74.    *By virtue of this wrongful conduct, the US Bottling Defendants have illegally received money and profits that rightfully belong to ShoreGood.*

Deny that US Bottling Company Defendants can commit any wrong act with respect to the Mark as ShoreGood is in a *de facto* merger with US Bottling Company. In the alternative, deny that US Bottling Company Defendants committed any wrongful conduct. In addition, US Bottling Company, due to violation of fiduciary duty of Plaintiff, is insolvent and no longer in operation. No goods were produced at any time after the lockout with the use of the Mark. No materials were knowingly used in commerce after the lockout. Defendants did not receive any money or profits, rightfully or wrongfully that related to this Mark after the lockout.

75.    *Upon information and belief the US Bottling Defendants hold the illegally received money and profits in the form of bank accounts, real property, or personal property that can be located and traced.*

Deny that US Bottling Company Defendants can commit any wrong act with respect to the Mark as ShoreGood is in a *de facto* merger with US Bottling Company. In the alternative, deny that US Bottling Company Defendants hold or illegally received money and profits relating to the Mark. In addition, US Bottling Company, due to violation of fiduciary duty of Plaintiff, is insolvent and no longer

in operation. No goods were produced at any time after the lockout with the use of the Mark. No materials were knowingly used in commerce after the lockout.

76.     *The US Bottling Defendants hold the money and profits they illegally received as constructive trustees for the benefit of Plaintiff ShoreGood.*

Deny that US Bottling Company Defendants can commit any wrong act with respect to the Mark as ShoreGood is in a *de facto* merger with US Bottling Company. In the alternative, deny that US Bottling Company Defendants hold and money or profits that were obtained, illegally or legally, in relation to this mark after the lockout. In addition, US Bottling Company, due to violation of fiduciary duty of Plaintiff, is insolvent and no longer in operation. No goods were produced at any time after the lockout with the use of the Mark. No materials were knowingly used in commerce after the lockout.

**WHEREFORE**, *Plaintiff ShoreGood Water Company, Inc. respectfully requests that the Court enter an Order:*
        *a. Declaring that Defendants US Bottling Company, John David Cecil, John T. Cecil, Jr. and William G. Voelp hold in trust, as constructive trustees for the benefit of Plaintiff ShoreGood Water Company, Inc., the illegal profits they obtained from the distribution of goods bearing the Mark, and requiring Defendants US Bottling Company, John David Cecil, John T. Cecil, Jr. and William G. Voelp to provide a full and complete accounting of all amounts due and owing to Plaintiff ShoreGood Water Company, Inc. as a result of the Defendants US Bottling Company, John David Cecil, John T. Cecil, Jr. and William G. Voelp's illegal activities; and*
        *b. Granting such other and further relief as is proper under the circumstances.*

Answering Paragraphs a and b in this section, Defendant denies the Plaintiffs are entitled to any of the relief requested.

## ACCOUNTING FOR US BOTTLING
### (BY DENNIS S. KELLOUGH AGAINST DEFENDANTS WILLIAM G. VOELP, JOHN DAVID CECIL AND JOHN T. CECIL, JR.)

77.     *Plaintiffs incorporate the foregoing averments as though fully set forth herein.*

31

Defendants incorporate the foregoing averments as though fully set forth herein.

78.     *Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr., as officers and directors of Defendant US Bottling are under a legal duty to account to minority shareholder Dennis S. Kellough, for all money and property of US Bottling, an accounting of all US Bottling's finances, including all transactions involving US Bottling on the one part and Defendants William G. Voelp, John David Cecil, John T. Cecil, Jr. and Image Makers on the other part.*

Deny that this Defendant William G. Voelp as an officer and director of US Bottling Company is under any duty to account to Dennis S. Kellough for all money and property of US Bottling Company, and accounting of US Bottling Company's finances, including all transactions involving US Bottling Company on the one part and Defendants on the other part. Defendant is not a CPA or professional bookkeeper, and did not keep the records of US Bottling Company. Plaintiffs had a greater access to records and books, both electronically and physically, than Defendant. Defendant does not have sufficient knowledge of the books to prepare a full accounting of finances of US Bottling Company. To the best of Defendants knowledge, there are no transactions between Defendant personally and US Bottling Company as an entity.

79.     *Dennis S. Kellough has repeatedly requested an accounting of US Bottling's finances from Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr., however they have failed and refused to render the requested accounting.*

Deny that Dennis S. Kellough had, at the date of this Complaint, directly requested an accounting of US Bottling Company's finances from William G. Voelp. Defendant William G. Voelp had neither failed nor refused to render the requested accounting. In addition, Plaintiff had a greater access to records and books, both electronically and physically, than Defendant. Defendant it not a CPA or bookkeeper, and did not keep the records of US Bottling Company. Defendant does not have sufficient knowledge of the books to prepare a full accounting of finances of US Bottling Company.

Defendant has repeatedly through counsel and directly, in recent months, and to his own counsel prior, been willing to have books or records in his care analyzed and copied at Plaintiff's expense.  Jeremy Martin had full access to all areas of the merged corporate headquarters and was dating, Erin Kellough, the daughter of the Plaintiffs.  He was a computer expert and had all passwords and access.  He came into the offices of the principals, without their permission, after the resignation of the Kelloughs and took books and paperwork.  He also copied electronic data on the computer system.

80.      *Dennis S. Kellough is fearful that unless enjoined by an order of this Court, Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr. may attempt to change, alter or destroy business and other records of US Bottling, and also Plaintiff ShoreGood's own financial records as they may apply to the subject matter of this lawsuit.*

Deny that Defendants would attempt to change, alter or destroy business and other records of US Bottling Company or ShoreGood's financial records.

**WHEREFORE**, *Plaintiff Dennis S. Kellough respectfully request that the Court enter an Order:*

*a. compelling Defendants William G. Voelp, John David Cecil, John T. Cecil, Jr. to provide a full and complete accounting of all sums held and disbursed by Defendant US Bottling for the period commencing January 1, 2005 and continuing through September 1, 2008, including but not limited to all funds received by Defendant US Bottling, all disbursements made by US Bottling, and all funds paid or distributed to or on behalf of Defendants William G. Voelp, John David Cecil, John T. Cecil, Jr., or Image Makers, as well as to any person related to either of them, by Defendant US Bottling;*

*b. entering judgments in favor of Plaintiff Dennis S. Kellough and against Defendants US Bottling, William G. Voelp, John David Cecil, John T. Cecil, Jr., and Image Makers in such amounts as may be determined due Plaintiff Dennis S. Kellough on such account, together with pre-judgment interest, any costs associated with the accounting which may be borne by the Plaintiffs, and post judgment interest at the legal rate; and*

*c. granting such other and further relief as is proper under the circumstances*

Answering Paragraphs a, b, and c in this section, Defendant denies the Plaintiffs are entitled to any of the relief requested.

## COUNT V
## ACCOUNTING FOR SHOREGOOD (BY DENNIS S. KELLOUGH AND BONNIE M. KELLOUGH AGAINST ALL DEFENDANTS)

81.    *Plaintiffs incorporate the foregoing averments as though fully set forth herein.*

Defendants incorporate the foregoing averments as though fully set forth herein.

82    *Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr., as officers and directors of US Bottling, which for a period commencing in early 2005 and ending in mid-2008, managed the affairs of Plaintiff ShoreGood, are under a legal duty to account to Plaintiff ShoreGood and its shareholders, Dennis S. Kellough and Bonnie M. Kellough, for all money and property of Plaintiff ShoreGood, an accounting of all ShoreGood's finances, including all transactions involving ShoreGood on the one part and Defendants US Bottling, William G. Voelp, John David Cecil, John T. Cecil, Jr. and/or Image Makers on the other part*

Deny that Defendant has any legal duty to account to Plaintiff ShoreGood or its shareholders any

accounting of all ShoreGood's finances.   In addition, Plaintiff had a greater access to records and books,

both electronically and physically, than Defendant.  Defendant it not a CPA or bookkeeper, and did not

keep the records of US Bottling Company or ShoreGood.  Defendant does not have sufficient

knowledge of the books to prepare a full accounting of finances of ShoreGood.  To the best of

Defendant's knowledge, there are no transactions by and between Defendant personally and ShoreGood

as an entity.

83.    *Plaintiffs ShoreGood, Dennis S. Kellough and Bonnie M. Kellough have repeatedly requested an accounting of Plaintiff ShoreGood's finances for the period during which it was under the management of Defendants US Bottling, William G. Voelp, John David Cecil and John T. Cecil, Jr., however the Defendants have failed and refused to render the requested accounting.*

Deny that Dennis S. Kellough or Bonnie M. Kellough had, at the date of this Complaint, directly

requested an accounting of ShoreGood's finances from William G. Voelp.  Defendant William G. Voelp

had neither failed nor refused to render the requested accounting.  In addition, Plaintiff had a greater

access to records and books, both electronically and physically, than Defendant.  Defendant it not a CPA

or bookkeeper, and did not keep the records of ShoreGood or US Bottling Company. Defendant does not have sufficient knowledge of the books to prepare a full accounting of finances of ShoreGood or US Bottling Company. Defendant has repeatedly through counsel and directly, in recent months, and to his own counsel prior, been willing to have books or records in his care analyzed and copied at Plaintiff's expense. Jeremy Martin had full access to all areas of the merged corporate headquarters and was dating, Erin Kellough, the daughter of the Plaintiffs. He was a computer expert and had all passwords and access. He came into the offices of the principals, without their permission, after the resignation of the Kelloughs and took books and paperwork. He also copied electronic data from the computer system.

*84      Plaintiffs are fearful that unless enjoined by an order of this Court, Defendants William G. Voelp, John David Cecil and John T. Cecil, Jr. may attempt to change, alter or destroy business and other records of Plaintiff ShoreGood.*

Deny that Defendants would attempt to change, alter or destroy business and other records of US Bottling Company or ShoreGood's financial records.

