IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

|  |  |  |
|---|---|---|
| SHOREGOOD WATER COMPANY, INC.<br>101 Frank M. Adams Industrial Way<br>Federalsburg, MD 21632 | * | |
| | * | |
| MR. DENNIS S. KELLLOUGH<br>715 Shore Rd.<br>Severna Park, MD 21146 | * | |
| | * | |
| MRS. BONNIE M. KELLOUGH<br>715 Shore Rd.<br>Severna Park, MD 21146 | * | |
| | * | |
| DENNIS S. KELLOUGH, LLC<br>205A Magnolia Ave.<br>Pasadena, MD 21122 | * | |
| | * | |
|     Serve on its Resident Agent:<br>    Mrs. Bonnie M. Kellough<br>    715 Shore Rd.<br>    Severn Park, MD 21146 | * | |
| AND | * | |
| MR. JEREMY MARTIN<br>715 Shore Rd.<br>Severna Park, MD 21146 | * | |
|     Plaintiffs, | * | |
|     v. | * | Civil Action No. 1:08-cv-02470-RDB |
| US BOTTLING COMPANY<br>PO Box 4454<br>Baltimore, MD 21223 | * | |
| THE IMAGE MAKERS, LTD.<br>PO Box 4454<br>Baltimore, MD 21223 | * | |

FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

OCT 16 2009

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

MR. WILLIAM G. VOELP               *
21 Nicholson Dr.
Pasadena, MD 21122                  *

MR. JOHN DAVID CECIL            *
320 Severn Rd.
Annapolis, MD 21401                *

AND                                   *

MR. JOHN T. CECIL, JR.           *
5627 Broadmoor Terr.
Ijamsville, MD 21754               *

       Defendants.             *

*     *     *     *     *     *     *     *     *     *     *     *

## THIRD PARTY COMPLAINT

Defendant and Counterclaimant John David Cecil ("Cecil"), acting *pro se*, hereby sues Dennis S. Kellough, LLC and Jeremy Martin pursuant to Fed. R. Civ. P. 14, among others, and states as follows:

## PARTIES

1.     John David Cecil is an individual residing in Anne Arundel County, Maryland.

2.     US Bottling Company is a corporation under the laws of the State of Maryland with its principal place of business in Baltimore City, Maryland.

3.     John David Cecil is a shareholder of US Bottling Company and owns 26.33% of US Bottling Company.

4.     Dennis S. Kellough and Bonnie M. Kellough, jointly, are shareholders of US Bottling Company and own 1/3 (one third) of US Bottling Company.

5.     John David Cecil is a director of US Bottling Company.

6.      Dennis S. Kellough is a director of US Bottling Company.

7.      Bonnie M Kellough is a director of US Bottling Company.

8.      The Image Makers, Ltd. ("Image Makers") is a corporation under the laws of the State of Maryland with its principal place of business in Baltimore City, Maryland.

9.      John David Cecil is a shareholder of Image Makers and owns 26.33% of Image Makers.

10.     John David Cecil is a director of Image Makers.

11.     Dennis S. Kellough and Bonnie M. Kellough, jointly, are shareholders in Image Makers and own 1/3 (one third) of Image Makers.

12.     Denis S. Kellough is a director of Image Makers.

13.     Bonnie M. Kellough is a director of Image Makers.

14.     ShoreGood is a corporation organized under the laws of the State of Maryland with its principal place of business in Caroline County, Maryland.

15.     John David Cecil is a shareholder of ShoreGood and has claim to own 26.33% of ShoreGood.

16.     Dennis S. Kellough and Bonnie M. Kellough, jointly, are shareholders in ShoreGood and have claim to own 1/3 (one third) of ShoreGood.

17.     Dennis S. Kellough ("Dennis Kellough") is an individual residing in Anne Arundel County, Maryland.

18.     Bonnie M. Kellough ("Bonnie Kellough") is an individual residing in Anne Arundel County, Maryland. Often Bonnie M. and Dennis S. Kellough will be referred to as "the Kelloughs"

19.     Dennis S. Kellough, LLC  ("DSK") is a corporation under the laws of the State of Maryland with its principal place of business in Caroline County, Maryland.

3

20.     John David Cecil is a shareholder in DSK and has claim to own 26.33% of DSK.

21.     Dennis S. Kellough and Bonnie M. Kellough, jointly, are shareholders in DSK and have claim to own 1/3 (one third) of DSK.

22.     Jeremy Martin is an individual residing in Anne Arundel County, Maryland.

23.     Jeremy Martin was employed by the joint *de facto* merged entities and is the live-in boyfriend of Erin Kellough at the residence of Dennis S. and Bonnie M. Kellough.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over the claims raised in this action pursuant to the Lanham Act and related claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

25.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all claims arising under state law because these claims are so related to original Plaintiffs' federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact

26.     This Court may exercise personal jurisdiction over the defendants because, among other reasons, each of the Defendants of the Counterclaim resides in this District.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as each Defendant in this Counterclaim resides in this District.

28.     Fed. R. Civ. P. 19 (a)(1)(A), among others, is met in that both Jeremy Martin and DSK reside in the District and that in their "absence, the Court cannot accord complete relief among existing parties."

29.     Fed. R. Civ. P. 19(a)(1)(B)(ii), among others, is met in that both Jeremy Martin and DSK have an "interest in the subject of the action and are so situated that disposing of the action in the person's absence may leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," and (i) "as a practical matter impair or impede the person's ability to protect the interest."

30.     It is proper to join DSK and Jeremy Martin in this case as the claims operate out of the same nucleus of facts and the identical Counterclaims stated.

31.    All Claims and Counterclaims are transactionally related to each other, making a third party complaint proper.

## FACTS COMMON TO ALL COUNTS

32.    Voelp and John David Cecil ("Dave Cecil") established Image Makers as a corporation in September of 1999 and began conducting business as a private label water and hot sauce company headquartered in Baltimore City, Maryland.

33.    Voelp and Dave Cecil operated out of an approximately 10,000 square foot facility at 1002 Wilso Drive, Baltimore, Maryland 21223.

34.    Voelp and Dave Cecil were operating in the black, paying vendors timely, realizing income and personal benefit, and preparing to expand into more vertical manufacturing operations throughout late 2003 and throughout 2004.

35.    Image Makers purchased unlabeled pre-bottled water from various sources in Pennsylvania, New York and Canada.

36.    Image Makers printed its own labels for application in the manufacturing facility on Wilso Drive in Baltimore, Maryland.

37.    Image Makers, Voelp and Dave Cecil developed special methods, trade secrets, a substantial customer base, and high levels of good will in the industries that Image Makers, Voelp and Dave Cecil served.

38.    All the principals have substantial amounts of time and treasure invested into the operations of the *de facto* merged entities.

39.     Rising freight costs incentivized Image Makers to look to a closer vendor to purchase unlabeled bottle water, or perhaps even have the bottler apply labels that Image Makers printed to save on manufacturing efficiencies.

