IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHOREGOOD WATER COMPANY, INC., *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB 08-2470 |
| U.S. BOTTLING COMPANY, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

ShoreGood Water Company, Inc. ("ShoreGood"), Dennis Kellough, and Bonnie Kellough (together "Plaintiffs" or "Counter-Defendants"), filed suit against U.S. Bottling Company ("U.S. Bottling"), The Image Makers, Ltd. ("Image Makers"), William Voelp ("Voelp"), John D. Cecil ("Cecil"), and John T. Cecil, Jr. ("Cecil Jr.") (together "Defendants"), asserting various causes of action and seeking relief as a result of a failed business venture between the parties. Voelp and Cecil, proceeding *pro se*, each subsequently asserted counterclaims along with their respective answers to Plaintiffs' complaint, and on October 19, 2009, they were granted leave to submit amended counterclaims. Currently pending before this Court are Plaintiffs' Motion to Dismiss Amended Counterclaim of William G. Voelp and for More Definite Statement (Paper No. 70) and Motion to Dismiss Amended Counterclaim of John David Cecil and for More Definite Statement (Paper No. 71). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, Plaintiffs' motions are GRANTED IN PART, specifically as to claims of *quantum meruit*, attorneys' fees, tortious interference with prospective business relations, and

shareholder derivative claims, but are DENIED IN PART, specifically as to claims for specific performance, breach of contract, promissory estoppel, wrongful termination of contract, and other claims for tortious interference with prospective business relations.

## BACKGROUND

In 1999, William Voelp ("Voelp") and John D. Cecil ("Cecil") (together "Counterclaimants") established Image Makers, a corporation organized under Maryland law.[1] (Am. Countercls. ¶¶ 8, 31.)[2] In its manufacturing facility on Wilso Drive in Baltimore, Maryland, Image Makers printed labels which it applied to pre-bottled water containers that the company had purchased from vendors located in Pennsylvania, New York and Canada. (*Id.* ¶¶ 34-35.) Because of rising freight costs, Voelp and Cecil began to look for new suppliers of bottled water located closer to Image Makers' manufacturing facility. (*Id.* ¶ 38.)

In August of 2004, Voelp and Cecil had meetings with Dennis and Bonnie Kellough, to discuss a potential business arrangement. (*Id.* ¶ 41.) The Kelloughs had established ShoreGood Water Company, Inc. ("ShoreGood"), a bottled water manufacturing company incorporated in Maryland. The parties believed that a joint business venture would be mutually beneficial, as ShoreGood had a state-of-the-art manufacturing facility located in nearby Federalsburg, Maryland, whereas Image Makers had an existing customer base. (*Id.* ¶ 45.) On September 16, 2004, Image Makers, ShoreGood and Dennis Kellough's company, Dennis S. Kellough, LLC ("DSK"), entered into an "Agreement in Principal," under which the Kelloughs, Cecil, and

---

[1] The facts alleged in the amended counterclaims are construed in the light most favorable to Counterclaimants Voelp and Cecil. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The background facts that relate to the Plaintiffs' underlying suit against the Defendants are provided in this Court's earlier opinion. *See ShoreGood Water Co., Inc. v. U.S. Bottling Co.*, No. 08-2470, 2009 U.S. Dist. LEXIS 69624 (D. Md. Aug. 10, 2009).

[2] The allegations in the two Amended Counterclaims are substantively identical; the only difference between them is the substitution of the Counterclaimants' individual names. Accordingly, the citations to paragraph numbers in this opinion pertain to both Amended Counterclaims. *See* Defendant Voelp's Answer and Amended Counterclaim (Paper No. 58); Defendant Cecil's Answer and Amended Counterclaim (Paper No. 61).

Voelp became co-equal partners with control over the combined businesses.  (*Id.* ¶¶ 47, 48.)  Around the time of the signing of the Agreement in Principal, the Kelloughs' attorney established two new corporations, Point to Point Logistics, LLC ("P2P") and Image Real Estate Group, LLC, and the Counterclaimants organized the U.S. Bottling Company ("U.S. Bottling").  (*Id.* ¶¶ 49-54.)