**WHEREFORE**, *Plaintiffs ShoreGood Water Company, Inc., Dennis S. Kellough and Bonnie M. Kellough respectfully request that the Court enter an Order:*
*a. compelling Defendants US Bottling Company, William G. Voelp, John David Cecil, and John T. Cecil, Jr. to provide a full and complete accounting of all sums received, held and disbursed by Plaintiff ShoreGood for the period commencing January 1, 2005 and continuing through May 8, 2008, including but not limited to all funds received by Plaintiff ShoreGood, all disbursements made by Plaintiff ShoreGood, and all funds paid or distributed to or on behalf of Defendants William G. Voelp, John David Cecil, John T. Cecil, Jr., or Image Makers, as well as to any person related to either of them by Plaintiff ShoreGood;*
*b. entering judgments in favor of Plaintiffs ShoreGood, Dennis S. Kellough and Bonnie M. Kellough, and against Defendants US Bottling Company, William G. Voelp, John David Cecil, John T. Cecil, Jr., and Image Makers in such amounts as may be determined due Plaintiff Dennis S. Kellough on such account, together with pre-judgment interest, any costs associated with the accounting which may be borne by the Plaintiffs, and post-judgment interest at the legal rate; and*
*c. granting such other and further relief as is proper under the circumstances*

Answering Paragraphs a, b, and c in this section, Defendant denies the Plaintiffs are entitled to any of the relief requested.

**COUNT VI**
**PETITION FOR DISSOLUTION AND APPOINTMENT**
**OF A RECEIVER FOR US BOTTLING COMPANY**

85.    *Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.*

Defendants incorporate the foregoing averments as though fully set forth herein.

86.    *Plaintiffs Dennis S. Kellough and Bonnie M. Kellough are creditors of US Bottling by virtue of the numerous loans and advances made over the period commencing in January of 2005 and continuing through mid-2008.*

Deny that Dennis S. Kellough and/or Bonnie M. Kellough are creditors of US Bottling Company by virtue of numerous investments made over the period commencing in January of 2005 and continuing through mid-2008.  No loan documentation was included as exhibits in Plaintiffs complaint and there is no evidence of a loan agreement, term, interest, or any other indications that the investments made by Plaintiff are a loan in the legal sense of the word.  Defendant argues that all investments by shareholders William G. Voelp, John David Cecil, John T. Cecil and the Plaintiffs are investments and should stand behind creditors for repayment.

87.    *Dennis S. Kellough is, upon information and belief, a 33.3% stockholder in US Bottling.*

Admit and accept that Dennis S. Kellough and Bonnie M. Kellough are a 33.3% stockholder in US Bottling Company.

88.    *Upon information and belief, US Bottling is unable to pay its debts as they come due.*

Admit that due to violations in their fiduciary duty by Plaintiffs, US Bottling Company is unable to pay its debts as they come due and is insolvent.

89.     *Upon information and belief, US Bottling is in the process of disposing of its assets.*

Admit that US Bottling Company has disposed of some assets with all proceeds going to legal defense, payroll taxes and secured creditors. In addition, US Bottling Company currently has a pending Replevin action in the District Court of Maryland for the major assets of the company which are in the care, custody and control of Plaintiff.

90.     *US Bottling is indebted to Plaintiffs Dennis S. Kellough and Bonnie M. Kellough in excess of $1,500,000.00 with no present ability to repay these amounts.*

Deny that US Bottling Company is indebted to Plaintiffs Dennis S. Kellough and Bonnie M. Kellough for any amount of money in the form of a loan in the legal sense of the word. In addition, any money that is invested into the company should come behind creditors in the order of disbursement.

Defendant William G. Voelp lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation of exact investment amount contained in this paragraph and, therefore, denies the same. Plaintiffs must provide detailed information as to the exact amount invested into the merged US Bottling Company.

91.     *Upon information and belief, US Bottling is indebted to William K. and Margaret B. Blanchet in the amount in excess of $200,000.00 pursuant to the Note, with no present ability to repay this amount.*

Admit that US Bottling Company is indebted to William K. and Margaret B. Blanchet. Defendant William G. Voelp lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegation of the exact amount contained in this paragraph and, therefore, denies the same.

92.     *Upon information and belief, US Bottling is indebted to Westland Printers in the amount of $3,067.00 pursuant to a judgment entered in the District Court of Maryland for Baltimore City, Case No. 010100225582007, with no present ability to repay this amount.*

Deny that US Bottling Company is indebted to Westland Printers.

93.     *Upon information and belief, US Bottling is now essentially defunct.*

Admit that US Bottling Company, due to the violation of fiduciary duty of Plaintiffs, is insolvent.

94.     *Dissolution and receivership of US Bottling is necessary and desirable to protect the interests of Plaintiffs Dennis S. Kellough and Bonnie M. Kellough, to preserve and protect the value of US Bottling against damage, loss or destruction and to collect any claims, rents, revenues or profits payable to US Bottling.*

Deny that US Bottling Company owes any creditor type debt to Dennis S. Kellough or Bonnie

M. Kellough, shareholders.  There remains debt for payroll taxes and creditors that should have their

interest protected.

95.     *Plaintiffs Dennis S. Kellough and Bonnie M. Kellough request that they be appointed Receiver of US Bottling during the pendency of US Bottling's dissolution.*

Deny that Dennis S. Kellough and/or Bonnie M. Kellough should be appointed Receiver of US

Bottling Company or any other entity involved in this complaint now or in the future.  Court has already

ruled in the Memorandum Opinion (Document 35) that "Kellough's interests are clearly antagonistic to

the interests of the other shareholders" and that, "if Plaintiffs were to succeed on their individual claims,

the shareholders' equity interests would be devastated. This presents a serious conflict that is not merely

'theoretical' but instead is real and conspicuous."

Clearly Kellough's interests are to protect only his investment and not to benefit the employees'

payroll taxes or other creditors. This is at odds and a clear conflict with the fair and equitable

dissolution of assets to the benefit of creditors available with an impartial Receiver.

***WHEREFORE***, *Plaintiffs Dennis S. Kellough and Bonnie M. Kellough respectfully request that the Court issue an Order:*
    *a. That Plaintiffs Dennis S. Kellough and Bonnie M. Kellough be appointed as Receivers of US Bottling Company during the pendency of US Bottling Company's dissolution and until all affairs of Defendant US Bottling are settled;*
    *b. That Plaintiffs Dennis S. Kellough and Bonnie M. Kellough be authorized and empowered as Receivers to take any and all actions they may deem necessary and proper to manage and protect the value of US Bottling Company during the dissolution;*
    *c. That Plaintiffs Dennis S. Kellough and Bonnie M. Kellough be authorized and empowered as Receivers to hire such attorneys, accountants, appraisers and auctioneers, and such other related agents, employees or contractors as it deems necessary to protect and preserve the value of Defendant US Bottling Company; and*
    *d. Granting such other further relief as is proper under the circumstances.*

Answering Paragraphs a, b, c, and d in this section, Defendant denies the Plaintiffs are entitled to

any of the relief requested.

## COUNT VII
## SHAREHOLDER DERIVATIVE ACTION FOR CONVERSION
## (BY DENNIS S. KELLOUGH ON BEHALF OF US BOTTLING AGAINST IMAGE MAKERS, WILLIAM G. VOELP, JOHN DAVID CECIL AND JOHN T. CECIL, JR.)

ORDERED Dismissed by Motion on August 10, 2009, no answer necessary.

## COUNT VIII
## SHAREHOLDER DERIVATIVE ACTION FOR RESCISSION
## (BY DENNIS S. KELLOUGH ON BEHALF OF US BOTTLING AGAINST DEFENDANT JOHN DAVID CECIL)

ORDERED Dismissed by Motion on August 10, 2009, no answer necessary.

## COUNT IX
### SHAREHOLDER DERIVATIVE ACTION FOR RESCISSION
### (BY DENNIS S. KELLOUGH ON BEHALF OF US BOTTLING AGAINST DEFENDANT JOHN T. CECIL, JR.)

ORDERED Dismissed by Motion on August 10, 2009, no answer necessary.

## COUNT X
### SHAREHOLDER DERIVATIVE ACTION FOR RESCISSION
### (BY DENNIS S. KELLOUGH ON BEHALF OF US BOTTLING AGAINST DEFENDANT WILLIAM G. VOELP)

ORDERED Dismissed by Motion on August 10, 2009, no answer necessary.

## COUNT XI
### SLANDER OF TITLE AND INJURIOUS FALSEHOOD
### (BY SHOREGOOD AGAINST DEFENDANTS JOHN T. CECIL, JR. AND US BOTTLING)

Not a count against this Defendant William G. Voelp, no answer necessary.  To the extent that

Defendant may have to respond to this Count, all Paragraphs are denied.

## COUNT XII
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS (BY SHOREGOOD AGAINST JOHN T. CECIL, JR. AND US BOTTLING)

Not a count against this Defendant William G. Voelp, no answer necessary.  To the extent that

Defendant may have to respond to this Count, all Paragraphs are denied.

## COUNT XIII
### REQUEST FOR ORDER NULLIFYING FALSE LIENS, OR IN THE ALTERNATIVE INJUNCTIVE RELIEF IN RELATION TO WRONGFULLY FILED FINANCING STATEMENTS (BY SHOREGOOD AGAINST US BOTTLING AND JOHN T. CECIL, JR.)

Not a count against this Defendant William G. Voelp, no answer necessary.  To the extent that

Defendant may have to respond to this Count, all Paragraphs are denied.

## COUNT XIV
## UNJUST ENRICHMENT (BY DENNIS S. KELLOUGH AND BONNIE M. KELLOUGH AGAINST US BOTTLING)

Not a count against this Defendant William G. Voelp, no answer necessary.  To the extent that

Defendant may have to respond to this Count, all Paragraphs are denied.

## COUNT XV
## MONEY LOANED (AGAINST US BOTTLING)

Not a count against this Defendant William G. Voelp, no answer necessary.  To the extent that

Defendant may have to respond to this Count, all Paragraphs are denied.

## COUNT XVI
## CIVIL CONSPIRACY (AGAINST IMAGE MAKERS, JOHN DAVID CECIL, JOHN T. CECIL, JR. AND WILLIAM G. VOELP)

175.    *Plaintiffs incorporate the foregoing averments as though fully set forth herein.*

Defendants incorporate the foregoing averments as though fully set forth herein.