40.     In about August of 2004, Lou Smith, a business associate of Voelp's, commented about the inactivity of a plant in Federalsburg called ShoreGood Water and informed Voelp that he should contact that plant about producing water.

41.     Voelp contacted ShoreGood in about August of 2004 and arranged a meeting.

42.     The meeting was held in August of 2004 and was attended by Voelp, Dave Cecil, Dennis Kellough, Bonnie Kellough, Robert Harris (plant manager), the office manager and the sales manager.

43.     A tour was given of the facility and ShoreGood was to present Image Makers with pricing to produce bottled water in an unlabeled state and where ShoreGood applied the label in medium to smaller runs during the bottling process.

44.     Voelp and Dave Cecil were contacted by Dennis Kellough within a few days about meeting alone to discuss business opportunities.

45.     Voelp, Dave Cecil and Dennis Kellough met at TGI Fridays in Columbia Maryland soon after the initial meeting where Kellough approached Image Makers about merging the entities or forming a joint venture.

46.     ShoreGood represented itself to Image Makers as having a new state-of-the-art manufacturing facility and expertise, but no customer base or marketing plan, seemingly a perfect fit for Image Makers who had the customers and plan and was currently entertaining options to enter the bottling industry in a more vertical fashion.

47.     Dennis Kellough represented clearly that the Federalsburg plant could produce 360 containers per minute of sustained production.  All financial models were built around a number of percentage of this 360 container per minute sustained production amount with the participation and agreement of Dennis Kellough.

48.     Image Makers, ShoreGood and DSK signed an "Agreement in Principal" on September 16, 2004, a copy of which was attached to ShoreGood's Complaint as Exhibit 1.

49.     The Agreement in Principal essentially provided that Image Makers, ShoreGood and DSK would combine operations, with Dave Cecil, Voelp and the Kelloughs as co-equal partners.

50.     Work was completed by attorneys for all the parties to formalize the new corporations or Point to Point Logistics, LLC (P2P), US Bottling Company and Image Real Estate Group, LLC.  Final agreement was reached on the operating agreement and all corporate documents.

51.     Attorney for the Kelloughs, Bruce Kaufmann, formalized and filed the documents to form P2P to own and operate and trucking for the entities, providing evidence and filings to all the related parties.

52.     P2P was formed by Kelloughs' attorney Bruce Kaufmann January 5, 2004.

53.     Vasilios Peros and Charles Morton, attorneys at Venable, represented Image Makers and prepared and filed the corporate documents for US Bottling Company, providing evidence and filings to all the related parties on January 26, 2005.

54.     During the period that the final documents were finalized for the operating agreement, the parties acted and moved forward as if the merger had already occurred in all business matters.

55.     Image Real Estate Group, LLC (Image Group) was formed on February 4, 2005 by Kelloughs' attorney Bruce Kaufman to purchase an interest in a building at 1125-A Desoto Road, Baltimore, Maryland 21223 from Born Industries International, LLC ("Born").

56.     US Bottling Company along with ShoreGood and Image Makers moved their headquarters into the building on Desoto Road and began operations in a *de facto* merger.

57.     Dennis Kellough was responsible for the running and operation of the Federalsburg, Maryland bottling facility along with his preexisting plant manager Robert Harris.

58.     Voelp and Dave Cecil were responsible for marketing, sales and customer service.

59.     In late 2004 John T. Cecil ("JTC") approached Dave Cecil and Voelp about an arrangement for a percentage ownership in US Bottling Company and the merged entities.

60.     A meeting was arranged for Dennis Kellough to meet with and approve this arrangement, to which the Kelloughs approved by action and word.

61.     John Cecil made investments into US Bottling Company and P2P that increased the value of the companies at no cost or detriment to the Kelloughs.

62.     By January of 2005 John Cecil was working full time in the *de facto* merged companies and had multiple responsibilities.  His main responsibility was the financial and bookkeeping needs of the merged entity, his area of expertise.

63.     An accident of a vehicle owned and operated by ShoreGood occurred on in about late 2004 where liability and issues surfaced.  Robert Harris, the plant manager under the Kelloughs, allowed a driver Michael McCready that was incarcerated or detained overnight by police to operate a company vehicle to bring it back to the Federalsburg plant. This vehicle crashed into a tree sending the driver to Maryland Shock Trauma.

64.     Mercantile Bank made it clear that they would not support any changes in ownership and would call in the loans ShoreGood held if the ownership of ShoreGood was altered.  Mercantile had not properly handled the original loan documents with the Kelloughs and did not have the required guarantee of the governmental agency.

65.     Voelp, Dave Cecil, John Cecil and the Kelloughs agreed to move forward as a *de facto* merged entity while working on replacing Mercantile Bank with other financing in the future and carefully weighing the proper way to deal with the problems of the truck accident.  This agreement for the effective *de facto* merger shall be referred to as "Agreement 2."

66.     It was agreed in Agreement 2 that the Kelloughs, Dave Cecil, and Voelp would each individually own 1/3 (one third) of US Bottling Company, Image Makers, ShoreGood and DSK, Image Real Estate Group and Point to Point Logistics, LLC.

67.     It was agreed by the Kelloughs, Dave Cecil and Voelp that the ownership in all the entities for John Cecil would come from shares owned by Dave Cecil and Voelp and not from the 1/3 (one third) of the Kelloughs ownership interest.

68.     It was agreed by the Kelloughs in Agreement 2 that they would convey from their individual holdings 1/3 (one third) of the stock in ShoreGood and 1/3 (one third) of the stock in DSK toCecil individually.

69.     It was agreed in Agreement 2 that when a consolidation of the corporations was feasible and proper the corporations would, at that time, be consolidated with the same individual ownership interests in any new merged entity being identical to the individual ownership interests of the separate corporations in the "*de facto*" merger.

70.     US Bottling Company, Image Makers, DSK, Point to Point Logistics, LLC and Image Real Estate Group, LLC moved forward under Agreement 2 and operated in a *de facto* merger by agreement and action.

71.     Voelp, Dave Cecil, John Cecil, Dennis Kellough and Bonnie Kellough moved forward as individuals based upon Agreement 2.

72.     Cecil was introduced as full "partner" on many occasions and to many individuals and entities by all other directors in ShoreGood, DSK, Image Makers, Point to Point Logistics, LLC and Image Real Estate Group, LLC.

73.     Cecil was specifically introduced as a "partner" in the merged entities by Kellough to employees, vendors and customers.

74.     Cecil moved forward based upon promises made by the Kelloughs that all of his efforts, foregone other opportunities, foregone salaries, among other things were towards Agreement 2 and his ownership of all the entities.

75.     US Bottling Company held regular meetings, from the inception of the *de facto* merger, of the shareholders where Voelp, Dave Cecil, John Cecil, and Dennis Kellough and less often Bonnie Kellough attended.  These meetings were at first regularly held breakfast meetings held at Bob Evans Restaurant and then these meetings were regularly held on Fridays in the conference room at the Baltimore headquarters and all shareholders were aware of the meetings.