Although the parties never memorialized a final contract or proceeded in any merger transactions, they began to operate together as a *de facto* combined enterprise.  (*Id.* ¶ 53.)  U.S. Bottling, ShoreGood, and Image Makers moved their headquarters into a building on Desoto Road in Baltimore, Maryland.  (*Id.* ¶ 55.)  Dennis Kellough managed the operation of the bottling facility, while Voelp and Cecil oversaw matters of marketing, sales, and customer service.  (*Id.* ¶¶ 56, 57).  In late 2004, John T. Cecil, Jr. ("Cecil Jr.") requested an ownership stake in the *de facto* merged entities.  (*Id.* ¶ 58.)  After allegedly acquiring the Kelloughs' approval for the arrangement, Cecil Jr. made investments in both U.S. Bottling and P2P, and he ultimately assumed full-time responsibility over the financial and bookkeeping needs of the companies.  (*Id.* ¶¶ 59-61.)  At a later date, Jeremy Martin, the boyfriend of the Kelloughs' daughter, was hired to work in the business venture.  (*Id.* ¶ 88.)  Martin, an alleged expert in computer systems, worked in sales, customer service, and computer operations.  (*Id.* ¶¶ 89-90.)

In late 2004, a vehicle allegedly owned and operated by ShoreGood was involved in an accident, giving rise to liability issues.  (*Id.* ¶ 62.)  Also around this time, Mercantile Bank, which had previously provided financing for ShoreGood, announced that they would not support any changes in ShoreGood's ownership structure.  (*Id.* ¶ 63.)  Voelp, Cecil, Cecil Jr., and the Kelloughs agreed that they would continue operating as a *de facto* merged entity while replacing Mercantile Bank with other financing and finding a way to manage its liability issues.  (*Id.* ¶ 64.)

Counterclaimants allege that pursuant to this understanding (hereinafter referred to as "Agreement 2"), the Kelloughs, Cecil, and Voelp would each own one-third stakes in the combined operation of U.S. Bottling, Image Makers, ShoreGood, DSK, Image Real Estate Group and P2P.  (*Id.* ¶ 65.)  They also agreed that Cecil Jr.'s ownership interest would derive from the shares owned by Cecil and Voelp and not from the Kelloughs' ownership interest.  (*Id.* ¶ 66.)  The Kelloughs agreed that they would convey to Voelp and Cecil one-third of their stakes in both ShoreGood and DSK.  (*Id.* ¶ 67.)  Finally, the parties agreed that upon the formalization of the merger, the individual ownership interests in the merged entity would be identical to the individual ownership interests of the entities that existed in the *de facto* merger.  (*Id.* ¶ 68.)  However, until the formal merger was consummated, the parties understood that they would continue to operate as a *de facto* merged entity.  (*Id.* ¶ 69.)

After entering into Agreement 2, the companies increasingly began to operate under U.S. Bottling's name.  On January 4, 2005, an Internet domain was registered for U.S. Bottling and the enterprise began to file documents and secure state certifications in the name of U.S. Bottling.  (*Id.* ¶¶ 75, 79, 81.)  In 2007, U.S. Bottling secured ongoing orders with two large national customers named Primo Water Company and Sun Opta Global Organic Ingredients ("Sun Opta").  (*Id.* ¶¶ 93-94.)  During this time period, U.S. Bottling allegedly began to emerge as an industry leader in private label water sales.  (*Id.* ¶¶ 97-98.)

However, Voelp and Cecil claim that beginning in late 2007, the Kelloughs took steps to undermine the success of the parties' business venture.  They allege that in December of 2007, Dennis Kellough attempted to sell ShoreGood's assets without obtaining the consent of the remaining shareholders.  (*Id.* ¶ 99.)  In April of 2008, ShoreGood's counsel, Bruce Kauffman, executed a production run with Sun Opta, and funds were made payable to Kauffman's escrow

account.  (*Id.* ¶ 101.)  In that same month, the Kelloughs resigned from U.S. Bottling and Image Makers and took measures to change the locks at the Federalsburg plan to "lock out" the other shareholders.  (*Id.* ¶¶ 102-104.)  In May of 2008, Dennis Kellough allegedly "interfered" with the enterprise's business relationship with Glas Water Sales of Canada and the Blind Industries and Services of Maryland.  (*Id.* ¶¶ 107-108.)  Dennis Kellough is alleged to have met with Sun Opta in secret to convert orders and customers from U.S. Bottling to ShoreGood, in an effort to divert funds from shareholders and creditors.  (*Id.* ¶ 109.)  Defendants claim that ShoreGood continues to profit from business it illegally took from U.S. Bottling and that ShoreGood continues to harbor assets that were originally controlled by U.S. Bottling.  (*Id.* ¶¶ 116-117.)

On September 19, 2008, Plaintiffs filed the present lawsuit seeking redress for alleged injuries they received as a result of the parties' failed business venture.  On August 31, 2009, Voelp and Cecil filed counterclaims along with their answers to the underlying lawsuit, and on October 19, 2009, they were granted leave to file amended counterclaims.  *See* Defendant Voelp's Answer and Amended Counterclaim (Paper No. 58); Defendant Cecil's Answer and Amended Counterclaim (Paper No. 61).