176.    *Defendants Image Makers, John David Cecil, John T. Cecil, Jr. and William G. Voelp entered into a confederation for the purpose of unlawfully or tortuously diverting monies, revenues and business opportunities away from the Plaintiffs, to, or for the direct or indirect benefit of the Defendants, and Defendants in other ways conspired to injure the Plaintiffs through their control of Defendant US Bottling and their management of Plaintiff ShoreGood.*

Deny that any of the Defendants entered into a confederation for any unlawful purpose in any

way, to divert monies, revenues or any business opportunities away from US Bottling Company or its

merged companies.  Deny that Defendants attempted in any way, directly or indirectly to injure the

Plaintiffs.  Defendant completely denies this paragraph above as completely incorrect and slanderous.

177.   *The Plaintiffs, directly and indirectly, have been damaged by the Defendants' conspiracy.*

Deny that the Plaintiffs have been damaged by any purposeful actions of Defendants.   Deny any

conspiracy, whatsoever.


**WHEREFORE**, *Plaintiffs Dennis S. Kellough, Bonnie M. Kellough and ShoreGood Water Company, respectfully request that the Court:*
*a. Enter judgment in their favor, jointly, and against defendants The Image Makers, Ltd., John David Cecil, John T. Cecil, Jr. and William G. Voelp, jointly and severally with one another, in the amount of One Million Eight Hundred Thousand Dollars ($1,800,000.00) or such other amount as according to proof, together with punitive damages in the amount of One Million Eight Hundred Thousand Dollars ($1,800,000.00), together with pre and post-judgment interest and costs of this action; and*
*b. Grant such other and further relief as is proper under the circumstances.*

Answering Paragraphs a and b in this section, Defendant denies the Plaintiffs are entitled to any

of the relief requested.


## COUNT XVII
## REPLEVIN

178.   *Plaintiffs incorporate the foregoing averments as though fully set forth herein.*

Defendants incorporate the foregoing averments as though fully set forth herein.


179.   *ShoreGood is the owner of a trade show booth together with its attachments, components, and accessories used in connection therewith (the "Booth").*

Deny that ShoreGood has the authority to bring this claim as they are incorporated with a *de*

*facto* merger with US Bottling Company.  In the alternative, deny this paragraph.


180   *The Booth consists of a black podium with ShoreGood Water Company signage, together with a background assembly bearing Great Blue signage, and other miscellaneous signage pertaining to Plaintiff ShoreGood and its products, a ground cover consisting of blue carpet, all of the foregoing together with cases and covers. A photograph of the Booth is attached hereto as Exhibit 4.*

Defendant denies the description above which is not accurate and misleading.

181.   *ShoreGood entrusted the Booth to Defendant US Bottling for use in connection with the companies joint business ventures.*

Denies that ShoreGood has the authority to bring this claim as they are incorporated with a *de facto* merger with US Bottling Company.  In the alternative, deny this paragraph.


182.   *Since splitting with US Bottling, ShoreGood has demanded return of the Booth, however Defendants have refused.*

Denies that this Defendant, William G. Voelp, received a demand for the return of a booth.


183.   *ShoreGood has a superior claim to any of the Defendants for possession of the Booth, and Defendants unjustly retain possession of the Booth.*

Deny that Defendants have any assets remaining that are not in the care, custody and control of Plaintiff.


184. *The Booth has a fair market value of $1,500.00.*

Deny that the fair market value of a used trade show both is $1,500.00.  Plaintiff bares the burden to prove the value of the booth.


**WHEREFORE**, *Plaintiff ShoreGood Water Company respectfully requests that the Court:*
    *a. Promptly schedule a show cause hearing with prior notice to the Defendants to determine whether a writ of replevin should issue for the immediate seizure and delivery of the Booth to ShoreGood;*
    *b. Order the Clerk to issue a writ of replevin directing the United States Marshal to seize the Booth, wherever found, and return it to the rightful possession of ShoreGood Water Company, Inc.;*
    *c. Enter judgment awarding final possession of the Booth to ShoreGood Water Company, Inc.;*
    *d. Award ShoreGood Water Company, Inc. damages for the wrongful detention of the Booth in the amount of $1,500.00, or such other amount according to proof together with pre- and post-judgment interest; and*
    *e. Grant such other and further relief as this cause may require.*

Answering Paragraphs a, b, c, d, and e in this section, Defendant denies the Plaintiffs are entitled to any of the relief requested.

## BLANKET STATEMENT OF DENIABILITY

Any allegation in any of the above Paragraphs aforementioned not specifically admitted to is hereby denied.

## DEFENDANT'S DEFENSES

Defendant William G. Voelp alleges the following affirmative defenses to the Complaint. In asserting these affirmative defenses, Defendant does not assume the burden to establish any fact or proposition where that burden is properly imposed on Plaintiffs.

1. Plaintiffs have failed to state a claim upon which relief may be granted.

2. Plaintiffs have failed to plead sufficient facts to establish a right to recover any purported damages.

3. Plaintiffs' claims are barred, either in whole or in part, by the absence of subject matter jurisdiction.

4. Plaintiffs' claims are barred, either in whole or in part, because they allege wholly past violations that are not likely to be repeated.

5. The Complaint and each cause of action therein is barred, in whole or in part, to the extent Plaintiffs have waived or estopped from, or barred by the doctrine of laches from, asserting such causes of action.

6.      Plaintiffs' claims are barred because there was a *de facto* merger by and between Image Makers and ShoreGood to form US Bottling Company.

7.      The contemplated relief would not be in the merged companies' creditors' interest.

8.      Plaintiffs' claims are barred due to the statute of limitations and the doctrine of laches.

9.      Plaintiffs are barred by their own inequitable conduct or the doctrine of unclean hands.

10.     Plaintiffs' claims are barred, in whole or in part, due to the doctrine of waiver.

11.     The Plaintiffs' claims are barred, in whole or in part, due to the doctrine of promissory estoppel.

12.     The Plaintiffs' claims are barred, in whole or in part, due to the doctrine of fair use.

13.     The Plaintiffs' claims are barred, in whole or in part, due to implied consent.

14.     The Plaintiffs' claims are barred, in whole or in part, due to expressed consent.

15.     Defendant presently has insufficient knowledge of information on which to form a belief as to whether they may have additional, as yet unstated, defenses available.  Defendant reserves the right to assert additional defenses that are revealed by further investigation or by discovery.


## PRAYER

WHEREFORE, Defendant William G. Voelp prays for judgment or relief against the Plaintiffs as follows:

1.      That the claims against William G. Voelp are dismissed with prejudice and that the Plaintiffs take nothing; and

2.      That the court deny Plaintiff's contemplated relief; and

3.    That Defendant William G. Voelp be awarded attorneys' fees, costs and disbursements

       incurred in defending this matter from the inception; and

4.    Such other and further relief, including declaratory, equitable relief and damages, as this

       Court deems just and proper.


       DATED this 31st day of August, 2009.

## COUNTERCLAIMS

Defendant and Counterclaimant William G. Voelp ("Voelp"), acting *pro se*, hereby counterclaims against Plaintiffs ShoreGood Water Company, Inc.("ShoreGood"), Dennis S. Kellough, and Bonnie M. Kellough and makes Claims against and under Fed. R. Civ. P. 14, among others, the parties Dennis S. Kellough, LLC and Jeremy Martin and states as follows:

## PARTIES

1.      William G. Voelp is an individual residing in Anne Arundel County, Maryland.

2.      US Bottling Company is a corporation under the laws of the State of Maryland with its principal place of business in Baltimore City, Maryland.

3.      William G. Voelp is a shareholder of US Bottling Company and owns 26.33% of US Bottling Company.

4.      Dennis S. Kellough and Bonnie M. Kellough, jointly, are shareholders of US Bottling Company and own 1/3 (one third) of US Bottling Company.

5.      William G. Voelp is a director of US Bottling Company.

6.      Dennis S. Kellough is a director of US Bottling Company.

7.      Bonnie M Kellough is a director of US Bottling Company.

8.      The Image Makers, Ltd. ("Image Makers") is a corporation under the laws of the State of Maryland with its principal place of business in Baltimore City, Maryland.

9.      William G. Voelp is a shareholder of Image Makers and owns 26.33% of Image Makers.

10.     William G. Voelp is a director of Image Makers.

11.     Dennis S. Kellough and Bonnie M. Kellough, jointly, are shareholders in Image Makers and own 1/3 (one third) of Image Makers.

12.     Denis S. Kellough is a director of Image Makers.

13.     Bonnie M. Kellough is a director of Image Makers.

14.     ShoreGood is a corporation organized under the laws of the State of Maryland with its principal place of business in Caroline County, Maryland.

15.     William G. Voelp is a shareholder of ShoreGood and has claim to own 26.33% of ShoreGood.

16.     Dennis S. Kellough and Bonnie M. Kellough, jointly, are shareholders in ShoreGood and have claim to own 1/3 (one third) of ShoreGood.

17.     Dennis S. Kellough ("Dennis Kellough") is an individual residing in Anne Arundel County, Maryland.

18.     Bonnie M. Kellough ("Bonnie Kellough") is an individual residing in Anne Arundel County, Maryland. Often Bonnie M. and Dennis S. Kellough will be referred to as "the Kelloughs"

19.     Dennis S. Kellough, LLC  ("DSK") is a corporation under the laws of the State of Maryland with its principal place of business in Caroline County, Maryland.

20.     William G. Voelp is a shareholder in DSK and has claim to own 26.33% of DSK.

21.     Dennis S. Kellough and Bonnie M. Kellough, jointly, are shareholders in DSK and have claim to own 1/3 (one third) of DSK.

22.     Jeremy Martin is an individual residing in Anne Arundel County, Maryland.

23.     Jeremy Martin was employed by the joint *de facto* merged entities and is the live-in boyfriend of Erin Kellough at the residence of Dennis S. and Bonnie M. Kellough.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over the claims raised in this action pursuant to the Lanham Act and related claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

25.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all claims arising under state law because these claims are so related to original Plaintiffs' federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact

26.     This Court may exercise personal jurisdiction over the defendants because, among other reasons, each of the Defendants of the Counterclaim resides in this District.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as each Defendant in this Counterclaim resides in this District.