76.     US Bottling Company domain was registered on January 4, 2005 and email addresses were assigned and used by all principals.  In addition, individual telephone numbers at the corporate headquarters were assigned for each employee and principal that operated from the headquarters.

77.     In early 2005 the dire need for state certifications, specifically for the states of New Jersey, New York, Massachusetts, Vermont, New Hampshire, and Virginia was very evident and discussed at numerous shareholder meetings that were held weekly.

78.     The July 1, 2005 revision of the *de facto* merged companies' employee manual is published to all employees new and old and made available in all employee public areas of both the Baltimore headquarters and the Federalsburg plant

79.     Dennis Kellough asked Voelp to assist in the preparation of the lengthy and complicated documentation necessary to complete the certifications, particularly for the State of New York.

80.     US Bottling Company received a Star-K Kosher certification, with the knowledge and approval of all shareholders, as owning the "brands" ShoreGood, Image Makers and US Bottling Company.

81.     By 2006, attorney Bruce Kauffman represented US Bottling Company in legal matters and not only Dennis Kellough.

82.     Voelp, John Cecil and Kellough spent countless hours in producing working documents consisting of hundreds of pages of documentation and secured certifications in the name of US Bottling Company for the Federalsburg, Maryland facility.

83.     Upon information and belief, ShoreGood continues to use these certification numbers to this day in commerce.

84.     In about April of 2006, a dispute arose whereby Born attempted to sell the building that was promised to Image Group, which generated a claim against Born in August of 2008.

85.     US Bottling Company, Image Makers, Dave Cecil, Voelp and Dennis Kellough were joint Plaintiffs in that case #24-C-06-00630 arguing, among other things, that an oral agreement made

after a letter of intent was signed would prevail as the proper agreement to be executed and because of which claims could be made.

86.    US Bottling Company, with Dennis Kellough as the primary, began negotiations to purchase a Combi-400 blow molding machine from GTRPET in about late July of 2006.

87.    In about August of 2006 Dennis Kellough and Voelp traveled to New York to view an identical proposed Combi-400 machine at Brooklyn Bottling Company.

88.    A purchase agreement for the Combi-400 was agreed to in September of 2006.  Kellough was fully involved and used his US Bottling Company email address for correspondences with both company personnel and the vendor.

89.    Jeremy Martin, boyfriend of Erin Kellough, daughter of the Kelloughs, was hired by Dennis Kellough to work in the merged entities.  His payroll was from the ShoreGood account.  He worked in all aspects over time at the plant to learn all operations and processes under the tutelage of Robert Harris, plant manager and Dennis Kellough.

90.    Dennis Kellough transferred Jeremy Martin to the Baltimore headquarters where he was placed in customer service to learn all aspects of the business in sales and customer service.

91.    Jeremy Martin was supplied with all master codes for all computer systems along with all shareholders.  Martin's access was complete and total and, upon belief, he is an expert in computer systems.

92.    Jeremy Martin set up remote access to the Baltimore computer system for the Kelloughs at K & W Electric, a company owned by the Kelloughs, and at the Kellough's home in Anne Arundel County, Maryland where Martin also resides.

93.     Jeremy Martin copied records of the *de facto* merged companies with his access for use by himself and the Kelloughs without the knowledge or consent of the other directors.

94.     US Bottling Company secured ongoing orders with Primo Water Company, a large national customer, with the participation of all shareholders through negotiations and implementation. The contract was signed April 6, 2007.

95.     By September 2007 US Bottling Company secured ongoing orders with SunOpta Global Organic Ingredients ("SunOpta"), a large national customer, with the participation of all shareholders through negotiations and implementation.  These labels through this customer include Trader Joe's and Whole Foods.

96.     While sales were increasing in a brisk fashion, reports in shareholders meetings did not report profits, but instead loses.

97.     John Cecil reported that the reason for the lack of profitability was that the promised production rates of 360 containers per minute was actually averaging 67 containers per minute.

98.     US Bottling Company became an industry leader in private label water sales for directly to end users and through the food service industry.  Clients included Sysco Food Service, US Food Service, Acme Paper, Bottled Water Store and Snow Valley among many others.

99.     US Bottling Company, under the Image Makes name, became an industry leader in private label water sales to the Advertising Specialty Market across the United States of America.

100.    Upon information and belief, in about December of 2007, Dennis Kellough began an attempt to sell the assets of ShoreGood, without any notice or agreement of shareholders.

101.    Upon information and belief, Jeremy Martin spent many nights in the Baltimore headquarters copying documents and hard copy files from file cabinets.  Upon further information and

belief, Jeremy Martin has a complete list of customers and all principals' personal and business files that were on their computers or in their private offices, illegally, and without any of the director's knowledge or consent.

102.    On April 18, 2008, through ShoreGood's counsel Bruce Kauffman, it was confirmed that a production run would be initiated on April 23, 2008 for the customer SunOpta.  It was further confirmed that the funds would be made payable to the Escrow account of Kauffman and Forman, P.A. and would not be disbursed without the consent of Dave Cecil, John Cecil, Voelp and Dennis Kellough.

103.    On April 24, 2008, both Dennis Kellough and Bonnie Kellough issued letters by fax and email resigning from Image Makers.

104.    On April 24, 2008, both Dennis Kellough and Bonnie Kellough issued letters by fax and email resigning from US Bottling Company.

105.    At the end of April 2008 the Kelloughs issued a US Bottling Company check to change all the locks at the plant and effectively "lock out" the other shareholders from the Federalsburg, Maryland facility.

106.    Countless orders were missed and customers were either lost completely or obfuscated by ShoreGood independent of US Bottling Company, without benefit to shareholders or creditors.

107.    Despite the heroic efforts of Voelp and Dave Cecil to save the clients to benefit shareholders and creditors, US Bottling Company became insolvent.

108.    Dennis Kellough interfered with a potential purchaser, Glas Water Sales of Canada, of the business beginning in May of 2008 which would have paid all creditors in full.

109.    Dennis Kellough interfered with a purchaser, Blind Industries and Services of Maryland, of the business beginning in May of 2008.

110.    Dennis Kellough met with SunOpta covertly to convert the orders and customer to no longer issue purchase orders to US Bottling Company and instead issue them directly to ShoreGood, in an effort to divert funds from shareholders and creditors.

111.    Upon information and belief, ShoreGood continues to receive orders and collect funds on US Bottling Company's customer SunOpta.

112.    For the month of May of 2008, US Bottling Company had combined orders to fill of over $400,000 for the month.

113.    Sales increased 347% from 2004 to 2007.

114.    Sales for 2008, without the wrongful acts committed by ShoreGood and the Kelloughs would have reached approximately $5,000,000.00 for an increase of over 25% for the year.

115.    Upon information and belief, Jeremy Martin and Bonnie Kellough entered the corporate headquarters after hours with their master key and removed paperwork and financial data from the premises, including from shareholders' private offices.

116.    Jeremy Martin is the current director of sales and running the day to day business of ShoreGood using data that was improperly obtained and illegally used.