In each of their amended counterclaims, Voelp and Cecil assert the following twelve causes of action: specific performance (Count I); breach of contract (Count II); promissory estoppel (Count III); defamation (Count IV); civil conspiracy (Count V); unjust enrichment and violation of fiduciary duty (Count VI); tortious interference (Count VII); wrongful termination of contract (Count VIII); *quantum meruit* (Count IX); fraud in the inducement (Count X); and shareholder derivative actions on behalf of U.S. Bottling (Count XI) and Image Makers (Count XII).  Plaintiffs/Counter-Defendants challenge, in whole or in part, ten of the causes of action set forth in the amended counterclaims under Federal Rules of Civil Procedure 12(e) and 12(b)(6).

**STANDARD OF REVIEW**

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), and therefore a Rule 12(b)(6) motion tests the legal sufficiency of a complaint.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Id.* at 555. Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See id.* (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)).

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* On a spectrum, the Supreme Court has recently explained that the plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At bottom, the court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## DISCUSSION

**I.      Counts I, II, III & VIII: Motion for a More Definite Statement**

Counter-Defendants challenge Counts I, II, III and VIII under Federal Rule of Civil Procedure 12(e) on the basis that they are "so vague and ambiguous" that they "cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). They claim that these causes of action are based upon inconsistent allegations contained in the counterclaims. Specifically, they construe the counterclaims as alleging, on the one hand, that Voelp and Cecil enjoyed ownership stakes in ShoreGood and DSK, while simultaneously alleging, on the other hand, that these same ownership stakes were never transferred to them by the Counter-Defendants, in breach of Agreement 2.

Under Fed. R. Civ. P. 12(e), a court has discretion to require a party to cure vague or ambiguous pleadings in order to permit the opposing party to style a responsive pleading. However, in this instance, such a clarification requirement is not warranted. In paragraphs 15 and 20 of the two counterclaims, Voelp and Cecil specifically state that they each have "a claim to own" a stake in both ShoreGood and DSK. In paragraph 67 of the counterclaims, it is alleged that the Kelloughs had promised in Agreement 2 to convey to Voelp and Cecil, individually, one-third of the Kelloughs' stock in ShoreGood and DSK. Finally, in Counts I, II, III and VIII, Voelp and Cecil assert causes of action that are based upon the Kelloughs' alleged breach of Agreement 2 and for their failure to convey the interests that Voelp and Cecil were owed. Thus, a closer reading of the amended counterclaims reveals that Counts I, II, III, and VIII are not based upon impermissibly vague or ambiguous allegations. Accordingly, the Counter-Defendants' motions are DENIED as to Counts I, II, III, and VIII.

**II.     Count IV: Failure to State a Claim for Payment of Attorneys' Fees**

In Count IV of their amended counterclaims, Voelp and Cecil assert defamation claims against Dennis Kellough and they seek a variety of remedies, including attorneys' fees.

Counter-Defendants correctly note that Maryland has adopted the familiar "American rule" on attorneys' fees, whereby a party may not recover such an award unless it is provided for in a contract or permitted by statute. *See Accubid Excavation, Inc. v. Kennedy Contractors, Inc.*, 188 Md. App. 214, 230, 981 A.2d 727 (2009) (citing *Hess Constr. Co. v. Bd. of Education of Prince George's County*, 341 Md. 155, 160, 669 A.2d 1352 (1996)). Because their defamation claims are not based upon any statute or contractual dispute, Voelp and Cecil may not seek attorneys' fees under Count IV of their amended counterclaims.

### III.     Count VII: Tortious Interference Claim

In Count VII of their amended counterclaims, Voelp and Cecil allege that Counter-Defendants tortiously interfered with their business relationships with Glas Water Sales, Sun Opta, and the Blind Industries and Services of Maryland. Specifically, Counterclaimants allege that they were in the process of negotiating business contracts with Glas Water Sales and the Blind Industries and Services of Maryland, when Dennis Kellough intentionally acted to thwart the negotiation processes. In addition, they allege that Dennis Kellough intentionally circumvented a contract purchase order that existed between U.S. Bottling and Sun Opta that would have benefitted Voelp and Cecil.

To state a claim for tortious interference with prospective business relations, a claimant must allege four elements: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 155, 557

A.2d 965 (Md. 1989); *see also Bell BCI Co. v. HRGM Corp.*, 2004 U.S. Dist. LEXIS 15305, at *21 (D. Md. Aug. 6, 2004). Counterclaimants have successfully stated a claim with respect to their allegations that Kellough tortiously interfered with their prospective business relations with Glas Water Sales and the Blind Industries and Services of Maryland. In addition, these allegations are not so vague or ambiguous that Counter-Defendants would be forestalled from framing a responsive pleading.