28.     Fed. R. Civ. P. 19 (a)(1)(A), among others, is met in that both Jeremy Martin and DSK reside in the District and that in their "absence, the Court cannot accord complete relief among existing parties."

29.     Fed. R. Civ. P. 19(a)(1)(B)(ii), among others, is met in that both Jeremy Martin and DSK have an "interest in the subject of the action and are so situated that disposing of the action in the person's absence may leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," and (i) "as a practical matter impair or impede the person's ability to protect the interest."

30.     It is proper to join DSK and Jeremy Martin in this case as the claims operate out of the same nucleus of facts and the identical Counterclaims stated.

## FACTS COMMON TO ALL COUNTS

31.     Voelp and John David Cecil ("Dave Cecil") established Image Makers as a corporation in September of 1999 and began conducting business as a private label water and hot sauce company headquartered in Baltimore City, Maryland.

32.     Voelp and Dave Cecil operated out of an approximately 10,000 square foot facility at 1002 Wilso Drive, Baltimore, Maryland 21223.

33.     Voelp and Dave Cecil were operating in the black, paying vendors timely, realizing income and personal benefit, and preparing to expand into more vertical manufacturing operations throughout late 2003 and throughout 2004.

34.      Image Makers purchased unlabeled pre-bottled water from various sources in Pennsylvania, New York and Canada.

35.     Image Makers printed its own labels for application in the manufacturing facility on Wilso Drive in Baltimore, Maryland.

36.     Image Makers, Voelp and Dave Cecil developed special methods, trade secrets, a substantial customer base, and high levels of good will in the industries that Image Makers, Voelp and Dave Cecil served.

37.     All the principals have substantial amounts of time and treasure invested into the operations of the *de facto* merged entities.

38.     Rising freight costs incentivized Image Makers to look to a closer vendor to purchase unlabeled bottle water, or perhaps even have the bottler apply labels that Image Makers printed to save on manufacturing efficiencies.

39.     In about August of 2004, Lou Smith, a business associate of Voelp's, commented about the inactivity of a plant in Federalsburg called ShoreGood Water and informed Voelp that he should contact that plant about producing water.

40.     Voelp contacted ShoreGood in about August of 2004 and arranged a meeting.

41.     The meeting was held in August of 2004 and was attended by Voelp, Dave Cecil, Dennis Kellough, Bonnie Kellough, Robert Harris (plant manager), the office manager and the sales manager.

42.     A tour was given of the facility and ShoreGood was to present Image Makers with pricing to produce bottled water in an unlabeled state and where ShoreGood applied the label in medium to smaller runs during the bottling process.

43.     Voelp and Dave Cecil were contacted by Dennis Kellough within a few days about meeting alone to discuss business opportunities.

44.     Voelp, Dave Cecil and Dennis Kellough met at TGI Fridays in Columbia Maryland soon after the initial meeting where Kellough approached Image Makers about merging the entities or forming a joint venture.

45.     ShoreGood represented itself to Image Makers as having a new state-of-the-art manufacturing facility and expertise, but no customer base or marketing plan, seemingly a perfect fit for Image Makers who had the customers and plan and was currently entertaining options to enter the bottling industry in a more vertical fashion.

46.     Dennis Kellough represented clearly that the Federalsburg plant could produce 360 containers per minute of sustained production.  All financial models were built around a number of percentage of this 360 container per minute sustained production amount with the participation and agreement of Dennis Kellough.

47.     Image Makers, ShoreGood and DSK signed an "Agreement in Principal" on September 16, 2004, a copy of which was attached to ShoreGood's Complaint as Exhibit 1.

48.     The Agreement in Principal essentially provided that Image Makers, ShoreGood and DSK would combine operations, with Dave Cecil, Voelp and the Kelloughs as co-equal partners.

49.     Work was completed by attorneys for all the parties to formalize the new corporations or Point to Point Logistics, LLC (P2P), US Bottling Company and Image Real Estate Group, LLC.  Final agreement was reached on the operating agreement and all corporate documents.

50.     Attorney for the Kelloughs, Bruce Kaufmann, formalized and filed the documents to form P2P to own and operate and trucking for the entities, providing evidence and filings to all the related parties.

51.     P2P was formed by Kelloughs' attorney Bruce Kaufmann January 5, 2004.

52.     Vasilios Peros and Charles Morton, attorneys at Venable, represented Image Makers and prepared and filed the corporate documents for US Bottling Company, providing evidence and filings to all the related parties on January 26, 2005.

53.     During the period that the final documents were finalized for the operating agreement, the parties acted and moved forward as if the merger had already occurred in all business matters.

54.     Image Real Estate Group, LLC (Image Group) was formed on February 4, 2005 by Kelloughs' attorney Bruce Kaufman to purchase an interest in a building at 1125-A Desoto Road, Baltimore, Maryland 21223 from Born Industries International, LLC ("Born").

55.     US Bottling Company along with ShoreGood and Image Makers moved their headquarters into the building on Desoto Road and began operations in a *de facto* merger.

56.     Dennis Kellough was responsible for the running and operation of the Federalsburg, Maryland bottling facility along with his preexisting plant manager Robert Harris.

57.     Voelp and Dave Cecil were responsible for marketing, sales and customer service.

58.     In late 2004 John T. Cecil ("JTC") approached Dave Cecil and Voelp about an arrangement for a percentage ownership in US Bottling Company and the merged entities.

59.     A meeting was arranged for Dennis Kellough to meet with and approve this arrangement, to which the Kelloughs approved by action and word.

60.     John Cecil made investments into US Bottling Company and P2P that increased the value of the companies at no cost or detriment to the Kelloughs.

61.     By January of 2005 John Cecil was working full time in the *de facto* merged companies and had multiple responsibilities. His main responsibility was the financial and bookkeeping needs of the merged entity, his area of expertise.

62.     An accident of a vehicle owned and operated by ShoreGood occurred on in about late 2004 where liability and issues surfaced. Robert Harris, the plant manager under the Kelloughs, allowed a driver Michael McCready that was incarcerated or detained overnight by police to operate a company vehicle to bring it back to the Federalsburg plant. This vehicle crashed into a tree sending the driver to Maryland Shock Trauma.

63.     Mercantile Bank made it clear that they would not support any changes in ownership and would call in the loans ShoreGood held if the ownership of ShoreGood was altered. Mercantile had not properly handled the original loan documents with the Kelloughs and did not have the required guarantee of the governmental agency.

64.     Voelp, Dave Cecil, John Cecil and the Kelloughs agreed to move forward as a *de facto* merged entity while working on replacing Mercantile Bank with other financing in the future and carefully weighing the proper way to deal with the problems of the truck accident.  This agreement for the effective *de facto* merger shall be referred to as "Agreement 2."

65.     It was agreed in Agreement 2 that the Kelloughs, Dave Cecil, and Voelp would each individually own 1/3 (one third) of US Bottling Company, Image Makers, ShoreGood and DSK, Image Real Estate Group and Point to Point Logistics, LLC.

66.     It was agreed by the Kelloughs, Dave Cecil and Voelp that the ownership in all the entities for John Cecil would come from shares owned by Dave Cecil and Voelp and not from the 1/3 (one third) of the Kelloughs ownership interest.

67.     It was agreed by the Kelloughs in Agreement 2 that they would convey from their individual holdings 1/3 (one third) of the stock in ShoreGood and 1/3 (one third) of the stock in DSK to Voelp individually.

68.     It was agreed in Agreement 2 that when a consolidation of the corporations was feasible and proper the corporations would, at that time, be consolidated with the same individual ownership interests in any new merged entity being identical to the individual ownership interests of the separate corporations in the "*de facto*" merger.

69.     US Bottling Company, Image Makers, DSK, Point to Point Logistics, LLC and Image Real Estate Group, LLC moved forward under Agreement 2 and operated in a *de facto* merger by agreement and action.

70.     Voelp, Dave Cecil, John Cecil, Dennis Kellough and Bonnie Kellough moved forward as individuals based upon Agreement 2.

71.     Voelp was introduced as full "partner" on many occasions and to many individuals and entities by all other directors in ShoreGood, DSK, Image Makers, Point to Point Logistics, LLC and Image Real Estate Group, LLC.

72.     Voelp was specifically introduced as a "partner" in the merged entities by Kellough to employees, vendors and customers.

73.     Voelp moved forward based upon promises made by the Kelloughs that all of his efforts, foregone other opportunities, foregone salaries, among other things were towards Agreement 2 and his ownership of all the entities.

74.     US Bottling Company held regular meetings, from the inception of the *de facto* merger, of the shareholders where Voelp, Dave Cecil, John Cecil, and Dennis Kellough and less often Bonnie Kellough attended.  These meetings were at first regularly held breakfast meetings held at Bob Evans Restaurant and then these meetings were regularly held on Fridays in the conference room at the Baltimore headquarters and all shareholders were aware of the meetings.

75.     US Bottling Company domain was registered on January 4, 2005 and email addresses were assigned and used by all principals.  In addition, individual telephone numbers at the corporate headquarters were assigned for each employee and principal that operated from the headquarters.

76.     In early 2005 the dire need for state certifications, specifically for the states of New Jersey, New York, Massachusetts, Vermont, New Hampshire, and Virginia was very evident and discussed at numerous shareholder meetings that were held weekly.

77.     The July 1, 2005 revision of the *de facto* merged companies' employee manual is published to all employees new and old and made available in all employee public areas of both the Baltimore headquarters and the Federalsburg plant

78.     Dennis Kellough asked Voelp to assist in the preparation of the lengthy and complicated documentation necessary to complete the certifications, particularly for the State of New York.

79.     US Bottling Company received a Star-K Kosher certification, with the knowledge and approval of all shareholders, as owning the "brands" ShoreGood, Image Makers and US Bottling Company.

80.     By 2006, attorney Bruce Kauffman represented US Bottling Company in legal matters and not only Dennis Kellough.

81.     Voelp, John Cecil and Kellough spent countless hours in producing working documents consisting of hundreds of pages of documentation and secured certifications in the name of US Bottling Company for the Federalsburg, Maryland facility.