117.    Upon information and belief, ShoreGood continues to sell to and make profits on customers and accounts illegally taken from US Bottling Company as the *de facto* merged entity.

118.    Upon information and belief, ShoreGood continues to use and has used assets accumulated by US Bottling Company for its own benefit and not for the benefit of creditors or shareholders.

## COUNT I

## SPECIFIC PERFORMANCE (AGAINST SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

119.   Cecil incorporates all the foregoing averments in as though fully set forth herein.

120.   ShoreGood, DSK, Dennis Kellough and Bonnie Kellough are subject to Agreement 2 through expressed Contract.

121.   ShoreGood, DSK, Dennis Kellough and Bonnie Kellough are subject to Agreement 2 through implied Contract by their actions and conduct indicating all parties intention to make the Agreement.

122.   Dennis Kellough and Bonnie Kellough, shareholders in ShoreGood and DSK, entered into the bilateral Contract with Cecil, shareholder in Image Makers, to convey 1/3 (one third) of the stock in ShoreGood and 1/3 (one third) of the stock in DSK in return for 1/3 (one third) of the stock in Image Makers.

123.   Cecil individually was contracted to receive 1/3 (one third) of the stock in DSK and 1/3 (one third) of the stock in ShoreGood, and has not received same.

124.   Cecil relied on and acted in all ways to benefit the Kelloughs, DSK and ShoreGood and had no reason to believe that the Kelloughs would not perform on the Agreement until some time around the illegal lock out by the Kelloughs.

125.   Cecil has performed and has not received the stock in ShoreGood and DSK, as was promised through both expressed and implied Contract.

126.   Cecil has completely met all performance stipulations for that conveyance and continues to stand ready, willing and able to complete the Agreement 2.

127.   The Kelloughs have wrongfully barred Cecil from his rightful ownership interest in ShoreGood and DSK.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

a.  Finding that the Agreement 2 by and between ShoreGood, Image Makers, DSK, Cecil, Dennis Kellough and Bonnie Kellough is valid;

b.  Compelling ShoreGood and DSK to take the necessary actions to convey 1/3 (one third) of all outstanding stock to Cecil as was agreed in Agreement 2;

c.  Enjoining and restraining ShoreGood and DSK, it agents, Dennis Kellough and Bonnie Kellough, and any of their officers, agents, representatives, servants, employees, successors and assigns, and all others in active concert participation with any of them from taking any action to bar or cause to bar Cecil from his rightful ownership in the stock in ShoreGood and DSK;

d.  Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit;

e.  Compelling ShoreGood, DSK, Dennis Kellough and Bonnie Kellough to provide a complete accounting of all profits and revenues from the date of the lockout to the date of the conveyance of the 1/3 of all outstanding stock; and

f.  Granting such other and further relief as is proper under the circumstances.

## COUNT II
### BREACH OF CONTRACT (AGAINST SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

128.   Cecil incorporates all the foregoing averments in as though fully set forth herein.

129.   ShoreGood, Dennis Kellough, Bonnie Kellough and DSK are subject to Agreement 2 by expressed contract.

130.   ShoreGood, DSK, Dennis Kellough and Bonnie Kellough are subject to Agreement 2 through implied Contract by their actions and conduct indicating all parties intention to make the Agreement.

131.   Dennis Kellough and Bonnie Kellough, shareholders in ShoreGood and DSK, entered into the bilateral Contract with Cecil, shareholder in Image Makers, to convey 1/3 (one third) of the stock in ShoreGood and 1/3 (one third) of the stock in DSK in return for 1/3 (one third) of the stock in Image Makers.

132.   Cecil has not received the agreed upon 1/3 (one third) of the stock in ShoreGood and DSK.

133.   Cecil relied on the Agreement 2 contract to his detriment.

134.   Cecil added to the value of DSK and ShoreGood based upon promises made by the Kelloughs, DSK and ShoreGood.

135.   Cecil has performed and stands ready, willing and able to perform on the contract.

136.   Cecil is injured, and continues to be injured, through loss of profits by the wrongful actions and breach of ShoreGood, DSK and the Kelloughs.

137.   As a result of the Breach of Contract by the Kelloughs, DSK, and ShoreGood, Cecil is injured in potentially owing individually and personally debts to William Blanchet, Patapsco Bank, credit cards and the Internal Revenue Service which may exceed $450,000.  These debts are also debts of the corporations that the Kelloughs are and/or were directors over.

138.   Cecil is injured and continues to be injured by the value of the promised stock in DSK and ShoreGood.

139.   Cecil is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

a.   Finding that the Agreement 2 by and between ShoreGood, Image Makers, DSK, Cecil, Dennis Kellough and Bonnie Kellough is valid;

b.   Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have breached the contract with ;

c.   Granting damages to Cecil for lost profits and equity to be proved at trial;

d.   Granting damages to Cecil for lost income to be proved at trial;

e.   Granting damages to Cecil for any personally liable debt derived or owed in connection with US Bottling Company, Image Makers, ShoreGood or any related company, entity or individual that shall be proved at trial;

f.   Compelling ShoreGood, DSK, Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest;

g.   Compelling ShoreGood, DSK, Dennis Kellough and Bonnie Kellough to provide a complete accounting of all profits and revenues from the date of the Breach of Contract to current; and

h.   Granting such other and further relief as is proper under the circumstances.

## COUNT III
## PROMISSORY ESTOPPEL
## (SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

140.    Cecil incorporates all the foregoing averments in as though fully set forth herein.

141.    ShoreGood, DSK Dennis Kellough and Bonnie Kellough are subject to Agreement 2 by expressed contract.

142.    ShoreGood, DSK, Dennis Kellough and Bonnie Kellough are subject to Agreement 2 through implied Contract by their actions and conduct indicating all parties' intention to make the Agreement.

143.    Dennis Kellough and Bonnie Kellough, shareholders in ShoreGood and DSK, entered into the bilateral Contract with Cecil to convey 1/3 (one third) of the stock in ShoreGood and 1/3 (one third) of the stock in DSK to Cecil in return for 1/3 (one third) of the stock in Image Makers conveyed to Dennis and Bonnie Kellough, jointly.

144.    Cecil relied on the clear and definite promises made by the Kelloughs, ShoreGood and DSK.

145.    ShoreGood, DSK and the Kelloughs made a clear and definite promise, among others, to convey to Cecil 1/3 (one third) of the stock in DSK and 1/3 (one third) of the stock in ShoreGood.

146.    Kelloughs, as the promisors, clearly expected that Agreement 2 would induce Cecil to act on behalf of the *de facto* merged entities, to his detriment.

147.    Cecil actually did take actual and reasonable action through heroic efforts on behalf of the *de facto* merged entities, to Cecil's detriment, from late 2004 through the illegal lock out by the Kelloughs.

148.    Through efforts of Cecil the value of the stock of ShoreGood and DSK was increased based upon contracts and promises made by Kelloughs, DSK and ShoreGood to Cecil'

149.    These promises cause a detriment to Cecil that can only be avoided by enforcing the promise or in the alternative grant sufficient damages to rectify the wrongdoing.