However, Counterclaimants' allegations concerning Kellough's interference with their business relationship with Sun Opta relates to a specific contract purchase order made between U.S. Bottling and Sun Opta. A claim of tortious interference with an existing contract "can only arise out of the relationship between three parties, the two parties to the contract and the interferer." *Mates v. North Am. Vaccine, Inc.*, 53 F. Supp. 2d 814, 827 (D. Md. 1999) (citing *K&K Management, Inc.*, 316 Md. 137, 154, 557 A.2d 965 (1989)). Because Voelp and Cecil have not alleged that they were individual parties to the contract with Sun Opta, they lack standing to bring this claim.[3]

### IV.    Counts IX: Claim for *Quantum Meruit*

In Count IX of their amended counterclaims, Voelp and Cecil have asserted a cause of action for *quantum meruit*. They claim that Agreement 2 was a contract "implied in law" and that Counter-Defendants were unjustly enriched when they failed to provide compensation for the benefits they derived from the Counterclaimants' services.

"In order to recover under *quantum meruit*, the [claimant] must show that the services were rendered under such circumstances as to indicate that the [claimant] expected to be paid for them, and that the recipient of the services expected or should have expected to pay for them."

---

[3] Indeed, in their opposition briefs, Voelp and Cecil have admitted that they were not parties to the contract with Sun Opta. *See* Voelp Opp. at 3; Cecil Opp. at 3.

*McLauglin v. Murphy*, 372 F. Supp. 2d 465, 471 (D. Md. 2004) (citing *Mogavero v. Silverstein*, 142 Md. App. 259, 277, 790 A.2d 43 (2002)).  The Counterclaimants' allegations are clearly deficient in this respect.  Voelp and Cecil have alleged that pursuant to Agreement 2, the parties entered into a *de facto* merger whereby they agreed to operate together as a joint venture.  They have not alleged that under their business arrangement, the Counter-Defendants were clearly obligated to compensate the Counterclaimants for any services that they provided as part of the business venture.  Accordingly, the Counterclaimants have failed to state a claim in Count IX for *quantum meruit*.

###### V.       Count XI and XII: Shareholder Derivative Claims

In Counts XI and XII of their amended counterclaims, Voelp and Cecil assert shareholder derivative claims on behalf of U.S. Bottling and Image Makers, respectively.

A shareholder derivative claim is a cause of action that belongs to the corporation. Accordingly, under Maryland law and Federal Rule of Civil Procedure 23.1, "a shareholder must first make a good faith effort to have the corporation act directly and explain to the court why such an effort either was not made or did not succeed."  *Werbowsky v. Collomb*, 362 Md. 581, 600, 766 A.2d 123 (Md. 2001); *see also Hawes v. Oakland*, 104 U.S. 450, 460-61 (1881) ("Before the shareholder is permitted in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes.")  In addition, Rule 23.1 mandates that the claimant asserting a derivative suit "state with particularity" the circumstances surrounding any efforts to have the corporation pursue redress.  Fed. R. Civ. P. 23.1.

In this case, Counterclaimants failed to plead with sufficient specificity the reasons why the corporation was either unable or unwilling to pursue redress. They have alleged that both U.S. Bottling and Image Makers have instituted legal proceedings, but that such measures cannot be maintained because each corporation "lacks the financial resources to seek the justice that it deserves." Am. Counterclms. ¶¶ 265, 282. The allegations do not explain whether the corporations ever exhausted their legal proceedings, nor do they describe the circumstances surrounding the corporations' actions in seeking redress.

Furthermore, pursuant to this Court's Memorandum Order of February 9, 2010 (Paper No. 87), a receiver has been appointed for U.S. Bottling and Image Makers, and the receiver thereby acquired the right to assert any causes of action on behalf of the corporations. The appointment of a receiver does not automatically foreclose the right of a shareholder to bring a derivative action. *See Womble v. Dixon*, 585 F. Supp. 728, 732 (E.D. Va. 1983). Nevertheless, when a shareholder seeks to assert a cause of action on behalf of a corporation in receivership, the shareholder must allege with particularity any efforts to have the receiver institute suit, or why such efforts would be futile. Because there are no allegations with respect to the receiver,[4] Voelp and Cecil lack standing to assert the pending shareholder derivative claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss Amended Counterclaim of William G. Voelp and for More Definite Statement (Paper No. 70) and Motion to Dismiss Amended Counterclaim of John David Cecil and for More Definite Statement (Paper No. 71) are GRANTED IN PART and DENIED IN PART. A separate Order follows.

---

[4] There are no allegations regarding the receiver due to the obvious fact that the pending shareholder derivative claims predate the appointment of a receiver in this case.

Date : February 24, 2010                              /s/_____
                                                     Richard D. Bennett
                                                     United States District Judge