82.     Upon information and belief, ShoreGood continues to use these certification numbers to this day in commerce.

83.     In about April of 2006, a dispute arose whereby Born attempted to sell the building that was promised to Image Group, which generated a claim against Born in August of 2008.

84.     US Bottling Company, Image Makers, Dave Cecil, Voelp and Dennis Kellough were joint Plaintiffs in that case #24-C-06-00630 arguing, among other things, that an oral agreement made after a letter of intent was signed would prevail as the proper agreement to be executed and because of which claims could be made.

85.     US Bottling Company, with Dennis Kellough as the primary, began negotiations to purchase a Combi-400 blow molding machine from GTRPET in about late July of 2006.

86.     In about August of 2006 Dennis Kellough and Voelp traveled to New York to view an identical proposed Combi-400 machine at Brooklyn Bottling Company.

87.     A purchase agreement for the Combi-400 was agreed to in September of 2006.  Kellough was fully involved and used his US Bottling Company email address for correspondences with both company personnel and the vendor.

88.     Jeremy Martin, boyfriend of Erin Kellough, daughter of the Kelloughs, was hired by Dennis Kellough to work in the merged entities.  His payroll was from the ShoreGood account.  He worked in all aspects over time at the plant to learn all operations and processes under the tutelage of Robert Harris, plant manager and Dennis Kellough.

89.     Dennis Kellough transferred Jeremy Martin to the Baltimore headquarters where he was placed in customer service to learn all aspects of the business in sales and customer service.

90.     Jeremy Martin was supplied with all master codes for all computer systems along with all shareholders.  Martin's access was complete and total and, upon belief, he is an expert in computer systems.

91.     Jeremy Martin set up remote access to the Baltimore computer system for the Kelloughs at K & W Electric, a company owned by the Kelloughs, and at the Kellough's home in Anne Arundel County, Maryland where Martin also resides.

92.     Jeremy Martin copied records of the *de facto* merged companies with his access for use by himself and the Kelloughs without the knowledge or consent of the other directors.

93.     US Bottling Company secured ongoing orders with Primo Water Company, a large national customer, with the participation of all shareholders through negotiations and implementation. The contract was signed April 6, 2007.

94.     By September 2007 US Bottling Company secured ongoing orders with SunOpta Global Organic Ingredients ("SunOpta"), a large national customer, with the participation of all shareholders

through negotiations and implementation.  These labels through this customer include Trader Joe's and Whole Foods.

95.     While sales were increasing in a brisk fashion, reports in shareholders meetings did not report profits, but instead loses.

96.     John Cecil reported that the reason for the lack of profitability was that the promised production rates of 360 containers per minute was actually averaging 67 containers per minute.

97.     US Bottling Company became an industry leader in private label water sales for directly to end users and through the food service industry.  Clients included Sysco Food Service, US Food Service, Acme Paper, Bottled Water Store and Snow Valley among many others.

98.     US Bottling Company, under the Image Makes name, became an industry leader in private label water sales to the Advertising Specialty Market across the United States of America.

99.     Upon information and belief, in about December of 2007, Dennis Kellough began an attempt to sell the assets of ShoreGood, without any notice or agreement of shareholders.

100.     Upon information and belief, Jeremy Martin spent many nights in the Baltimore headquarters copying documents and hard copy files from file cabinets.  Upon further information and belief, Jeremy Martin has a complete list of customers and all principals' personal and business files that were on their computers or in their private offices, illegally, and without any of the director's knowledge or consent.

101.     On April 18, 2008, through ShoreGood's counsel Bruce Kauffman, it was confirmed that a production run would be initiated on April 23, 2008 for the customer SunOpta.  It was further confirmed that the funds would be made payable to the Escrow account of Kauffman and Forman, P.A. and would not be disbursed without the consent of Dave Cecil, John Cecil, Voelp and Dennis Kellough.

102.     On April 24, 2008, both Dennis Kellough and Bonnie Kellough issued letters by fax and email resigning from Image Makers.

103.     On April 24, 2008, both Dennis Kellough and Bonnie Kellough issued letters by fax and email resigning from US Bottling Company.

104.     At the end of April 2008 the Kelloughs issued a US Bottling Company check to change all the locks at the plant and effectively "lock out" the other shareholders from the Federalsburg, Maryland facility.

105.     Countless orders were missed and customers were either lost completely or obfuscated by ShoreGood independent of US Bottling Company, without benefit to shareholders or creditors.

106.     Despite the heroic efforts of Voelp and Dave Cecil to save the clients to benefit shareholders and creditors, US Bottling Company became insolvent.

107.     Dennis Kellough interfered with a potential purchaser, Glas Water Sales of Canada, of the business beginning in May of 2008 which would have paid all creditors in full.

108.     Dennis Kellough interfered with a purchaser, Blind Industries and Services of Maryland, of the business beginning in May of 2008.

109.     Dennis Kellough met with SunOpta covertly to convert the orders and customer to no longer issue purchase orders to US Bottling Company and instead issue them directly to ShoreGood, in an effort to divert funds from shareholders and creditors.

110.     Upon information and belief, ShoreGood continues to receive orders and collect funds on US Bottling Company's customer SunOpta.

111.     For the month of May of 2008, US Bottling Company had combined orders to fill of over $400,000 for the month.

112.    Sales increased 347% from 2004 to 2007.

113.    Sales for 2008, without the wrongful acts committed by ShoreGood and the Kelloughs would have reached approximately $5,000,000.00 for an increase of over 25% for the year.

114.    Upon information and belief, Jeremy Martin and Bonnie Kellough entered the corporate headquarters after hours with their master key and removed paperwork and financial data from the premises, including from shareholders' private offices.

115.    Jeremy Martin is the current director of sales and running the day to day business of ShoreGood using data that was improperly obtained and illegally used.

116.    Upon information and belief, ShoreGood continues to sell to and make profits on customers and accounts illegally taken from US Bottling Company as the *de facto* merged entity.

117.    Upon information and belief, ShoreGood continues to use and has used assets accumulated by US Bottling Company for its own benefit and not for the benefit of creditors or shareholders.

## COUNT I
### SPECIFIC PERFORMANCE (AGAINST SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

118.    Voelp incorporates all the foregoing averments in as though fully set forth herein.

119.    ShoreGood, DSK, Dennis Kellough and Bonnie Kellough are subject to Agreement 2 through expressed Contract.

120.    ShoreGood, DSK, Dennis Kellough and Bonnie Kellough are subject to Agreement 2 through implied Contract by their actions and conduct indicating all parties intention to make the Agreement.

121.     Dennis Kellough and Bonnie Kellough, shareholders in ShoreGood and DSK, entered into the bilateral Contract with Voelp, shareholder in Image Makers, to convey 1/3 (one third) of the stock in ShoreGood and 1/3 (one third) of the stock in DSK in return for 1/3 (one third) of the stock in Image Makers.

122.     Voelp individually was contracted to receive 1/3 (one third) of the stock in DSK and 1/3 (one third) of the stock in ShoreGood, and has not received same.

123.     Voelp relied on and acted in all ways to benefit the Kelloughs, DSK and ShoreGood and had no reason to believe that the Kelloughs would not perform on the Agreement until some time around the illegal lock out by the Kelloughs.

124.     Voelp has performed and has not received the stock in ShoreGood and DSK, as was promised through both expressed and implied Contract.

125.     Voelp has completely met all performance stipulations for that conveyance and continues to stand ready, willing and able to complete the Agreement 2.

126.     The Kelloughs have wrongfully barred Voelp from his rightful ownership interest in ShoreGood and DSK.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

a.   Finding that the Agreement 2 by and between ShoreGood, Image Makers, DSK, Voelp, Dennis Kellough and Bonnie Kellough is valid;

b.   Compelling ShoreGood and DSK to take the necessary actions to convey 1/3 (one third) of all outstanding stock to Voelp as was agreed in Agreement 2;

c.   Enjoining and restraining ShoreGood and DSK, it agents, Dennis Kellough and Bonnie Kellough, and any of their officers, agents, representatives, servants, employees,

successors and assigns, and all others in active concert participation with any of them from taking any action to bar or cause to bar Voelp from his rightful ownership in the stock in ShoreGood and DSK;

     d.   Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit;

     e.   Compelling ShoreGood, DSK, Dennis Kellough and Bonnie Kellough to provide a complete accounting of all profits and revenues from the date of the lockout to the date of the conveyance of the 1/3 of all outstanding stock; and

     f.   Granting such other and further relief as is proper under the circumstances.

**COUNT II**
**BREACH OF CONTRACT (AGAINST SHOREGOOD, DSK,**
**DENNIS KELLOUGH AND BONNIE KELLOUGH)**

127.   Voelp incorporates all the foregoing averments in as though fully set forth herein.

128.   ShoreGood, Dennis Kellough, Bonnie Kellough and DSK are subject to Agreement 2 by expressed contract.

129.   ShoreGood, DSK, Dennis Kellough and Bonnie Kellough are subject to Agreement 2 through implied Contract by their actions and conduct indicating all parties intention to make the Agreement.

130.   Dennis Kellough and Bonnie Kellough, shareholders in ShoreGood and DSK, entered into the bilateral Contract with Voelp, shareholder in Image Makers, to convey 1/3 (one third) of the

stock in ShoreGood and 1/3 (one third) of the stock in DSK in return for 1/3 (one third) of the stock in Image Makers.

131.   Voelp has not received the agreed upon 1/3 (one third) of the stock in ShoreGood and DSK.

132.   Voelp relied on the Agreement 2 contract to his detriment.

133.   Voelp added to the value of DSK and ShoreGood based upon promises made by the Kelloughs, DSK and ShoreGood.

134.   Voelp has performed and stands ready, willing and able to perform on the contract.

135.   Voelp is injured, and continues to be injured, through loss of profits by the wrongful actions and breach of ShoreGood, DSK and the Kelloughs.