150.    ShoreGood, DSK and the Kelloughs' wrongful actions and violations of their promises caused the complete loss of all business and forced the dissolution of the remaining assets of the companies involved in the *de facto* merger.

151.    Cecil has performed and stands ready, willing and able to perform on the contract and all promises.

152.    Cecil is injured by not holding the 1/3 (one third) of the stock in DSK and ShoreGood.

153.    Cecil is injured, and continues to be injured, through loss of profits by the wrongful actions and failed promises of the Kelloughs, ShoreGood and DSK.

154.    Cecil is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities due to the wrongful actions and failed promises by the Kelloughs, ShoreGood and DSK.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

a.    Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have violated their promises to Cecil;

b.    Granting damages to Cecil for lost profits and equity to be proved at trial;

c.    Granting damages to Cecil for lost income to be proved at trial;

d.      Granting damages to Cecil for any personally liable debt derived or owed in connection with US Bottling Company, Image Makers, ShoreGood or any related company, entity or individual that shall be proved at trial;

e.      Granting damages to Cecil for the value of ShoreGood and DSK stock that is rightfully Cecil's;

f.      Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

g.      Granting such other and further relief as is proper under the circumstances.

### COUNT IV
### DEFAMATION (AGAINST DENNIS KELLOUGH)

155.    Cecil incorporates all the foregoing averments in as though fully set forth herein.

156.    Dennis Kellough has made false oral statements about Cecil to numerous individuals.

157.    Dennis Kellough has made false oral statements about Cecil to Buck Sharretts indicating that Cecil had stolen funds from the merged entities.

158.    Dennis Kellough has made false oral statements about Cecil to Derek Reineman indicating that Cecil had stolen funds from the merged entities.

159.    Dennis Kellough has made false oral statements about Cecil to Robert Harris and other individuals at Blind Industries and Services of Maryland which caused failed business relationships.

160.    Dennis Kellough has made false oral statements about Cecil to Blair Bentham and Ryan Bentham of Glas Water which caused a failed business relationship.

161.   The defamation, which caused the failing of several business relationships, have caused the illiquidity of US Bottling Company and Image Makers which has caused undue economic hardship on Cecil individually.

162.   The defamatory statements were intentional and willful and Kellough knew they would cause damage when he made them to Cecil's reputation and to potential business relationships.

163.   Kellough did not have any right or justifiable cause to make these egregious statements.

164.   Cecil is injured, and continues to be injured, by the defamation of ShoreGood and the Denny Kellough.

165.   There is no reason to believe that the defamation will cease without Court order.

166.   Cecil has attempted to start new ventures and has suffered damages from the untrue statements by Dennis Kellough.

167.   Dennis Kellough has defamed Cecil in an attempt to interfere with potential business contracts and relationships that have caused Cecil serious, real and conspicuous injury.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

h.   Finding that Dennis Kellough has defamed the good character of Cecil;

i.   Finding that the claims levied upon Cecil involving fraud or misappropriation of funds are not reasonable and without merit;

j.   Finding that the defamation is characterized by evil motive, intent to injure, and ill will;

k.   Compelling Dennis Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest;

l.     Compelling Dennis Kellough to cease and desist from any defaming statements either orally or in writing;

m.     Granting to Cecil the amount of damages caused by the injurious statements as it pertains to the affected business arrangements with Glas Water Sales and Blind Industries and Services of Maryland;

n.     Granting to Cecil punitive damages as may be shown at trial;

o.     Granting to Cecil damages for lost income that may be proven at trial; and

p.     Granting such other and further relief as is proper under the circumstances.

## COUNT V
### CIVIL CONSPIRACY
### (SHOREGOOD, DSK, JEREMY MARTIN, DENNIS KELLOUGH AND BONNIE KELLOUGH)

168.    Cecil incorporates all the foregoing averments in as though fully set forth herein.

169.    Dennis Kellough, Bonnie Kellough, ShoreGood, DSK and Jeremy Martin conspired together to injure and make the wrongful acts against Cecil and Cecil's interests.

170.    Data, both electronically and physical, was improperly and illegally taken from the Baltimore headquarters and is currently being used without benefit to Cecil or Cecil's interests.

171.    Jeremy Martin worked to learn all aspects of the business, including trade secrets to be used for the benefit of the co-conspirators without consideration or gain to Cecil or Cecil's interests.

172.    Jeremy Martin is now running the day to day operations of ShoreGood.

173.    Cecil and all other managers, including Kelloughs, of the *de facto* merged companies have a reasonable expectation of privacy in their private offices which are locked or otherwise indicated as offices of that individual.

174.   Jeremy Martin, conspiratorially acting with the Kelloughs, illegally copied personal and other records, both electronic and physical of Cecil that were in his private locked office.  This action by Jeremy Martin and Bonnie Kellough was breaking and entering into a private locked office.

175.   Jeremy Martin, conspiratorially acting with the Kelloughs, illegally copied personal and other records, both electronic and physical of Cecil that were on the server in a private area of the server. Each owner had an expectation of privacy in this individual private area of the server.

176.   The Kelloughs and Jeremy Martin entered into a confederation for the purpose of unlawfully and tortuously taking information, trade secrets, customer lists, business records and other items to directly and/or indirectly benefit themselves, and injure Cecil.

177.   The Kelloughs and Jeremy Martin committed intentional Interference with Contracts in respect to stealing the customer Sun Opta through illegal means.

178.   The Kelloughs and Jeremy Martin committed intentional Interference with an Economic Relationship through working to undermine Cecil's business dealings with Glas Water Sales and Blind Industries and Services of Maryland.

179.   The Kelloughs and Martin conspired to divert revenues and business opportunities away from Cecil and/or Cecil's interests to benefit themselves and to the detriment of Cecil.

180.   The Kelloughs and Martin in other ways conspired to injure Cecil and/or Cecil's interests through their control of ShoreGood and DSK and their management of those companies.

181.   The illegal actions of the Kelloughs and Martin has directly caused Cecil to be liable for joint corporate debts on a personal level.

182.   The Kelloughs are in sole possession of the customers, assets and trade secrets of the merged entities.

183.    Cecil is injured, and continues to be injured, through loss of profits by the wrongful actions of ShoreGood, DSK, Dennis Kellough, Bonnie Kellough and Jeremy Martin.

184.    Cecil is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities due to the wrongful actions by the Kelloughs, ShoreGood, DSK and Jeremy Martin.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

a.    Finding that ShoreGood, DSK, Jeremy Marin, Dennis Kellough and Bonnie Kellough have committed a civil conspiracy against Cecil;

b.    Granting damages to Cecil for lost profits and equity to be proved at trial;

c.    Granting damages to Cecil for lost income that may be proved at trial;

d.    Granting damages to Cecil for any personally liable debt derived or owed in connection with US Bottling Company, Image Makers, ShoreGood or any related company, entity or individual that shall be proved at trial;

e.    Granting damages to Cecil for lost gain, salaries, profits, bonuses, and other gains from business relationships;

f.    Granting damages to Cecil for lost gain and profits from contracts;

g.    Compelling Dennis Kellough and Bonnie Kellough, Jeremy Martin or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

h.    Granting such other and further relief as is proper under the circumstances.