136.   As a result of the Breach of Contract by the Kelloughs, DSK, and ShoreGood, Voelp is injured in potentially owing individually and personally debts to William Blanchet, Patapsco Bank, credit cards and the Internal Revenue Service which may exceed $450,000.  These debts are also debts of the corporations that the Kelloughs are and/or were directors over.

137.   Voelp is injured and continues to be injured by the value of the promised stock in DSK and ShoreGood.

138.   Voelp is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

a.   Finding that the Agreement 2 by and between ShoreGood, Image Makers, DSK, Voelp, Dennis Kellough and Bonnie Kellough is valid;

b.      Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have breached the contract with Voelp;

c.      Granting damages to Voelp for lost profits and equity to be proved at trial;

d.      Granting damages to Voelp for lost income to be proved at trial;

e.      Granting damages to Voelp for any personally liable debt derived or owed in connection with US Bottling Company, Image Makers, ShoreGood or any related company, entity or individual that shall be proved at trial;

f.      Compelling ShoreGood, DSK, Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest;

g.      Compelling ShoreGood, DSK, Dennis Kellough and Bonnie Kellough to provide a complete accounting of all profits and revenues from the date of the Breach of Contract to current; and

h.      Granting such other and further relief as is proper under the circumstances.

## COUNT III
### PROMISSORY ESTOPPEL
### (SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

139.    Voelp incorporates all the foregoing averments in as though fully set forth herein.

140.    ShoreGood, DSK Dennis Kellough and Bonnie Kellough are subject to Agreement 2 by expressed contract.

141.   ShoreGood, DSK, Dennis Kellough and Bonnie Kellough are subject to Agreement 2 through implied Contract by their actions and conduct indicating all parties intention to make the Agreement.

142.   Dennis Kellough and Bonnie Kellough, shareholders in ShoreGood and DSK, entered into the bilateral Contract with Voelp to convey 1/3 (one third) of the stock in ShoreGood and 1/3 (one third) of the stock in DSK to Voelp in return for 1/3 (one third) of the stock in Image Makers conveyed to Dennis and Bonnie Kellough, jointly.

143.   Voelp relied on the clear and definite promises made by the Kelloughs, ShoreGood and DSK.

144.   ShoreGood, DSK and the Kelloughs made a clear and definite promise, among others, to convey to Voelp 1/3 (one third) of the stock in DSK and 1/3 (one third) of the stock in ShoreGood.

145.   Kelloughs, as the promisors, clearly expected that Agreement 2 would induce Voelp to act on behalf of the *de facto* merged entities, to his detriment.

146.   Voelp actually did take actual and reasonable action through heroic efforts on behalf of the *de facto* merged entities, to Voelp's detriment, from late 2004 through the illegal lock out by the Kelloughs.

147.   Through efforts of Voelp the value of the stock of ShoreGood and DSK was increased based upon contracts and promises made by Kelloughs, DSK and ShoreGood to Voelp'

148.   These promises cause a detriment to Voelp that can only be avoided by enforcing the promise or in the alternative grant sufficient damages to rectify the wrongdoing.

149.   ShoreGood, DSK and the Kelloughs' wrongful actions and violations of their promises caused the complete loss of all business and forced the dissolution of the remaining assets of the companies involved in the *de facto* merger.

150.   Voelp has performed and stands ready, willing and able to perform on the contract and all promises.

151.   Voelp is injured by not holding the 1/3 (one third) of the stock in DSK and ShoreGood.

152.   Voelp is injured, and continues to be injured, through loss of profits by the wrongful actions and failed promises of the Kelloughs, ShoreGood and DSK.

153.   Voelp is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities due to the wrongful actions and failed promises by the Kelloughs, ShoreGood and DSK.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

a.   Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have violated their promises to Voelp;

b.   Granting damages to Voelp for lost profits and equity to be proved at trial;

c.   Granting damages to Voelp for lost income to be proved at trial;

d.   Granting damages to Voelp for any personally liable debt derived or owed in connection with US Bottling Company, Image Makers, ShoreGood or any related company, entity or individual that shall be proved at trial;

e.   Granting damages to Voelp for the value of ShoreGood and DSK stock that is rightfully Voelp's;

f.　　Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

g.　　Granting such other and further relief as is proper under the circumstances.

**COUNT IV**
**DEFAMATION (AGAINST DENNIS KELLOUGH)**

154.　　Voelp incorporates all the foregoing averments in as though fully set forth herein.

155.　　Dennis Kellough has made false oral statements about Voelp to numerous individuals.

156.　　Dennis Kellough has made false oral statements about Voelp to Buck Sharretts indicating that Voelp had stolen funds from the merged entities.

157.　　Dennis Kellough has made false oral statements about Voelp to Derek Reineman indicating that Voelp had stolen funds from the merged entities.

158.　　Dennis Kellough has made false oral statements about Voelp to Robert Harris and other individuals at Blind Industries and Services of Maryland which caused failed business relationships.

159.　　Dennis Kellough has made false oral statements about Voelp to Blair Bentham and Ryan Bentham of Glas Water which caused a failed business relationship.

160.　　The defamation, which caused the failing of several business relationships, have caused the illiquidity of US Bottling Company and Image Makers which has caused undue economic hardship on Voelp individually.

161.　　The defamatory statements were intentional and willful and Kellough knew they would cause damage when he made them to Voelp's reputation and to potential business relationships.

162.　　Kellough did not have any right or justifiable cause to make these egregious statements.

67

163.   Voelp is injured, and continues to be injured, by the defamation of ShoreGood and the Denny Kellough.

164.   There is no reason to believe that the defamation will cease without Court order.

165.   Voelp has attempted to enter Christian ministry and the political arena in Maryland and has suffered damages from the untrue statements by Dennis Kellough.

166.   Dennis Kellough has defamed Voelp in an attempt to interfere with potential business contracts and relationships that have caused Voelp serious, real and conspicuous injury.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

h.   Finding that Dennis Kellough has defamed the good character of Voelp;

i.   Finding that the claims levied upon Voelp involving fraud or misappropriation of funds are not reasonable and without merit;

j.   Finding that the defamation is characterized by evil motive, intent to injure, and ill will;

k.   Compelling Dennis Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest;

l.   Compelling Dennis Kellough to cease and desist from any defaming statements either orally or in writing;

m.   Granting to Voelp the amount of damages caused by the injurious statements as it pertains to the affected business arrangements with Glas Water Sales and Blind Industries and Services of Maryland;

n.   Granting to Voelp punitive damages as may be shown at trial;

o.     Granting to Voelp damages for lost income that may be proven at trial; and

p.     Granting such other and further relief as is proper under the circumstances.

## COUNT V
## CIVIL CONSPIRACY
### (SHOREGOOD, DSK, JEREMY MARTIN, DENNIS KELLOUGH AND BONNIE KELLOUGH)

167.    Voelp incorporates all the foregoing averments in as though fully set forth herein.

168.    Dennis Kellough, Bonnie Kellough, ShoreGood, DSK and Jeremy Martin conspired together to injure and make the wrongful acts against Voelp and Voelp's interests.

169.    Data, both electronically and physical, was improperly and illegally taken from the Baltimore headquarters and is currently being used without benefit to Voelp or Voelp's interests.

170.    Jeremy Martin worked to learn all aspects of the business, including trade secrets to be used for the benefit of the co-conspirators without consideration or gain to Voelp or Voelp's interests.

171.    Jeremy Martin is now running the day to day operations of ShoreGood.

172.    Voelp and all other managers, including Kelloughs, of the *de facto* merged companies have a reasonable expectation of privacy in their private offices which are locked or otherwise indicated as offices of that individual.

173.    Jeremy Martin, conspiratorially acting with the Kelloughs, illegally copied personal and other records, both electronic and physical of Voelp that were in his private locked office.  This action by Jeremy Martin and Bonnie Kellough was breaking and entering into a private locked office.

174.    Jeremy Martin, conspiratorially acting with the Kelloughs, illegally copied personal and other records, both electronic and physical of Voelp that were on the server in a private area of the server.  Each owner had an expectation of privacy in this individual private area of the server.

175.    The Kelloughs and Jeremy Martin entered into a confederation for the purpose of unlawfully and tortuously taking information, trade secrets, customer lists, business records and other items to directly and/or indirectly benefit themselves, and injure Voelp.

176.    The Kelloughs and Jeremy Martin committed intentional Interference with Contracts in respect to stealing the customer Sun Opta through illegal means.

177.    The Kelloughs and Jeremy Martin committed intentional Interference with an Economic Relationship through working to undermine Voelp's business dealings with Glas Water Sales and Blind Industries and Services of Maryland.

178.    The Kelloughs and Martin conspired to divert revenues and business opportunities away from Voelp and/or Voelp's interests to benefit themselves and to the detriment of Voelp.

179.    The Kelloughs and Martin in other ways conspired to injure Voelp and/or Voelp's interests through their control of ShoreGood and DSK and their management of those companies.

180.    The illegal actions of the Kelloughs and Martin has directly caused Voelp to be liable for joint corporate debts on a personal level.

181.    The Kelloughs are in sole possession of the customers, assets and trade secrets of the merged entities.

182.    Voelp is injured, and continues to be injured, through loss of profits by the wrongful actions of ShoreGood, DSK, Dennis Kellough, Bonnie Kellough and Jeremy Martin.

183.    Voelp is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities due to the wrongful actions by the Kelloughs, ShoreGood, DSK and Jeremy Martin.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

      a.      Finding that ShoreGood, DSK, Jeremy Marin, Dennis Kellough and Bonnie Kellough have committed a civil conspiracy against Voelp;

      b.      Granting damages to Voelp for lost profits and equity to be proved at trial;

      c.      Granting damages to Voelp for lost income that may be proved at trial;

      d.      Granting damages to Voelp for any personally liable debt derived or owed in connection with US Bottling Company, Image Makers, ShoreGood or any related company, entity or individual that shall be proved at trial;

      e.      Granting damages to Voelp for lost gain, salaries, profits, bonuses, and other gains from business relationships;

      f.      Granting damages to Voelp for lost gain and profits from contracts;

      g.      Compelling Dennis Kellough and Bonnie Kellough, Jeremy Martin or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

      h.      Granting such other and further relief as is proper under the circumstances.