**COUNT VI**
**UNJUST ENRICHMENT AND VOILATION OF FIDUCIARY DUTY**

**(SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)**

185.    Cecil incorporates all the foregoing averments in as though fully set forth herein.

186.    By nature of Agreement 2 the Kelloughs owe a fiduciary duty to Cecil as a fellow shareholder.

187.    By nature of Dennis Kellough as a director of US Bottling Company, he owes a fiduciary duty to Cecil.

188.    By nature of Bonnie Kellough as a director of US Bottling Company, she owes a fiduciary duty to Cecil.

189.    By nature of US Bottling Company, the Kelloughs owe a fiduciary duty to Cecil as a fellow shareholder.

190.    By nature of Image Makers, the Kelloughs owe a fiduciary duty to Cecil as a fellow shareholder.

191.    By nature of Dennis Kellough as a director of Image Makers, he owes a fiduciary duty to Cecil.

192.    By nature of Bonnie Kellough as a director of Image Makers, she owes a fiduciary duty to Cecil.

193.    The Kelloughs have violated their fiduciary duty to Cecil by acting in a manner that does not hold out the interests of all the shareholders but only benefits the Kelloughs, to the detriment of Cecil individually.

194.    There exists a clear fiduciary relationship and responsibility of the Kelloughs, as directors and shareholders of joint corporations.

195.    Cecil's value of stock as a shareholder in Image Makers and US Bottling Company has been reduced and the Kelloughs' value of stock as a shareholder in ShoreGood and DSK have been enriched to the detriment of Cecil, which is a clear conflict of interest and violation of fiduciary duty to Cecil.

196.    Through the Kelloughs' actions the value of Cecil's stock in the *de facto* merged entities is zero, while the Kelloughs have unjustly enriched other interest to Cecil's detriment.

197.    Dennis Kellough, Bonnie Kellough, DSK and ShoreGood through their wrongful acts have taken goods and property of high value for their own unjust enrichment without benefit to Cecil or Cecil's interests.

198.    It would be inequitable for DSK, ShoreGood and the Kelloughs to retain these goods and equipment and must return them or otherwise compensate fair market value for these valuable goods and equipment.

199.    Certain trade secrets on process, knowhow, customer service, marketing and operations, among others were created by efforts by Cecil, individually.

200.    Cecil would have never divulged or shared any of the proprietary information if not for the promises of the Kelloughs.

201.    ShoreGood, DSK and the Kelloughs unjustly have taken these trade secrets for their own benefit, in violation of their fiduciary duty to Cecil.

202.    Voelp or Cecil's interests retain ownership of these valuable assets.

203.    At a minimum, Cecil, individually is due 1/3 (one third) of the value of all illegally taken assets. Cecil would use these assets to satisfy personal debt and creditors, whereas Kellough is using the assets illegally for his own benefit.

204. Upon information and belief, ShoreGood, DSK and the Kelloughs are actively using these assets and trade secrets in commerce without benefit to Cecil or Cecil's interests.

205. Upon information and belief, ShoreGood and the Kelloughs have wrongfully sold or otherwise disposed of some of these valuable assets.

206. Cecil is injured, and continues to be injured, by this unjust enrichment of the Kelloughs and ShoreGood.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

a. Finding that ShoreGood, Dennis Kellough and Bonnie Kellough have been unjustly enriched by assets belonging to Cecil and/or Cecil's interests;

b. Granting damages to Cecil for any assets sold or otherwise disposed of the value of which will be determined at trial;

c. Granting Cecil the value of 1/3 (one third) of all assets illegally taken by Kelloughs, DSK and ShoreGood;

d. Granting damages to Cecil any assets still in ShoreGood, DSK or the Kellough's possession, the value of which will be determine at trial;

e. Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

f. Granting such other and further relief as is proper under the circumstances.

## COUNT VII
## TORTUOUS INTERFERENCE
## (SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

207.    Cecil incorporates all the foregoing averments in as though fully set forth herein.

208.    Dennis Kellough, Bonnie Kellough, DSK and ShoreGood intentionally interfered in business relationships and contracts by and between Cecil or Cecil's interests and Blind Industries and Services of Maryland, Glas Water Sales and SunOpta Global Organic Products, among others.

209.    Cecil was negotiating a business contract, that would have benefited him personally, with Glas Water Sales, of Canada when Dennis Kellough preempted meetings in Baltimore by contacting Glas Water and interfering with the business relationship.

210.    The business relationship was derailed by the actions of Kellough.

211.    A contract purchase order existed by and between US Bottling Company and Sun Opta Global Organic Products that would have benefited Cecil personally with proceeds paying personally signed debt.

212.    Kellough circumvented that contract to his own benefit, to the detriment of Cecil.

213.    Cecil was negotiating a business contract with Blind Industries and Services of Maryland that would have benefited Cecil personally, when Kellough held his own personal meetings and interfered with the business relationship.

214.    The business relationship was derailed by the actions of Kellough.

215.    The actions of the Kelloughs, ShoreGood and DSK were intentional, willful and calculated to cause damage and loss against Cecil's economic rights and lawful business pursuits.

216.    The Kelloughs, ShoreGood and DSK had not justifiable right or cause and their actions caused actual damages that are real and conspicuous.

217.    The interference by the Kelloughs and ShoreGood resulted in harm and injury to Cecil and/or Cecil's interests.

218.    The only remedy in law to compensate for these wrongful acts is a judgment in favor of Cecil and/or Cecil's interests.

219.    Cecil and/or Cecil's interests are injured, and continues to be injured, through loss of profits by the wrongful actions of ShoreGood, Dennis Kellough, Bonnie Kellough.

220.    Cecil is injured by the loss of personal income by these wrongful actions.

221.    Cecil is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities due to the wrongful actions by the Kelloughs, ShoreGood.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

a.      Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have committed tortuous interference;

b.      Granting damages to Cecil for lost profits and equity to be proved at trial;

c.      Granting damages to Cecil for lost income and other gains that may be proved at trial;

d.      Granting damages to Cecil for any personally liable debt derived or owed in connection with US Bottling Company, Image Makers, ShoreGood or any related company, entity or individual that shall be proved at trial;

e.      Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

f.      Granting such other and further relief as is proper under the circumstances.

## COUNT VIII
## WRONGFUL TERMINATION OF CONTRACT
### (SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

222.    Cecil incorporates all the foregoing averments in as though fully set forth herein.

223.    Dennis Kellough, Bonnie Kellough, DSK and ShoreGood wrongfully terminated the Agreement 2 contract that exists by and between Dennis Kellough, Bonnie Kellough, ShoreGood, Voelp, Dave Cecil, John Cecil, ShoreGood, Image Makers, US Bottling Company and DSK.