## COUNT VI
### UNJUST ENRICHMENT AND VOILATION OF FIDUCIARY DUTY
### (SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

184.    Voelp incorporates all the foregoing averments in as though fully set forth herein.

185.    By nature of Agreement 2 the Kelloughs owe a fiduciary duty to Voelp as a fellow shareholder.

186.    By nature of Dennis Kellough as a director of US Bottling Company, he owes a fiduciary duty to Voelp.

187.     By nature of Bonnie Kellough as a director of US Bottling Company, she owes a fiduciary duty to Voelp.

188.     By nature of US Bottling Company, the Kelloughs owe a fiduciary duty to Voelp as a fellow shareholder.

189.     By nature of Image Makers, the Kelloughs owe a fiduciary duty to Voelp as a fellow shareholder.

190.     By nature of Dennis Kellough as a director of Image Makers, he owes a fiduciary duty to Voelp.

191.     By nature of Bonnie Kellough as a director of Image Makers, she owes a fiduciary duty to Voelp.

192.     The Kelloughs have violated their fiduciary duty to Voelp by acting in a manner that does not hold out the interests of all the shareholders but only benefits the Kelloughs, to the detriment of Voelp individually.

193.     There exists a clear fiduciary relationship and responsibility of the Kelloughs, as directors and shareholders of joint corporations.

194.     Voelp's value of stock as a shareholder in Image Makers and US Bottling Company has been reduced and the Kelloughs' value of stock as a shareholder in ShoreGood and DSK have been enriched to the detriment of Voelp, which is a clear conflict of interest and violation of fiduciary duty to Voelp.

195.     Through the Kelloughs' actions the value of Voelp's stock in the *de facto* merged entities is zero, while the Kelloughs have unjustly enriched other interest to Voelp's detriment.

196.    Dennis Kellough, Bonnie Kellough, DSK and ShoreGood through their wrongful acts have taken goods and property of high value for their own unjust enrichment without benefit to Voelp or Voelp's interests.

197.    It would be inequitable for DSK, ShoreGood and the Kelloughs to retain these goods and equipment and must return them or otherwise compensate fair market value for these valuable goods and equipment.

198.    Certain trade secrets on process, knowhow, customer service, marketing and operations, among others were created by efforts by Voelp, individually.

199.    Voelp would have never divulged or shared any of the proprietary information if not for the promises of the Kelloughs.

200.    ShoreGood, DSK and the Kelloughs unjustly have taken these trade secrets for their own benefit, in violation of their fiduciary duty to Voelp.

201.    Voelp or Voelp's interests retain ownership of these valuable assets.

202.    At a minimum, Voelp, individually is due 1/3 (one third) of the value of all illegally taken assets.  Voelp would use these assets to satisfy personal debt and creditors, whereas Kellough is using the assets illegally for his own benefit.

203.    Upon information and belief, ShoreGood, DSK and the Kelloughs are actively using these assets and trade secrets in commerce without benefit to Voelp or Voelp's interests.

204.    Upon information and belief, ShoreGood and the Kelloughs have wrongfully sold or otherwise disposed of some of these valuable assets.

205.    Voelp is injured, and continues to be injured, by this unjust enrichment of the Kelloughs and ShoreGood.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

a.       Finding that ShoreGood, Dennis Kellough and Bonnie Kellough have been unjustly enriched by assets belonging to Voelp and/or Voelp's interests;

b.       Granting damages to Voelp for any assets sold or otherwise disposed of the value of which will be determined at trial;

c.       Granting Voelp the value of 1/3 (one third) of all assets illegally taken by Kelloughs, DSK and ShoreGood;

d.       Granting damages to Voelp any assets still in ShoreGood, DSK or the Kellough's possession, the value of which will be determine at trial;

e.       Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

f.       Granting such other and further relief as is proper under the circumstances.


## COUNT VII
## TORTUOUS INTERFERENCE
### (SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

206.     Voelp incorporates all the foregoing averments in as though fully set forth herein.

207.     Dennis Kellough, Bonnie Kellough, DSK and ShoreGood intentionally interfered in business relationships and contracts by and between Voelp or Voelp's interests and Blind Industries and Services of Maryland, Glas Water Sales and SunOpta Global Organic Products, among others.

208.    Voelp was negotiating a business contract, that would have benefited him personally, with Glas Water Sales, of Canada when Dennis Kellough preempted meetings in Baltimore by contacting Glas Water and interfering with the business relationship.

209.    The business relationship was derailed by the actions of Kellough.

210.    A contract purchase order existed by and between US Bottling Company and Sun Opta Global Organic Products that would have benefited Voelp personally with proceeds paying personally signed debt.

211.    Kellough circumvented that contract to his own benefit, to the detriment of Voelp.

212.    Voelp was negotiating a business contract with Blind Industries and Services of Maryland that would have benefited Voelp personally, when Kellough held his own personal meetings and interfered with the business relationship.

213.    The business relationship was derailed by the actions of Kellough.

214.    The actions of the Kelloughs, ShoreGood and DSK were intentional, willful and calculated to cause damage and loss against Voelp's economic rights and lawful business pursuits.

215.    The Kelloughs, ShoreGood and DSK had not justifiable right or cause and their actions caused actual damages that are real and conspicuous.

216.    The interference by the Kelloughs and ShoreGood resulted in harm and injury to Voelp and/or Voelp's interests.

217.    The only remedy in law to compensate for these wrongful acts is a judgment in favor of Voelp and/or Voelp's interests.

218.    Voelp and/or Voelp's interests are injured, and continues to be injured, through loss of profits by the wrongful actions of ShoreGood, Dennis Kellough, Bonnie Kellough.

219.   Voelp is injured by the loss of personal income by these wrongful actions.

220.   Voelp is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities due to the wrongful actions by the Kelloughs, ShoreGood.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

a.   Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have committed tortuous interference;

b.   Granting damages to Voelp for lost profits and equity to be proved at trial;

c.   Granting damages to Voelp for lost income and other gains that may be proved at trial;

d.   Granting damages to Voelp for any personally liable debt derived or owed in connection with US Bottling Company, Image Makers, ShoreGood or any related company, entity or individual that shall be proved at trial;

e.   Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

f.   Granting such other and further relief as is proper under the circumstances.


**COUNT VIII**
**WRONGFUL TERMINATION OF CONTRACT**
**(SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)**

221.   Voelp incorporates all the foregoing averments in as though fully set forth herein.

222.    Dennis Kellough, Bonnie Kellough, DSK and ShoreGood wrongfully terminated the Agreement 2 contract that exists by and between Dennis Kellough, Bonnie Kellough, ShoreGood, Voelp, Dave Cecil, John Cecil, ShoreGood, Image Makers, US Bottling Company and DSK.

223.    Voelp has an individual right, as per Agreement 2, to 1/3 (one third) of the stock in ShoreGood and DSK.

224.    This wrongful action by the Kelloughs has resulted in injury to Voelp.

225.    This wrongful action by the Kelloughs, DSK and ShoreGood has resulted in Voelp's personal liability to corporate debts as direct result.

226.    Voelp is injured, and continues to be injured, through loss of profits and equity by the wrongful actions of ShoreGood, DSK, Dennis Kellough and Bonnie Kellough.

227.    Voelp is injured, and continues to be injured, through the loss of income.

228.    Voelp is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities due to the wrongful actions by the Kelloughs, DSK and ShoreGood.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

a.      Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have wrongfully terminated the contract that exists by and between Voelp, Dave Cecil, John Cecil, Dennis Kellough, Bonnie Kellough, ShoreGood, DSK, Image Makers and US Bottling Company was wrongfully terminated;

b.      Granting damages to Voelp for lost profits and equity to be proved at trial;

c.      Granting damages to Voelp for lost income and other gain that may be proved at trial;

d.      Granting damages to Voelp for any personally liable debt derived or owed in connection with US Bottling Company, Image Makers, ShoreGood or any related company, entity or individual that shall be proved at trial;

e.      Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

f.      Granting such other and further relief as is proper under the circumstances.

**COUNT IX**
**QUANTUM MERIUT**
**(IN THE ALTERNATIVE)**
**(SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)**

229.    Voelp incorporates all the foregoing averments in as though fully set forth herein.

230.    Voelp worked from late 2004 through lockout in April of 2008 to enrich and grow US Bottling Company, ShoreGood and DSK.

231.    The Kelloughs, DSK and ShoreGood have gained sales, equity, information, trade secrets, knowhow, ideas, customer relationships, among other things through the efforts of Voelp individually without adequate compensation to Voelp.

232.    The Kelloughs, DSK and ShoreGood have benefited by the services provided by Voelp from late 2004 through May of 2008.

233.    The Kelloughs, DSK and ShoreGood, by not performing on Agreement 2, have a contract with Voelp "implied in law" also known as a *"quasi-contract."*

234.    The Kelloughs, DSK and ShoreGood have benefited from the services provided by Voelp but have not given fair compensation for such services.

235.    The information gained from Voelp's work and experience as an expert in the marketing, sales and logistics were not compensated at or near market value.

236.    Voelp developed systems, customer relationships, knowhow, and ideas that are trade secrets and have not been compensated at or near market value for such services.

237.    Voelp is injured, and continues to be injured, through the loss of income and equity.

238.    Voelp is injured, and continues to be injured, by the loss of adequate monetary compensation for work preformed on behalf of ShoreGood, DSK and the Kelloughs.

239.    Voelp is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities due to the wrongful actions by the Kelloughs, ShoreGood.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

a.    Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have become unjustly enriched by the work and efforts of Voelp;

b.    Granting damages to Voelp for lost income for what the efforts and work would be worth to be determined at trial;

c.    Granting damages to Voelp for the fair market value of Voelp's full time services from late 2004 through May of 2008;

d.    Granting damages to Voelp for the adequate compensation based upon the information, customers, knowhow, trade secrets among other things for the time in question;

e.    Granting damages to Voelp for the amount these valuable services have enriched DSK, ShoreGood and the Kelloughs, the amount of which is to be determined at trial;

f.      Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

g.      Granting such other and further relief as is proper under the circumstances.