224.    Cecil has an individual right, as per Agreement 2, to 1/3 (one third) of the stock in ShoreGood and DSK.

225.    This wrongful action by the Kelloughs has resulted in injury to Cecil.

226.    This wrongful action by the Kelloughs, DSK and ShoreGood has resulted in Cecil's personal liability to corporate debts as direct result.

227.    Cecil is injured, and continues to be injured, through loss of profits and equity by the wrongful actions of ShoreGood, DSK, Dennis Kellough and Bonnie Kellough.

228.    Cecil is injured, and continues to be injured, through the loss of income.

229.    Cecil is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities due to the wrongful actions by the Kelloughs, DSK and ShoreGood.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

a.    Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have wrongfully terminated the contract that exists by and between Voelp, Dave Cecil, John Cecil, Dennis Kellough, Bonnie Kellough, ShoreGood, DSK, Image Makers and US Bottling Company was wrongfully terminated;

b.      Granting damages to Cecil for lost profits and equity to be proved at trial;

c.      Granting damages to Cecil for lost income and other gain that may be proved at trial;

d.      Granting damages to Cecil for any personally liable debt derived or owed in connection with US Bottling Company, Image Makers, ShoreGood or any related company, entity or individual that shall be proved at trial;

e.      Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

f.      Granting such other and further relief as is proper under the circumstances.


## COUNT IX
## QUANTUM MERIUT
## (IN THE ALTERNATIVE)
## (SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

230.    Cecil incorporates all the foregoing averments in as though fully set forth herein.

231.    Cecil worked from late 2004 through lockout in April of 2008 to enrich and grow US Bottling Company, ShoreGood and DSK.

232.    The Kelloughs, DSK and ShoreGood have gained sales, equity, information, trade secrets, knowhow, ideas, customer relationships, among other things through the efforts of Cecil individually without adequate compensation to Cecil.

233.    The Kelloughs, DSK and ShoreGood have benefited by the services provided by Cecil from late 2004 through May of 2008.

234.    The Kelloughs, DSK and ShoreGood, by not performing on Agreement 2, have a contract with Cecil "implied in law" also known as a "*quasi-contract.*"

235.    The Kelloughs, DSK and ShoreGood have benefited from the services provided by Cecil but have not given fair compensation for such services.

236.    The information gained from Cecil's work and experience as an expert in the marketing, sales and logistics were not compensated at or near market value.

237.    Cecil developed systems, customer relationships, knowhow, and ideas that are trade secrets and have not been compensated at or near market value for such services.

238.    Cecil is injured, and continues to be injured, through the loss of income and equity.

239.    Cecil is injured, and continues to be injured, by the loss of adequate monetary compensation for work preformed on behalf of ShoreGood, DSK and the Kelloughs.

240.    Cecil is injured, and continues to be injured, by the personal responsibility of accumulated debts from the *de facto* merged entities due to the wrongful actions by the Kelloughs, ShoreGood.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

a.      Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have become unjustly enriched by the work and efforts of Cecil;

b.      Granting damages to Cecil for lost income for what the efforts and work would be worth to be determined at trial;

c.      Granting damages to Cecil for the fair market value of Cecil's full time services from late 2004 through May of 2008;

d.      Granting damages to Cecil for the adequate compensation based upon the information, customers, knowhow, trade secrets among other things for the time in question;

e.      Granting damages to Cecil for the amount these valuable services have enriched DSK, ShoreGood and the Kelloughs, the amount of which is to be determined at trial;

f.      Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

g.      Granting such other and further relief as is proper under the circumstances.

## COUNT X
## FRAUD IN THE INDUCEMENT
### (SHOREGOOD, DSK, DENNIS KELLOUGH AND BONNIE KELLOUGH)

241.    Cecil incorporates all the foregoing averments in as though fully set forth herein.

242.    On May 18, 2006 Cecil was induced to enter his personal responsibility on a Confessed Judgment Promissory Note from William K. and Margaret B. Blanchet to benefit the *de-facto* merged entities.

243.    The amount of this note originated at $300,000.00 (three hundred thousand dollars).

244.    Upon information and belief, William and Margaret Blanchet are close friends of the Kelloughs.

245.    The Kelloughs, DSK and ShoreGood fraudulently induced Cecil into personally guaranteeing the note.

246.    The funds of the loan were used to benefit ShoreGood and DSK, while being guaranteed by Cecil.

247.    Cecil received no individual direct benefit from these funds.

248.    In late Spring of 2007 and then again repeated in early 2008, Dennis Kellough stated to John Cecil that the Blanchets were good friends of Kellough and would not be collecting any unpaid remaining balance from him, and that he knew that they never would.

249.    In late Spring of 2007 and then again repeated in early 2008, Dennis Kellough stated to John Cecil that Blanchet would be first attempting to collect from Voelp, as Dennis Kellough did not like Voelp, and then he would go after John and Dave Cecil.

250.    This deceitful action by Blanchet, the Kelloughs, DSK and ShoreGood caused Cecil to enter the agreement with the willful non-disclosure of a material fact that Blanchet, the Kelloughs, DSK and ShoreGood had a duty to disclose.

251.    Upon information and belief, the Kelloughs, Blanchet, DSK and ShoreGood induced Cecil to agree to personally guarantee the note knowing that the funds would be used to benefit DSK and ShoreGood and that Kellough would not be held responsible for the note, or at or near the same degree that Cecil would.

252.    Under the circumstances a reasonable person would attach importance to these facts, among others, in deciding whether to enter the Agreement.

253.    Cecil would never have entered the Agreement of the Confessed Judgment Promissory Note with this information.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

    a.    Finding that ShoreGood, DSK, Dennis Kellough and Bonnie Kellough have fraudulently induced Cecil to enter the Confessed Judgment Promissory Note with William and Margaret Blanchet;

b.   Granting damages to Cecil in the amount of the current Judgment against Cecil to satisfy the Judgment in full.

c.   Compelling Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

d.   Granting such other and further relief as is proper under the circumstances.

## COUNT XI
## SHAREHOLDER DERIVATIVE ACTION FOR UNJUST ENRICHMENT AND VIOLATION OF FIDUCIARY DUTY
### (BY Cecil ON BEHALF OF US BOTTLING COMPANY AGAINST SHOREGOOD, DSK, JEREMY MARTIN, DENNIS KELLOUGH AND BONNIE KELLOUGH)

254.   Cecil incorporates all the foregoing averments in as though fully set forth herein.

255.   The Kelloughs, Jeremy Martin, DSK, and ShoreGood have illegally and unlawfully obfuscated with US Bottling Company assets valued at least at $650,781.85.

256.   Bonnie Kellough and Dennis Kellough are both shareholders and directors of US Bottling Company.

257.   The Kelloughs owe a fiduciary duty to act in the interest of the corporation and other shareholders and not take any action that would benefit themselves to the detriment of the corporation, other shareholders or creditors.

258.   Jeremy Martin is the General Manager of ShoreGood.

259.   Upon information and belief, Jeremy Martin actively took control, illegally and unlawfully, of US Bottling Company assets to the benefit of ShoreGood, DSK and himself.