## COUNT X
## FRAUD IN THE INDUCEMENT
## (SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

240.    Voelp incorporates all the foregoing averments in as though fully set forth herein.

241.    On May 18, 2006 Voelp was induced to enter his personal responsibility on a Confessed Judgment Promissory Note from William K. and Margaret B. Blanchet to benefit the *de-facto* merged entities.

242.    The amount of this note originated at $300,000.00 (three hundred thousand dollars).

243.    Upon information and belief, William and Margaret Blanchet are close friends of the Kelloughs.

244.    The Kelloughs, DSK and ShoreGood fraudulently induced Voelp into personally guaranteeing the note.

245.    The funds of the loan were used to benefit ShoreGood and DSK, while being guaranteed by Voelp.

246.    Voelp received no individual direct benefit from these funds.

247.    In late Spring of 2007 and then again repeated in early 2008, Dennis Kellough stated to John Cecil that the Blanchets were good friends of Kellough and would not be collecting any unpaid remaining balance from him, and that he knew that they never would.

248.   In late Spring of 2007 and then again repeated in early 2008, Dennis Kellough stated to John Cecil that Blanchet would be first attempting to collect from Voelp, as Dennis Kellough did not like Voelp, and then he would go after John and Dave Cecil.

249.   This deceitful action by Blanchet, the Kelloughs, DSK and ShoreGood caused Voelp to enter the agreement with the willful non-disclosure of a material fact that Blanchet, the Kelloughs, DSK and ShoreGood had a duty to disclose.

250.   Upon information and belief, the Kelloughs, Blanchet, DSK and ShoreGood induced Voelp to agree to personally guarantee the note knowing that the funds would be used to benefit DSK and ShoreGood and that Kellough would not be held responsible for the note, or at or near the same degree that Voelp would.

251.   Under the circumstances a reasonable person would attach importance to these facts, among others, in deciding whether to enter the Agreement.

252.   Voelp would never have entered the Agreement of the Confessed Judgment Promissory Note with this information.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

a.   Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have fraudulently induced Voelp to enter the Confessed Judgment Promissory Note with William and Margaret Blanchet;

b.   Granting damages to Voelp in the amount of the current Judgment against Voelp to satisfy the Judgment in full.

c.  Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

d.  Granting such other and further relief as is proper under the circumstances.

## COUNT XI
### SHAREHOLDER DERIVATIVE ACTION FOR UNJUST ENRICHMENT AND VIOLATION OF FIDUCIARY DUTY
### (BY VOELP ON BEHALF OF US BOTTLING COMPANY AGAINST SHOREGOOD, DSK, JEREMY MARTIN, DENNIS KELLOUGH AND BONNIE KELLOUGH)

253.  Voelp incorporates all the foregoing averments in as though fully set forth herein.

254.  The Kelloughs, Jeremy Martin, DSK, and ShoreGood have illegally and unlawfully obfuscated with US Bottling Company assets valued at least at $650,781.85.

255.  Bonnie Kellough and Dennis Kellough are both shareholders and directors of US Bottling Company.

256.  The Kelloughs owe a fiduciary duty to act in the interest of the corporation and other shareholders and not take any action that would benefit themselves to the detriment of the corporation, other shareholders or creditors.

257.  Jeremy Martin is the General Manager of ShoreGood.

258.  Upon information and belief, Jeremy Martin actively took control, illegally and unlawfully, of US Bottling Company assets to the benefit of ShoreGood, DSK and himself.

259.  These assets are physical inventory or machinery or other similar assets that are currently, unlawfully and illegally being used by DSK, ShoreGood, Jeremy Martin and the Kelloughs.

260. The value of these assets must be used to liquidate corporate debts to creditors first, and then to benefit shareholders.

261. Some creditors have personal guarantees from Voelp causing undue and unnecessary injury that is current and ongoing.

262. The Internal Revenue Service is owed payroll taxes for payroll that benefited ShoreGood, DSK, US Bottling Company and Image Makers.

263. The corporation began legal proceedings to defend itself and file suit to marshal assets to pay creditors but no longer has financial resources to do so.

264. The corporation is unable to bring further action on its own as it lacks the financial resources to seek the justice that it deserves.

265. Voelp is a shareholder of 26.33% of US Bottling Company.

266. Voelp is a director of US Bottling Company.

267. US Bottling Company is a corporation in the state of Maryland, duly organized, with directors, bank accounts, loans, and meetings of directors over time, including Voelp, John Cecil, Dave Cecil and the Kelloughs.

268. This action is not a collusive action to confer jurisdiction that the Court would otherwise lack.

269. The actions of the Kelloughs, DSK, Jeremy Martin, ShoreGood and DSK have injured Voelp as a shareholder directly and indirectly.

**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

a.     Finding that ShoreGood, DSK, Jeremy Martin, Dennis Kellough and Bonnie Kellough have been unjustly enriched and violated their fiduciary duty to the corporation and fellow shareholders;

b.     Grant any and all damages for this Count in favor of Voelp, *to the use of* US Bottling Company for the purpose of satisfying creditors of US Bottling Company and Image Makers including but not limited to the Internal Revenue Service.

c.     Grant any and all damages for this Count to be paid to a court appointed escrow account and to be disbursed by a vote of all non-offending directors and to only be used to pay creditors and not to benefit individually or personally any director or shareholder unless the proceeds exceed the payment to all creditors that are established.

d.     Granting damages to Voelp in the amount of the $650,781.85 plus any other amounts proved at trial;

e.     Granting damages to Voelp for interest at the legal rate from the lock out date until the date issued for loss of use of the funds;

f.     Granting damages to Voelp for an amount for the rental of all assets from the lock out date to the date of the Judgment the amount of which to be determined at Court.

g.     Compelling Jeremy Martin, Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

h.     Granting such other and further relief as is proper under the circumstances.

## COUNT XII
## SHAREHOLDER DERIVATIVE ACTION FOR UNJUST ENRICHMENT AND VIOLATION OF FIDUCIARY DUTY
## (BY VOELP ON BEHALF OF IMAGE MAKERS AGAINST SHOREGOOD, DSK, JEREMY MARTIN, DENNIS KELLOUGH AND BONNIE KELLOUGH)

270.   Voelp incorporates all the foregoing averments in as though fully set forth herein.

271.   The Kelloughs, Jeremy Martin, DSK, and ShoreGood have illegally and unlawfully obfuscated with Image Makers assets valued at least at $33,254.67.

272.   Bonnie Kellough and Dennis Kellough are both shareholders and directors of Image Makers.

273.   The Kelloughs owe a fiduciary duty to act in the interest of the corporation and other shareholders and not take any action that would benefit themselves to the detriment of the corporation, other shareholders or creditors.

274.   Jeremy Martin is the General Manager of ShoreGood.

275.   Upon information and belief, Jeremy Martin actively took control, illegally and unlawfully, of Image Makers assets to the benefit of ShoreGood, DSK and himself.

276.   These assets are physical inventory or machinery or other similar assets that are currently, unlawfully and illegally being used by DSK, ShoreGood, Jeremy Martin and the Kelloughs.

277.   The value of these assets must be used to liquidate corporate debts to creditors first, and then to benefit shareholders.

278.   Some creditors have personal guarantees from Voelp causing undue and unnecessary injury that is current and ongoing.

279.   The Internal Revenue Service is owed payroll taxes for payroll that benefited ShoreGood, DSK, US Bottling Company and Image Makers.

280.    The corporation began legal proceedings to defend itself and file suit to marshal assets to pay creditors but no longer has financial resources to do so.

281.    The corporation is unable to bring further action on its own as it lacks the financial resources to seek the justice that it deserves.

282.    Voelp is a shareholder of 26.33% of Image Makers.

283.    Voelp is a director of Image Makers.

284.    Image Makers is a corporation in the state of Maryland, duly organized, with directors, bank accounts, loans, and meetings of directors over time, including Voelp, John Cecil, Dave Cecil and the Kelloughs.

285.    This action is not a collusive action to confer jurisdiction that the Court would otherwise lack.

286.    The actions of the Kelloughs, DSK, Jeremy Martin, ShoreGood and DSK have injured Voelp as a shareholder directly and indirectly.


**WHEREFORE,** Voelp respectfully requests that the Court issue an Order:

a.    Finding that ShoreGood, DSK, Jeremy Martin, Dennis Kellough and Bonnie Kellough have been unjustly enriched and violated their fiduciary duty to the corporation and fellow shareholders;

b.    Grant any and all damages for this Count in favor of Voelp, *to the use of* Image Makers for the purpose of satisfying creditors of Image Makers and US Bottling Company including but not limited to the Internal Revenue Service.

c.      Grant any and all damages for this Count to be paid to a court appointed escrow account and to be disbursed by a vote of all non-offending directors and to only be used to pay creditors and not to benefit individually or personally any director or shareholder unless the proceeds exceed the payment to all creditors that are established.

d.      Granting damages to Voelp in the amount of the $33,254.67 plus any other amounts proved at trial;

e.      Granting damages to Voelp for interest at the legal rate from the lock out date until the date issued for loss of use of the funds;

f.      Granting damages to Voelp for an amount for the rental of all assets from the lock out date to the date of the Judgment the amount of which to be determined at Court.

g.      Compelling Jeremy Martin, Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Voelp's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

h.      Granting such other and further relief as is proper under the circumstances.


Respectfully submitted,


William G. Voelp
*Pro Se*
21 Nicholson Dr.
Pasadena, MD 21122
443-995-3410
bill@voelpfamily.com

**Certificate of Service**

I HEREBY CERTIFY that on this 14th day of October 2009, a copy of the foregoing document,

together with all exhibits and attachments, was served via first class mail, postage prepaid upon:

Franklin & Prokopik, P.C.
Andrew L. Cole
The B&O Building
Two N. Charles St., Suite 600
Baltimore, MD 21201

Mr. John David Cecil
320 Severn Rd.
Annapolis, MD 21401

Mr. John T. Cecil
5627 Broadmoor Terrace North
Ijamsville, MD 21754

The Image Makers, Ltd.
c/o its Resident Agent
J. David Cecil
320 Severn Rd.
Annapolis, MD 21401

_____
William G. Voelp