260. These assets are physical inventory or machinery or other similar assets that are currently, unlawfully and illegally being used by DSK, ShoreGood, Jeremy Martin and the Kelloughs.

261. The value of these assets must be used to liquidate corporate debts to creditors first, and then to benefit shareholders.

262. Some creditors have personal guarantees from Cecil causing undue and unnecessary injury that is current and ongoing.

263. The Internal Revenue Service is owed payroll taxes for payroll that benefited ShoreGood, DSK, US Bottling Company and Image Makers.

264. The corporation began legal proceedings to defend itself and file suit to marshal assets to pay creditors but no longer has financial resources to do so.

265. The corporation is unable to bring further action on its own as it lacks the financial resources to seek the justice that it deserves.

266. Cecil is a shareholder of 26.33% of US Bottling Company.

267. Cecil is a director of US Bottling Company.

268. US Bottling Company is a corporation in the state of Maryland, duly organized, with directors, bank accounts, loans, and meetings of directors over time, including Voelp, John Cecil, Dave Cecil and the Kelloughs.

269. This action is not a collusive action to confer jurisdiction that the Court would otherwise lack.

270. The actions of the Kelloughs, DSK, Jeremy Martin, ShoreGood and DSK have injured Cecil as a shareholder directly and indirectly.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

     a.     Finding that ShoreGood, DSK, Jeremy Martin, Dennis Kellough and Bonnie Kellough have been unjustly enriched and violated their fiduciary duty to the corporation and fellow shareholders;

     b.     Grant any and all damages for this Count in favor of Cecil, *to the use of* US Bottling Company for the purpose of satisfying creditors of US Bottling Company and Image Makers including but not limited to the Internal Revenue Service.

     c.     Grant any and all damages for this Count to be paid to a court appointed escrow account and to be disbursed by a vote of all non-offending directors and to only be used to pay creditors and not to benefit individually or personally any director or shareholder unless the proceeds exceed the payment to all creditors that are established.

     d.     Granting damages to Cecil in the amount of the $650,781.85 plus any other amounts proved at trial;

     e.     Granting damages to Cecil for interest at the legal rate from the lock out date until the date issued for loss of use of the funds;

     f.     Granting damages to Cecil for an amount for the rental of all assets from the lock out date to the date of the Judgment the amount of which to be determined at Court.

     g.     Compelling Jeremy Martin, Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

     h.     Granting such other and further relief as is proper under the circumstances.

<u>COUNT XII</u>
**SHAREHOLDER DERIVATIVE ACTION FOR UNJUST ENRICHMENT AND
VIOLATION OF FIDUCIARY DUTY
(BY Cecil ON BEHALF OF IMAGE MAKERS AGAINST SHOREGOOD, DSK,
JEREMY MARTIN, DENNIS KELLOUGH AND BONNIE KELLOUGH)**

271.    Cecil incorporates all the foregoing averments in as though fully set forth herein.

272.    The Kelloughs, Jeremy Martin, DSK, and ShoreGood have illegally and unlawfully obfuscated with Image Makers assets valued at least at $33,254.67.

273.    Bonnie Kellough and Dennis Kellough are both shareholders and directors of Image Makers.

274.    The Kelloughs owe a fiduciary duty to act in the interest of the corporation and other shareholders and not take any action that would benefit themselves to the detriment of the corporation, other shareholders or creditors.

275.    Jeremy Martin is the General Manager of ShoreGood.

276.    Upon information and belief, Jeremy Martin actively took control, illegally and unlawfully, of Image Makers assets to the benefit of ShoreGood, DSK and himself.

277.    These assets are physical inventory or machinery or other similar assets that are currently, unlawfully and illegally being used by DSK, ShoreGood, Jeremy Martin and the Kelloughs.

278.    The value of these assets must be used to liquidate corporate debts to creditors first, and then to benefit shareholders.

279.    Some creditors have personal guarantees from Cecil causing undue and unnecessary injury that is current and ongoing.

280.    The Internal Revenue Service is owed payroll taxes for payroll that benefited ShoreGood, DSK, US Bottling Company and Image Makers.

41

281.   The corporation began legal proceedings to defend itself and file suit to marshal assets to pay creditors but no longer has financial resources to do so.

282.   The corporation is unable to bring further action on its own as it lacks the financial resources to seek the justice that it deserves.

283.   Cecil is a shareholder of 26.33% of Image Makers.

284.   Cecil is a director of Image Makers.

285.   Image Makers is a corporation in the state of Maryland, duly organized, with directors, bank accounts, loans, and meetings of directors over time, including Voelp, John Cecil, Dave Cecil and the Kelloughs.

286.   This action is not a collusive action to confer jurisdiction that the Court would otherwise lack.

287.   The actions of the Kelloughs, DSK, Jeremy Martin, ShoreGood and DSK have injured Cecil as a shareholder directly and indirectly.

**WHEREFORE, Cecil** respectfully requests that the Court issue an Order:

a.   Finding that ShoreGood, DSK, Jeremy Martin, Dennis Kellough and Bonnie Kellough have been unjustly enriched and violated their fiduciary duty to the corporation and fellow shareholders;

b.   Grant any and all damages for this Count in favor of Cecil, *to the use of* Image Makers for the purpose of satisfying creditors of Image Makers and US Bottling Company including but not limited to the Internal Revenue Service.

    c.         Grant any and all damages for this Count to be paid to a court appointed escrow account and to be disbursed by a vote of all non-offending directors and to only be used to pay creditors and not to benefit individually or personally any director or shareholder unless the proceeds exceed the payment to all creditors that are established.

    d.         Granting damages to Cecil in the amount of the $33,254.67 plus any other amounts proved at trial;

    e.         Granting damages to Cecil for interest at the legal rate from the lock out date until the date issued for loss of use of the funds;

    f.         Granting damages to Cecil for an amount for the rental of all assets from the lock out date to the date of the Judgment the amount of which to be determined at Court.

    g.         Compelling Jeremy Martin, Dennis Kellough and Bonnie Kellough or any other individuals or corporations that may be liable there for, to pay Cecil's attorneys' fees, together with costs of this suit, pre and post judgment interest; and

    h.         Granting such other and further relief as is proper under the circumstances.

Respectfully submitted,

_____

John David Cecil
*Pro Se*
320 Severn Rd.
Annapolis, MD 21401
410-919-3650
329david@comcast.net

## Certificate of Service

I HEREBY CERTIFY that on this 15th day of October 2009, a copy of the

foregoing document, together with all exhibits and attachments, was served via first class

mail, postage prepaid upon:


Franklin & Prokopik, P.C.
Andrew L. Cole
The B&O Building
Two N. Charles St., Suite 600
Baltimore, MD 21201

Mr. William G. Voelp
21 Nicholson Rd
Pasadena, MD 21122


Mr. John T. Cecil
5627 Broadmoor Terrace North
Ijamsville, MD 21754

U S Bottling Company
c/o its Resident Agent
William G. Voelp
21 Nicholson Rd.
Pasadena, MD 21122


_____
John David Cecil